**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY**

**CLEAR SPRING PROPERTY AND
CASUALTY COMPANY**,

    Plaintiff,

vs.                                              Case No. 1:21-cv-24234-RKA

**WELLO AND MOM, LLC**,

    Defendant.
_____/

**PLAINTIFF'S MOTION FOR ATTORNEY'S FEES**

    COMES NOW the Plaintiff, CLEAR SPRING PROPERTY AND CASUALTY COMPANY (hereinafter "CLEAR SPRING"), by and through its undersigned counsel, pursuant to Rule 11(b) of the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of Florida and 28 U.S.C. § 1927., and moves this Court for an Order awarding CLEAR SPRING its attorney's fees based on the Defendant WELLO AND MOM, LLC's bad faith in this matter, and further thereto would respectfully state as follows:

**RELEVANT BACKGROUND**

    CLEAR SPRING, a foreign corporation incorporated in Texas, is a marine insurance company which issued a policy affording Hull & Machinery coverage on a vessel which for insurance purposes was described as a Lolotte, 2003 40' Sunseeker with Suzuki triple 300hp gas engine, XSK02857F304 vessel (hereinafter "the Vessel"). *See* Policy No. CSRYP/204845 (hereinafter "the Policy), a true and correct copy of which was previously filed as ECF No. 8-3, at 1. The Vessel was alleged to have been owned by the Defendant, WELLO AND MOM, LLC

1

(hereinafter "WELLO"), and was insured for an agreed value of $230,871.00. *Id.* WELLO is located in Miami, FL. *Id.*

On December 2, 2021, CLEAR SPRING filed its original Complaint for Declaratory Judgment (hereinafter "the Complaint"), invoking the admiralty jurisdiction of this Court per Rule 9(h), seeking a declaration that the Policy affords no coverage for the alleged damage sustained by the Vessel as a result of a partial sinking on or about September 27, 2021, due to lack of fortuity, exclusions for wear and damage to the Vessel's engines, mechanical and electrical parts unless caused by an accidental external event, unseaworthiness, material misrepresentation of fact in the application, and breach of the fire extinguishing equipment warranty. *See* ECF No. 1, at 4-13. WELLO was served with a copy of the Complaint on February 15, 2022. *See Defendant's Motion for Enlargement of Time to Respond to Amended Complaint*, ECF No. 13, at 1. CLEAR SPRING filed a corrected Complaint on February 18, 2022. *See* ECF No. 8.

On March 8, 2022, WELLO filed *Defendant's Motion for Enlargement of Time to Respond to Amended Complaint* [ECF No. 13], claiming that "WELLO and its counsel need additional time to respond to the Amended Complaint," and that "[d]ue to the press of other business and the complexity of the issues raised by the Amended Complaint" they needed an additional fourteen (14) days to file their response, or until March 22, 2022. *Id.*, at 1-2. CLEAR SPRING did not object to the requested extension. *See* the email correspondence between counsel regarding requested extensions for various pleadings, a true and correct copy of which is attached hereto as Exhibit 1, at 3. Crucially, the Defendant's aforesaid motion failed to advise this honorable Court that it [WELLO] had already filed a mirror-image breach of contract action against CLEAR SPRING on March 4, 2022 in Miami-Dade County court.

2

Rather than file a substantive response to CLEAR SPRING's Complaint for declaratory judgment, the Defendant used that additional time to draft and file an amended mirror-image breach of contract action in Florida state court[1] on March 22, 2022. That same day, the Defendant moved to dismiss CLEAR SPRING's declaratory judgment action. *See Defendant's Motion to Dismiss Plaintiff's Amended Complaint* [ECF No. 14] (hereinafter "Defendant's Motion to Dismiss").

The Policy contains the following provision (*see* ECF No. 8-3, at 16):

### 11. Service Of Suit, Choice of Law And Forum
******
It is also hereby agreed that any dispute arising here under shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America, in particular, the Federal District court within which you the Assured resides or the Federal District court within which your insurance agent resides.

Per the clear and unambiguous terms of the foregoing forum-selection clause, any action that either party might have seen fit to bring must have been filed in the United States District Court for the Southern District of Florida, within which Miami, Florida is located.

The Defendant's Motion to Dismiss contained no reference whatsoever to the Policy's forum-selection clause, and misleadingly referred to its mirror-image state court action as an "underlying action" as part of its attempt to persuade this Court that it lacked subject matter jurisdiction over the declaratory judgment action. *See* ECF No. 14, at 5 ("However, courts generally abstain from adjudicating an insurer's duty to indemnify until *after* the conclusion of the underlying action.") (emphasis in original).

