UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

**CLEAR SPRING PROPERTY AND
CASUALTY COMPANY**,

    Plaintiff,

Case No. 1:21-cv-24234-RKA

vs.

**WELLO AND MOM, LLC**,

    Defendant.

_____/

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
<u>NOT IN DISPUTE IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

    COMES NOW the Plaintiff, CLEAR SPRING PROPERTY AND CASUALTY COMPANY (hereinafter "CLEAR SPRING"), by and through its undersigned attorneys, and pursuant to and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7.1 and 56.1 of the Local Rules of the United States District Court for the Southern District of Florida, file this its Statement of Material Facts Not in Dispute submitted in support of Plaintiff's Motion for Summary Judgment, and further thereto would respectfully state as follows:

    1. In 2016, Defendant WELLO AND MOM, LLC ("WELLO") purchased a 2003 37' Sunseeker vessel, bearing HIN XSK02857F304 (hereinafter "Sunseeker"). Transcript of deposition of Amelina Cisneros and Roy Cisneros, pp. 13-14, attached hereto as Exhibit 1.

    2. Amelia Cisneros and Roy Cisneros are the only members of WELLO. Ex 1, p. 13.

    3. The 37' Sunseeker was purchased for ninety-four thousand dollars ($94,000.00). Ex 1, p. 14.

    4. On or about June 27, 2016, WELLO submitted an application for a policy of marine insurance to Concept Special Risks Ltd. (hereinafter "Concept"), which was then acting as

1

underwriting and claims handling agent for another marine insurer, Great Lakes Insurance SE (hereinafter "Great Lakes"). A true and correct copy of the 2016 Application is attached hereto as Exhibit 2.

5. The 2016 Application sought insurance coverage for the Sunseeker. Ex 2, p.1.

6. The 2016 Application disclosed that the Sunseeker was purchased for one hundred eighty thousand dollars ($180,000.00). Ex 2, p. 1.

7. The owner of the Sunseeker was disclosed to be "Wello & Mom LLC". Ex 2, p. 3

8. Based on the facts disclosed in, and as part of, the 2016 Application, Concept issued to WELLO a policy of marine insurance, Policy No. CSRYP/157469, a copy of which is attached hereto as Exhibit 3.

9. The Named Insured under Policy No. CSRYP/157469 was "Wello & Mom LLC." Ex 3, p. 1.

10. Under the express terms of Policy No. CSRYP/157469, Great Lakes agreed to afford $94,000.00 in first-party property damage coverage for the Sunseeker. Ex 3, p. 2.

11. In 2016, the Sunseeker suffered damage related to a fuel tank leak. Ex 1, pp. 25 and 112.

12. The total cost to repair the damage was over seventy thousand dollars ($70,000.00). Ex 1, p. 27.

13. Coverage for the loss suffered in 2016 was denied by Great Lakes. Ex 1, p. 29.

14. In 2017, Great Lakes elected not to renew insurance coverage. Ex 1, pp. 31-32.

15. In May 2018, while it was covered by another insurance carrier, the Sunseeker ran aground and suffered approximately twenty thousand dollars ($20,000.00) in damage. Ex 1, pp. 102-112.

16. The insurance carrier affording coverage at that time paid the claim arising out of the grounding. Ex 1, p. 106.

17. In July 2018, WELLO submitted an application for a policy of marine insurance to Concept, which was then still acting as underwriting and claims handling agent for Great Lakes. A true and correct copy of the 2018 Application is attached hereto as Exhibit 4.

18. The corporate owner named on the 2018 Application was "Wello and Mom, LLC." Ex 4, p. 1.

19. In response to a question on the 2018 Application requiring disclosure of "Loss History." WELLO answered, "None." Ex 4, p. 3.

20. In reliance on the truth of the material facts disclosed on the 2018 Application, and in reliance on the duty of "utmost good faith" imposed by federal admiralty law ("*uberrimae fidei*"), Concept issued on behalf of Great Lakes Policy No. CSRYP/169671.

21. In 2019, WELLO submitted a renewal application to obtain another policy of marine insurance. The 2019 Renewal Application is attached hereto as Exhibit 6, p. 1.

22. In response to specific questions in the 2019 Renewal Application, WELLO falsely represented that Roy Cisneros had no losses in the last ten years. Ex 6, p. 3.