CLEAR SPRING was thus compelled to not only draft and file a response to WELLO's

---

[1] A true and correct copy of WELLO's Amended Complaint in Miami-Dade county court was previously filed as an attachment to its Motion to Dismiss, ECF No. 14, at 15-19.

motion do dismiss in this Court (which it did on April 14, 2022, *see* ECF No. 20), it also had to file its own motion to dismiss the state court action. A true and correct copy of CLEAR SPRING's aforesaid motion, entitled *Defendant's Motion to Dismiss the Plaintiff's Complaint in Favor of a Pending Federal Action*, dated April 8, 2022, was previously filed as ECF No. 25-1. WELLO filed its reply in support of its motion to dismiss on April 28, 2022. ECF No. 23.

On May 17, 2022, this Court set a status conference for June 3, 2022 at 3:00pm to be held via Zoom. *See* ECF No. 24. During the status conference on June 3rd, counsel for CLEAR SPRING advised the Court of its motion to dismiss the state court action, and counsel for WELLO again misleadingly referred to its mirror-image state court action as an "underlying action." On June 23, 2022, the Court set a status conference for July 7, 2022, regarding WELLO's motion to dismiss. *See* ECF No. 31.

WELLO opposed CLEAR SPRING's motion to dismiss the state court action. A true and correct copy of WELLO's opposition, entitled *Response and Opposition to Defendant's Motion to Dismiss Amended Complaint*, dated June 28, 2022, is attached hereto as Exhibits 2. In an abundance of caution, CLEAR SPRING also filed a reply in support of its motion to dismiss the state court action, dated June 29, 2022, a true and correct copy of which is attached hereto as Exhibit 3.

In an effort to resolve the matter, the undersigned repeatedly informed opposing counsel of the Policy's forum-selection clause (as early as April 25, 2022), and requested that counsel for WELLO voluntarily dismiss the state court action, which WELLO refused to do.[2] Thus CLEAR

---

[2] See a true and correct copy of one such email exchange between respective counsel for the parties is attached hereto as Exhibit 4, at 2.

4

SPRING was compelled to set a hearing on its motion to dismiss the state court action, which was held via Zoom on June 30, 2022 before the Honorable Judge Reemberto Diaz of the Eleventh Judicial Circuit in and for Miami-Dade County. After a few minutes of oral argument, Judge Diaz summarily granted CLEAR SPRING's motion to dismiss the state court action. A true and correct copy of the Order of Dismissal was previously filed as ECF No. 32-1. On July 5, 2022, the Court issued a Paperless Order denying WELLO's Motion to Dismiss as moot in light of the fact that the state court litigation, upon which WELLO's Motion to Dismiss was based, had been dismissed. *See* ECF No. 35.

## ARGUMENT

The lengthy and tedious history of litigation in this matter up to the present moment, as detailed above, was entirely the result of the bad faith litigation tactics of the Defendant or its counsel. None of the above referenced motions to dismiss or hearings or status conferences would have been necessary but for their attempts to mislead this Court and engage in the most flagrant attempt at forum shopping the undersigned has yet come across. WELLO deliberately omitted from its motion to dismiss that the Policy contains a valid and enforceable forum-selection clause which absolutely requires that any dispute over coverage must be litigated in the "Federal District court within which you the Assured resides or the Federal District court within which [the Assured's] insurance agent resides." ECF no. 8-3, p. 16. Even if, for the sake of argument, WELLO were to claim that it or its counsel was previously unaware of the Policy's forum-selection clause, a few moments of legal research would have lead them to the inevitable conclusion that such clauses are routinely enforced under federal admiralty law, which would lead any reasonable litigant to drop the issue.

However, there can be no excuse for the deliberate attempt by WELLO, or its counsel, to mislead this Court as to what constitutes an "underlying action" under federal law. None of the cases cited by WELLO in its motion or its reply in support involved a forum-selection clause or a dispute between the parties as to where to litigate coverage under a policy of marine insurance. Rather, in every single case cited by WELLO, the "underlying action" was a totally separate tort liability dispute between the insured and a claimant; that is what an "underlying action" is. *See Marr Investments, Inc. v. Greco*, 621 So.2d 447 (Fla. 4th DCA 1993). An "underlying action" is not, as WELLO would have had this Court believe, any action brought in state court, including a mirror-image breach of contract action by the insured against the insurer. Not one single case has **_ever_** held that a party may annul a forum-selection clause in a maritime contract just because that party would prefer to ignore the clause and litigate in a different forum. Flying in the face of the Policy's forum-selection clause and the clear, overwhelming, veritable tsunami of caselaw in support of the viability and enforcement of forum-selections clauses in maritime contracts, and the undeniable dearth of caselaw to the contrary, the Defendant (or its counsel) deliberately set out on a scheme of bad faith litigation tactics in an attempt to have this case dismissed. Those efforts were of course futile, and resulted in total and abject failure when their ill-founded state court action was dismissed by Judge Diaz; but in the meantime, WELLO wasted not only CLEAR SPRING's time and money, but also the valuable resources of the Miami-Dade County court and the United States District Court for the Southern District of Florida. It is for these reasons that CLEAR SPRING respectfully urges this Court to award it attorney's fees for the sanctionable conduct of WELLO and/or its counsel, to compensate CLEAR SPRING and to ensure that such behavior does not occur again as this litigation goes forward.