23. In reliance on the truth of the material facts disclosed on the 2019 Renewal Application, and in reliance on the duty of "utmost good faith" imposed by federal admiralty law ("*uberrimae fidei*"), Concept issued on behalf of Great Lakes Policy No. CSRYP/177227.

24. In 2020, WELLO submitted a renewal application to obtain another policy of marine insurance. The 2020 Renewal Application is attached hereto as Exhibit 7, p. 1.

25. In response to specific questions in the 2020 Renewal Application, WELLO falsely represented that Roy Cisneros had no losses in the last ten years. Ex 7, p. 3.

26. In reliance on the truth of the material facts disclosed on the 2020 Renewal Application, and in reliance on the duty of "utmost good faith" imposed by federal admiralty law ("*uberrimae fidei*"), Concept issued on behalf of Great Lakes Policy No. CSRYP/183480.

27. In 2021, WELLO submitted a renewal application to obtain another policy of marine insurance. The 2021 Renewal Application is attached hereto as Exhibit 8, p. 1.

28. In response to specific questions in the 2021 Renewal Application, WELLO falsely represented that Roy Cisneros had no losses in the last ten years. Ex 8, p. 3.

29. The 2021 Renewal Application, as well as all prior applications, specifically asked about prior losses because, as stated expressly in Concept's Underwriting Manual:

> Assuming that the owner and operators (they may not be the same person) meet all of the standards referred to above we must consider their past loss records on boats as well as on the land. Again, we are seeking patterns and we specifically ask about marine losses – insured or not – to establish if any pattern of incidents exist that may not have been the subject of an insurance claim but that would suggest if we were to issue a policy could well become one against our underwriters. For example, an owner could have had a number of small grounding incidents that caused damage to his vessel but not enough to impact a policy. This would suggest that sooner or later if the pattern continues, he will commit a major navigational error that will result in an expensive insurance claim.
>
> If an owner has had previous losses, these must be taken into consideration when deciding whether or not to offer terms and these will impact the price charged. In general, weather related losses are not indicative of poor practice on the part of the owner and should not be a bar to quotation, however, repeated storm losses may suggest a failure to take appropriate precautions against impending bad weather and should be treated accordingly.
>
> As far as other past losses are concerned, as a rule, one is unfortunate; two begins to look like carelessness. More than that and the owner is probably not insurable. There may be extenuating circumstances but if you have doubts either refer to a Director or do not quote.
>
> Concept's Underwriting Manual, attached hereto as Exhibit 5, p. 4.

30. In reliance on the truth of the material facts disclosed on the 2021 Renewal Application, and in reliance on the duty of "utmost good faith" imposed by federal admiralty law ("*uberrimae fidei*"), Concept issued on behalf of CLEAR SPRING Policy No. CSRYP/204845 (hereinafter "the Policy"). The Policy is attached hereto as Exhibit 9.

31. The Policy incepted on July 31, 2021. Ex 9, p. 1.

32. The Policy afforded two hundred thirty thousand eight hundred seventy-one dollars ($230,871.00) in first-party property damage coverage for the Sunseeker. Ex 9, p. 1.

33. The Policy states:

> 3. Coverage A, Hull, Machinery, Equipment and Dinghy
>
> If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declaration page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.
>
> Ex 9, p. 5.

34. The Policy states:

> Exclusions to Coverage A
>
> Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:
> …
>
> b. Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.
>
> Ex 9, pp. 5-6.

35. The Policy states:

> 9. General Conditions & Warranties
> …
>
> k. If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.
>
> Ex 9, p. 13.

36. The Policy states:

> 9. General Conditions & Warranties
> …

5

    m. This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

    Ex 9, p. 13.

37. The Policy states:

    9. General Conditions & Warranties

    …

    t. Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

    Ex 9, p. 14.

38. The Policy states:

    **11. Service Of Suit, Choice Of Law And Forum**

    **It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

    Ex 9, p. 16 [emphasis in original].

39. On or about September 27, 2021, during the period of coverage afforded under the Policy, the Sunseeker suffered a partial sinking. ECF no. 1, ¶9, ECF no. 43, ¶9.

40. Following the report of the partial sinking, CLEAR SPRING assigned Revel Boulon of Sedgwick to undertake a full investigation into the causes and circumstances of the loss. Revel Boulon's Adjustment Report No. BOC21060290 is attached hereto as Exhibit 10.