1. **<u>Standard</u>**

As a threshold matter, it is necessary to note that this Court, sitting in admiralty, has inherent authority to punish WELLO's bad faith conduct, without recourse to any specific bad faith statute or to Rule 11. "[A]llowance of counsel fees and other expenses entailed by litigation, but not included in the ordinary taxable costs regulated by statute, is part of the historic equity jurisdiction of the federal courts." *Vaughan v. Atkinson*, 369 U.S. 527; 1962 A.M.C. 1131 (1962). *See also JTR Enterprises, LLC v. Columbian Emeralds*, 697 Fed.Appx. 976 (11th Cir. 2017) (affirming denial of sanctions motion in admiralty case). "[W]hereas each of the [statutory and rule] mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *Id.*, at 987, *citing*, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Such bad-faith fee-shifting is meant to punish abuses of the litigation process. *Galveston County Nav. Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 358; 1996 A.M.C. 2850 (5th Cir. 1996). Moreover, it is irrelevant that, when this suit was filed, it was premised on diversity jurisdiction. *Kalmbach, Inc. v. Insurance Co. of State of Pennsylvania*, 422 F.Supp. 44, 46 (D.Alaska. 1976). However, CLEAR SPRING invoked this Court's admiralty jurisdiction with its first filing. ECF No. 1, at 1.

"The key to invoking a court's inherent power to sanction is a finding of bad faith." *JTR Enterprises*, 697 F. App'x at 986. Bad faith is shown when "an attorney knowingly or recklessly pursues a frivolous claim or needlessly obstructs the litigation of a non-frivolous claim" *Id.* Per the principle of willful blindness, "knowledge can be imputed to a party who knows of a high probability of illegal conduct and purposely contrives to avoid learning of it." *Id.* (quoting *Williams v. Obstfeld*, 314 F.3d 1270, 1278 (11th Cir. 2002)).

This standard is echoed by the Rules Regulating the Florida Bar. Specifically, Rule 4-3.3, *Candor Toward the Tribunal*, states:

> (a) False Evidence; Duty to Disclose. A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
> (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
> (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; [….]

Furthermore, the Comment to this rule goes on to state that "[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal." Per Local Rule 11.1(c), *Professional Conduct*, "[t]he standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar."

Alternatively, under 28 U.S.C. § 1927, a court may hold a lawyer personally liable for fees and costs if he or she "unreasonably and vexatiously" multiplies the proceedings. 28 U.S.C. § 1927. The statute reads:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.* Under § 1927, an attorney's conduct is sanctionable if it is unreasonable, vexatious, and "results in proceedings that would not have been conducted otherwise." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Section 1927 does not apply to parties. Sanctions under § 1927 are discretionary. *Olson v. Reynolds*, 484 F. App'x 61, 64-65 (7th Cir. 2012). Per § 1927, an attorney must "knowingly or recklessly pursue a frivolous claim or needlessly obstruct the

8

litigation of a non-frivolous claim." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007).

### 2. **WELLO And/Or Its Counsel Knowingly Pursued A Baseless and Frivolous Scheme of Forum Shopping**

As shown above, the Defendant (or its counsel) purposely disregarded the Policy's forum-selection clause and mischaracterized the nature of its state court action in an attempt to circumvent CLEAR SPRING's proper election to proceed in admiralty before this Honorable Court. Similar conduct has been the subject of an award of attorney's fees in the past, and should be in this instance as well, to discourage such behavior from happening again in this litigation or by other litigants who may wish to attempt a similar scheme.