41. Revel Boulon observed that the Sunseeker's automatic fire suppression system had last been inspected and tagged in March of 2019, and was therefore expired at the inception of the Policy and at the time of the partial sinking. Ex 10, p. 11.

42. Revel Boulon observed that the Sunseeker's portable fire extinguisher had last been inspected and tagged in March of 2019, and was therefore expired at the inception of the Policy and at the time of the partial sinking. Ex 10, p. 12.

43. In support of the present motion, CLEAR SPRING offers the affidavit of Concept's Senior Underwriter, Beric Anthony Usher. The affidavit of Beric Anthony Usher is attached hereto as Exhibit 11.

44. Beric Anthony Usher (hereinafter "Usher") has nearly forty years of experience as a marine underwriter for Concept and for Concept's corporate predecessors. Ex 11, ¶4.

45. In his capacity as Senior Underwriter for Concept, Usher is responsible for making the final determination as to whether, on what terms, and for what premium to issue a policy of marine insurance to an applicant. Ex 11, ¶6.

46. In making the decision to issue Policy No. CSRYP/204845, in setting the terms for Policy No. CSRYP/204845, and it setting the premium for Policy No. CSRYP/204945, Concept relied on the material facts disclosed by WELLO in all prior years, as well as the 2021 Renewal Application. Ex 11, ¶24.

47. WELLO's loss history was material to Usher's judgment as an underwriter and would be material to the judgment of any prudent and intelligent underwriter because it indicates the insured's own care and skill in managing and maintaining the vessel. Ex 11, ¶

48. WELLO's loss history was material to Usher's judgment as an underwriter would be material to the judgment any prudent and intelligent underwriter because loss history is the best indicator of the likelihood of future losses. Ex 11, ¶35

49. In accordance with Concept's Underwriting Manual, had WELLO truthfully disclosed its prior losses from 2016 and 2018, Concept would have taken these material facts into

consideration "when deciding whether or not to offer terms" and what premium to charge. Ex 11, ¶36.

50. Had WELLO truthfully disclosed its prior losses from 2016 and 2018, and the fact that Underwriters at Concept had not renewed coverage after the 2016 loss, Concept would not have issued any policy of marine insurance to WELLO. Ex 11, ¶¶37-38.

51. CLEAR SPRING is an admitted, licensed insurance carrier in the State of New York. Ex. 11, at ¶40.

52. CLEAR SPRING maintains bank accounts in the State of New York. Ex. 11, at ¶41.

53. CLEAR SPRING accepts service of process through attorneys in the State of New York. Ex 11, at ¶42.

Dated:      February 14, 2023
            Fort Lauderdale, Florida

                                          Respectfully submitted,

                                          THE GOLDMAN MARITIME LAW GROUP
                                          *Attorneys for Plaintiff*
                                          401 East Las Olas Boulevard
                                          Suite 1400
                                          Fort Lauderdale, FL 33301
                                          Tel (954)356-0460
                                          Fax (954)832-0878
                                          Cel (617)784-1100


                                          By: /s/ Steven E. Goldman
                                          STEVEN E. GOLDMAN
                                          FLA. BAR. NO. 345210

                                          By: /s/ Jacqueline L. Goldman
                                          JACQUELINE L. GOLDMAN
                                          FLA. BAR. NO. 1005573

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 14, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all counsel of record.

Raul Morales, Esq.
Cristina Salem, Esq.
MARTINEZ MORALES
2600 S. Douglas Road, Suite 305
Coral Gables, FL 33134
T: 305-501-5011
F: 786-272-7997
rmorales@mmlawfl.com
csalem@mmlawfl.com

                THE GOLDMAN MARITIME LAW GROUP
                *Attorneys for Plaintiff*
                401 East Las Olas Boulevard
                Suite 1400
                Fort Lauderdale, FL 33301
                Tel (954)356-0460
                Fax (954)832-0878
                Cel (617)784-1100

                By: /s/ Steven E. Goldman
                STEVEN E. GOLDMAN
                FLA. BAR. NO. 345210

                By: /s/ Jacqueline L. Goldman
                JACQUELINE L. GOLDMAN
                FLA. BAR. NO. 1005573