For instance, the case of *Reliable Salvage and Towing, Inc. v. Bivona* concerned a dispute over whether a valid contract for salvage had been formed. 476 Fed.Appx. 852; 2013 A.M.C. 591 (11th Cir. 2012). Although the court found that no valid salvage contract had ever been formed, the court found that the salvor was still entitled to a salvage award as a matter of law. *Id.*, at 1377. The court found bad faith based on the vessel owner's assertion of the legally frivolous argument that the vessel was not in peril at the exact moment that the salvage was undertaken. *Id.*, at 854. Litigation on this issue was futile because there was no dispute as to the dispositive fact that the vessel was facing peril in the very near future. *Id*. It was legally irrelevant that the vessel was not yet in peril. *Id*. Therefore, the court found that the vessel owner's litigation on this point was in bad faith. *Id*.

To give another example, the very recent *JSM Marine* case concerned another salvage dispute. *JSM Marine LLC v. Gaughf*, 407 F.Supp.3d 1358; 2019 A.M.C. 2592 (S.D. Ga. 2019). After the salvor rescued a vessel that had run aground on rocks during Hurricane Mathew, a fight

9

ensued over the proper amount of the salvage award. *Id.*, at 1362. After awarding judgment to the salvor on the merits, the court proceeded to catalogue the vessel owner's bad faith conduct in the litigation. *Id.*, at 1378. The court granted the request for attorney's fees based on the frivolous defenses raised by the vessel owner, the denial of certain basic facts without evidentiary support, and counsel's ignorance of the applicable legal principles. *Id.*, at 1379.

The Eleventh Circuit has held that conduct that "looks like forum shopping" is a factor courts can consider in analyzing sanctions. *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018). This District has held similarly. *See Absolute Activist Value Master Fund Ltd. v. Devine*, No. 215CV328FTM29MRM, 2019 WL 3491962, at *11 (M.D. Fla. Aug. 1, 2019) ("proof of forum shopping" could satisfy a finding of bad faith sufficient to justify inherent authority sanctions), reconsideration denied, No. 215CV328FTM29MRM, 2019 WL 4594589 (M.D. Fla. Sept. 23, 2019), aff'd, 826 F. App'x 876 (11th Cir. 2020).

Fees are obviously warranted for the bad faith litigation tactics displayed by WELLO in this case. WELLO was properly served and had requested an extension of time to file a response, which counsel for CLEAR SPRING courteously did not object to (not knowing, of course, that WELLO had no intention of filing an answer to the declaratory judgment, but had set about on a plan to have this case dismissed in favor of an action in state court, in contravention of the Policy's forum-selection clause). WELLO "knowingly or recklessly pursue[d] a frivolous"[3] argument when it completely failed to include any reference whatsoever to the Policy's valid and enforceable forum-selection clause, and when it argued that this Court "lack[ed] subject matter jurisdiction" because there was "Underlying Litigation." *See* ECF No. 14, at 3 (capitalization in original). Even

---

[3] See *JTR Enterprises*, 697 F. App'x at 986.

if it could be argued that WELLO, or its counsel, was unaware of the Policy's forum-selection clause, their knowledge can still be imputed where it is clear they made no effort to read the Policy or were willfully blind to the relevant provisions that did not suit their purpose. *See id* ("knowledge can be imputed to a party who knows of a high probability of illegal conduct and purposely contrives to avoid learning of it.") (quoting *Williams*, 314 F.3d at 1278)). *See also Amlong*, 500 F.3d at 1241 ("objectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently"). Even after being explicitly informed of the Policy's forum-selection clause by the undersigned via email on April 25th,[4] still WELLO and its counsel did not reverse course, but continued in their efforts to have this matter improperly dismissed. Such conduct should not be overlooked by this Court, as to do so would only encourage similar bad faith and vexatious tactics by litigants in the future.

But there can be no possible excuse or mitigating factors when considering for the actions of WELLO and/or its counsel in referring to the mirror-image state court action as an "underlying litigation." This is because an "underlying action," by definition, does not refer to a mirror-image breach of contract claim between an insured and the insurer, but rather, it can only refer to tort litigation between the insured and a third-party claimant. *See Marr Investments, Inc. v. Greco*, 621 So.2d 447 (Fla. 4th DCA 1993) (reversing district court's grant of summary judgment to insurer, and holding that that the question of coverage for insured's tort liability could not be resolved until it was determined whether the insured was liable for the tort claimant's injury). Such an argument can only be "based on a knowingly false representation of law," which "constitutes dishonesty

---

[4] *See* ex. 4, at 5 (wherein the undersigned suggested that WELLO voluntarily withdraw its state court complaint in favor of this litigation, which "would be in keeping with the forum selection clause in the policy of marine insurance at issue, which had perhaps been previously overlooked.")

toward the tribunal," and therefore undoubtedly constitutes bad faith. *See* Comment to Rule 4-3.3 of the Rules Regulating the Florida Bar.

### 3. Time and Money Wasted By The Actions of the Defendant and/or its Counsel

Solely as a result of bad faith conduct of the Defendant and/or its counsel in this litigation, nearly all of Goldman & Hellman's billing in this matter since March 22, 2022 (the day that the Defendant filed its Motion to Dismiss [ECF No. 14]) has been devoted to dealing with the repercussions of that motion, including, but not limited to, receipt and review of the motion, moving for an extension of time to file an opposition [ECF No. 15], drafting an opposition [ECF No. 20], receipt and review of the Defendant's reply in support [ECF No. 23], receipt and review of the Defendant's mirror-image complaint in state court, drafting a motion to dismiss the Defendant's state court action, communicating with opposing counsel to set a Zoom hearing on CLEAR SPRING's motion to dismiss the Defendant's state court action, notifying this Court of the hearing, drafting a reply in support of CLEAR SPRING's motion to dismiss the Defendant's state court action, preparing for the Zoom hearing, attending the Zoom hearing itself, and notifying this Court of the dismissal of the state court action, or approximately 65 hours. The total of all estimated fees and costs billed to CLEAR SPRING in this matter from March 22, 2022 through the end of June 2022 for actions related to the Defendant's motion to dismiss and its mirror-image state court action is $16,000. *See* Affidavit of Jacqueline L. Goldman, Esq., dated July 12, 2022, a true and correct copy of which is attached hereto as Exhibit 5, at 2.[5]

---

[5] Goldman & Hellman's monthly billing statements submitted to its client CLEAR SPRING, as well as the time slips in support, are available for inspection should the Court deem it necessary.

## **CONCLUSION**

This Court should sanction the Defendant and/or their counsel. CLEAR SPRING's reasonable attorneys' fees and costs are an authorized sanction under 28 U.S.C. § 1927 and this Court's inherent power. CLEAR SPRING requests this Court award it its attorneys' fees and costs and also requests leave to seek additional fees if Defendant or their counsel oppose the reasonableness of CLEAR SPRING's fee request and/or request an evidentiary hearing. Should the Court decline to award the full amount of fees incurred, CLEAR SPRING respectfully urges that at some not insignificant amount be awarded as a signal to WELLO and/or its counsel, as well as to future litigants who would consider a similar course of action, that such bad faith tactics are not only doomed to fail but that they also incur the risk of tangible consequences.

WHEREFORE, Plaintiff CLEAR SPRING PROPERTY AND CASUALTY COMPANY requests that this Court compensate it for Defendant's and/or it's counsel's bad faith litigation tactics in this litigation and issue an Order that WELLO or its counsel pay Plaintiff's attorney's fees in connection with its ill-founded motion to dismiss and mirror-image state court action, and to award any and all such further relief as may be appropriate in the premises.

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that they conferred with Raul Morales, Esq., via email on April 20, 2022 [*see* Ex. 1, at 1], and with Angela Bousalis, Esq., counsel for the Defendant, via telephone on July 8, and the Defendant opposes the relief sought herein.

Dated:       July 12, 2022
                Fort Lauderdale, Florida

                Respectfully submitted,

                GOLDMAN & HELLMAN
                *Attorneys for Plaintiff*
                8751 W. Broward Boulevard
                Suite 404
                Fort Lauderdale, FL 33324
                Tel (954) 356-0460
                Fax (954) 832-0878

                By: /s/ Steven E. Goldman
                STEVEN E. GOLDMAN
                FLA. BAR. NO. 345210

                By: /s/ Jacqueline L. Goldman
                JACQUELINE L. GOLDMAN
                FLA. BAR. NO. 1005573

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 12, 2022 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all counsel of record.

Raul Morales, Esq.
Cristina Salem, Esq.
MARTINEZ MORALES
2600 S. Douglas Road, Suite 305
Coral Gables, FL 33134
T: 305-501-5011
F: 786-272-7997
rmorales@mmlawfl.com
csalem@mmlawfl.com

GOLDMAN & HELLMAN
*Attorneys for Plaintiff*
8751 W. Broward Boulevard
Suite 404
Fort Lauderdale, FL 33324
Tel (954) 356-0460
Fax (954) 832-0878

By: /s/ Steven E. Goldman
STEVEN E. GOLDMAN
FLA. BAR. NO. 345210

By: /s/ Jacqueline L. Goldman
JACQUELINE L. GOLDMAN
FLA. BAR. NO. 1005573