**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**IN ADMIRALTY**

**CLEAR SPRING PROPERTY AND**
**CASUALTY COMPANY**,

    Plaintiff,

vs.                                                Case No. 1:21-cv-24234-RKA

**WELLO AND MOM, LLC**,

    Defendant.
_____/

**CLEAR SPRING PROPERTY AND CASUALTY COMPANY'S MOTION FOR**
**SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

COMES NOW the Plaintiff/Counter-Defendant, CLEAR SPRING PROPERTY AND CASUALTY COMPANY, by and through its undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7.1 and 56.1 of the United States District Court for the Southern District of Florida, files this its Motion for Summary Judgment on Counts V and VI of the Second Amended Complaint for Declaratory Judgment [ECF No. 74], and further thereto would respectfully state as follows:

1.  The Plaintiff seeks summary judgment on the Fifth Cause of Action in the Second Amended Complaint, contending that the policy is void due to misrepresentation and/or nondisclosure of material fact made at the time of the time of the application process.

2.  Plaintiff seeks summary judgment on the Sixth Cause of Action in the Second Amended Complaint contending that Defendant WELLO AND MOM LLC (hereinafter "WELLO") was in breach of the policy's express warranty regarding annual certification and tagging of the insured vessel's fire extinguishing equipment on the date of the incident on September 27, 2021, rendering all coverage under Policy No. CSRYP/204845 void from inception.

1

**MEMORANDUM**

The present suit and instant motion arise out of a policy of marine insurance, Policy No. CSRYP/204845 issued by Plaintiff CLEAR SPRING PROPERTY AND CASUALTY COMPANY (hereinafter "CLEAR SPRING") to Defendant WELLO in July 2021.  Statement of Material Facts Not in Dispute, ¶28.

The facts leading up to the issuance of the Policy began 2016 when WELLO submitted to Concept Special Risks Ltd. (hereinafter "Concept") the 2016 Application to obtain a policy of marine insurance to cover the Sunseeker.  SMFND, ¶¶1-5.  The owner of the Sunseeker was disclosed as "Wello & Mom, LLC."  SMFND, ¶7.  In reliance on the truth of the facts disclosed in the 2016 Application, Concept issued on behalf of Great Lakes Insurance SE Policy No. CSRYP/157469.  SMFND, ¶8.  During the period of coverage afforded by that policy, the Sunseeker suffered $70,000.00 in damage from a fuel tank leak.  SMFND, ¶¶10-11.  Great Lakes Insurance SE denied the claim and Concept declined to renew coverage.  SMFND, ¶¶12-13.

In 2018, while it was insured by another carrier, the Sunseeker ran aground and suffered $20,000.00 in damage.  SMFND, ¶15.  That claim was paid by the carrier.  SMFND, ¶16.

Later in 2018, WELLO submitted another application to Concept, this time under the name "Wello and Mom, LLC."  SMFND, ¶18.  The 2018 Application specifically asked WELLO to fully disclose its loss history.  SMFND, ¶19.  Concept specifically requires the disclosure of loss history because loss history indicates the insured's care and skill in managing the vessel and because loss history is the best indicator of the likelihood of future losses.  SMFND, ¶29 and ¶¶47-48.

Despite specific questions on the 2018 Application, WELLO did not disclose the 2016 fuel leak or the 2018 grounding. SMFND, ¶19. In reliance on the truth of the facts disclosed in the 2018 Application, Concept issued to WELLO Policy No. CSRYP/169671. SMFND, ¶20.

In 2019, WELLO submitted a renewal application to Concept. SMFND, ¶21. Despite specific questions on the 2019 Renewal Application, WELLO did not disclose the 2016 fuel leak or the 2018 grounding. SMFND, ¶22. In reliance on the truth of the facts disclosed in the 2018 Application, Concept issued to WELLO Policy No. CSRYP/177227. SMFND, ¶23.

In 2020, WELLO submitted a renewal application to Concept. SMFND, ¶24. Despite specific questions on the 2020 Renewal Application, WELLO did not disclose the 2016 fuel leak or the 2018 grounding. SMFND, ¶25. In reliance on the truth of the facts disclosed in the 2018 Application, Concept issued to WELLO Policy No. CSRYP/183480. SMFND, ¶26.

In 2021, WELLO submitted a renewal application to Concept. SMFND, ¶27. Despite specific questions on the 2021 Renewal Application, WELLO did not disclose the 2016 fuel leak or the 2018 grounding. SMFND, ¶28. In reliance on the truth of the facts disclosed in the 2018 Application, Concept issued to WELLO Policy No. CSRYP/204845 (hereinafter "the Policy"). SMFND, ¶30.

The Policy contained the following express terms and warranties:

- 9. General Conditions & Warranties
  …

  k. If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

  SMFND, ¶35.

- 9. General Conditions & Warranties
  …

- m. This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

  SMFND, ¶36.

- 9. General Conditions & Warranties

  …

  t. Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception.

  SMFND, ¶37.

- **11. Service Of Suit, Choice Of Law And Forum**

  **It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

  SMFND, ¶38.

Had WELLO truthfully disclosed to the 2016 fuel leak loss and the 2018 grounding loss, Concept would have refused to issue to WELLO any policy of marine insurance. SMFND, PP43-50.

On or about September 27, 2021, during the period of coverage afforded by the Policy, the Sunseeker suffered a partial sinking. SMFND, ¶39. Concept's investigation into the causes and circumstances of the loss established that the Sunseeker's automatic fire suppression system and fire extinguisher were last inspected and tagged in March 2019 and were both expired at the inception of the Policy and at the time of the loss. SMFND, ¶¶41-42.

## Choice of Law

Where there exists a rule of federal admiralty law, policies of marine insurance are governed by federal admiralty law. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310; 1955 A.M.C. 467 (1955). This rule applies to all policies of marine insurance, on both commercial craft and private pleasure craft. *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296; 2015 A.M.C. 1217 (11th Cir.2015), *Acadia Ins. Co. v. McNeil*, 116 F.3d 599, 602; 1997 A.M.C. 2409 (1st Cir.1997), *Sirius Ins. Co. (UK) Ltd. v. Collins*, 16 F.3d 34, 36; 1994 A.M.C. 1683 (2d Cir.1994). However, where there exists no established rule of federal admiralty law, state law will control. *Wilburn Boat*, at 315.

The present policy of marine insurance contains a choice of law clause which states, "It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York." SMFND, ¶38.[1] Therefore, as discussed in more depth below, for any issue not governed by an established rule of federal admiralty law, New York law will apply. *Id*. CLEAR SPRING's various connections to New York, including that 1) CLEAR SPRING is an admitted, licensed insurance carrier in New York, 2) CLEAR SPRING maintains bank accounts in New York, and 2) CLEAR SPRING accepts service of process in New York [*see* SMFND, at ¶¶'s 51-53] demonstrate a "substantial

---

[1] This exact choice of law clause has been found valid and enforceable by multiple federal appellate and district courts throughout the United States. *Great Lakes Ins. SE v. Lassiter*, No. 21-21452-CIV, 2022 WL 1288741, at *9 (S.D. Fla. Apr. 29, 2022); *Clear Spring Prop. & Causalty Co. v. Viking Power LLC*, No. 21-62306-CIV, 2022 WL 17987074, at *3 (S.D. Fla. Mar. 11, 2022); *Great Lakes Insurance SE v. Wave Cruiser LLC*, 36 F.4th 1346 (11th Cir.2022), *Great Lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*, 585 F.3d 236; 2010 A.M.C. 185 (5th Cir.2009), *Great Lakes Reinsurance (UK) PLC v. Vasquez*, 341 Fed.Appx. 515 (11th Cir.2009), *Joseph v. Great Lakes Reinsurance (UK) PLC*, 2011 U.S.Dist LEXIS 35428 (N.D.Oh.2011), *Great Lakes Reinsurance (UK) v. Rosin*, 757 F.Supp.2d 1244, 1251, 2011 A.M.C. 223 (S.D.Fla.2010), *Great Lakes Reinsurance (UK), PLC v. Sea Cat I, LLC*, 653 F.Supp.2d 1193, 2010 A.M.C. 703 (W.D.Ok.2009), *Great Lakes Reinsurance (UK) PLC v. Dion*, 2010 A.M.C. 338 (S.D.Cal.2009*), Great Lakes Reinsurance (UK) PLC v. S. Marine Concepts, Inc.*, 2009 A.M.C. 1093 (S.D.Tex.2008).

relationship" to New York under federal admiralty law. *See Great Lakes Ins. SE v. Lassiter*, No. 21-21452-CIV, 2022 WL 1288741, at *7 (S.D. Fla. Apr. 29, 2022) ("Courts have concluded that such contacts are sufficient to satisfy the substantial relationship test.")

## **Argument – Breach of the Fire Extinguishing Equipment Warranty**

The Policy's fire extinguishing equipment warranty states, "k) If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is **_WARRANTED_** that such equipment is properly installed and is maintained in good working order.  This includes the weighing of tanks once a year, certification/tagging and recharging as necessary."  SMFND, ¶35 [emphasis added].  The Policy further states, "t) Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will void this policy from inception." SMFND, ¶37.

The undisputed facts show that the Vessel's fire suppression system and the Vessel's handheld fire extinguisher had last been certified and tagged in March 2019.  SMFND, ¶¶41-42. The undisputed facts show that the certification and tagging of the Vessel's fire suppression system and the Vessel's handheld fire extinguisher all expired in May 2020.  *Id*.  It cannot possibly be disputed that, at the inception of the Policy and at the time of the loss which is the subject of the present suit, the certification tags on the fire suppression system and the fire extinguisher were all expired.  *Id*.

Due to *Wilburn Boat*, the courts generally have no idea whether express warranties in policies of marine insurance are governed by an entrenched rule of federal law or by state law. *Wilburn Boat*, *supra*, *Travelers Property Casualty Company of America v. Ocean Reef Charters*

*LLC*, 996 F.3d 1161 (11th Cir.2021), *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364; 1988 A.M.C. 1238 (11th Cir.1988). Fortunately, the outcome in the present case is the same, regardless of whether federal admiralty law or New York law is applied.

Under federal admiralty law, breach of an express warranty in a policy of marine insurance absolutely voids the policy, even where the breach played no role whatsoever in the loss. In 2008, the United States Court of Appeals for the First Circuit considered an identical fire suppression equipment warranty in a policy of marine insurance identical to the present Policy, issued through the same agent (Concept), and containing the same choice of law clause. *Lloyd's of London v. Pagan-Sanchez*, 539 F.3d 19; 2008 A.M.C. 1990 (1st Cir.2008).[2] The coverage dispute arose when the vessel sank due to an exhaust hose which became disconnected and allowed water to enter the vessel. *Id*. at 21. Exactly like the present matter, the post-loss investigation established that the vessel's various fire extinguishers had not been inspected or certified within the preceding year. *Id*. Exactly like the present matter, there was no dispute that the breach of the fire suppression equipment warranty played no role whatsoever in the loss. *Id*. However, contrary to the choice of law clause, which called for the application of either federal admiralty law or New York law, the district court applied Puerto Rican law and held that the fire suppression equipment warranty was unenforceable because the loss was causally unrelated to the breach. *Id*.

On appeal, the First Circuit issued multiple rulings appliable to the present motion. First, the court held that the fire suppression equipment warranty was unambiguous and had to be applied exactly as written. *Id*. at 23. Since the insured had presented zero evidence that the fire extinguishers had been properly recertified and retagged within the previous year, the insured was undoubtedly in breach of the warranty. *Id*. Second, turning to the effect of the breach, the First

---

[2] In 2008, Concept Special Risks, Ltd. was known as T L Dallas (Special Risks) Ltd.

Circuit held that, under federal admiralty law, "breach of a promissory warranty in a maritime insurance contract excuses the insurer from coverage." *Id*. at 24. Therefore, notwithstanding complete agreement between the parties that the breach of the warranty played no role whatsoever in the loss, the First Circuit held that the breach of the warranty was an absolute bar to coverage. *Id*.[3]

*Pagan-Sanchez* establishes that the specific warranty at issue in the present case, the fire suppression equipment warranty, is governed by federal admiralty law and is subject to the rule of strict or literal compliance, even where the breach played no role in the loss.

Alternatively, if this Court is not convinced that there is an entrenched rule of federal admiralty that applies to the fire suppression equipment warranty, multiple courts have enforced the same choice of law clause and held that the same rule applies under New York law. For instance, in 2010, the Southern District of Florida held that there is no rule of federal admiralty law relating to warranties in policies of marine insurance and that state law applies. *Great Lakes Reinsurance (UK) PLC v. Rosin*, 757 F.Supp.2d 1244; 2011 A.M.C. 223 (S.D.Fla.2010).[4] *Rosin*, arose out of a policy of marine insurance on a pleasure craft and involved the same marine insurer as the present case, and the same choice of law clause as the present Policy. *Id*. One evening, when the vessel was being operated by the insured's son (who was not a named operator), the vessel struck something underwater and quickly sank. *Id*. at 1249. The district court held that, because there was no rule of federal admiralty law dealing with the specific warranty at issue, New York law therefore applied. *Id*. at 1257. Moreover, under Florida, which would have applied absent a choice of law clause, the warranty would have likely been unenforceable. Fl.Stat.

---

[3] To cover all its bases, the First Circuit also held that the same rule applies under New York law. *Id*. at 25.
[4] The choice of law alternatives discussed here arise out of the confusion created by the *Wilburn Boat* case in 1955. Fortunately, since the result is the same under either federal admiralty law or New York law, it is not necessary to untangle the knot created by that confusing decision.

§627.409. But, like federal admiralty law, New York law requires strict or literal compliance with express warranties and, when a warranty is breached, the policy is void, even if the breach played no role whatsoever in the loss. *Rosin*, at 1258. Applying this rule of New York law, the district court found that the operation of the vessel by the son constituted a breach of the named operator warranty, with the necessary result that the policy was void and there was no coverage for the loss. *Id*.

Similarly, in 2005, the District of Rhode Island dealt with a marine insurance contract that contained a lay-up warranty. *New Hampshire Ins. Co. v. Dagnone*, 394 F.Supp.2d 480; 2005 A.M.C. 1339 (D.R.I.2005). The insured warranted that the vessel would be laid-up and out of commission from November to April. *Id*. at 482. However, in a clear breach of the express lay-up warranty, the vessel sank at its dock during a storm in early December. *Id*. First, the court considered what law to apply and found no applicable rule of federal admiralty law. *Id*. at 483. Therefore, since the policy contained no choice of law clause, the court applied the law of the state where the policy was delivered, New York. *Id*. at 484. After finding that New York law requires the strict construction of warranties in policies of marine insurance, the District of Rhode Island found that "New York law forecloses any coverage under the Yacht Policy if [the insured] was in breach of the Lay–Up Warranty at the time of the accident, irrespective of the relation between the breach and the damage." *Id*. at 486. Therefore, since the insured was in clear breach of the lay-up warranty, coverage was absolutely foreclosed. *Id*.

Early last year, the Southern District of Florida considered an identical policy of marine insurance which contained an express warranty that only individuals specifically identified on the declarations page of the policy of marine insurance would operate the insured vessel. *Great Lakes Insurance SE v. Lassiter*, 2022 WL 1288741 (S.D.Fla.2022). The disputed policy of marine

insurance contained an identical choice of law clause. *Id*, at p. 5. On summary judgment, the court applied New York's rule of strict or literal compliance and held that the operation of the vessel by a person not named in the policy breached the named operator warranty and absolutely barred coverage for the loss. *Id*.

Even more recently, Judge Altonaga of the of the Southern District of Florida considered an identical fire suppression equipment warranty in an identical policy of marine insurance, issued by CLEAR SPRING, and which included an identical choice of law clause. *Clear Spring Property and Casualty Company v. Viking Power LLC*, 2022 WL 17987116 (S.D.Fla.2022). The *Viking Power* case concerned coverage for a vessel damaged by fire in August 2021. *Id*, at p. 2. On summary judgment, it was undisputed that, although the vessel's fire suppression equipment had been periodically inspected, it had not been properly certified and tagged since December 2018, and was therefore expired at the inception of the policy and at the time of the loss. *Id*, at p. 1. Exactly like CLEAR SPRING in the present matter, the marine insurer established the breach by presenting irrefutable photographic evidence of the expired tags. *Id*. Therefore, the court held on summary judgment that, under New York law, the insured's failure to properly certify the fire suppression equipment in accordance with the express terms of the warranty voided the policy of marine insurance from inception. *Id*.[5]

This caselaw makes clear that, should this Court elect to apply New York law instead of federal admiralty law, the same rule applies; the Policy's warranty pertaining to the Vessel's fire suppression equipment must be strictly complied with and the breach of that warranty voids the Policy, even though breach played no role in the loss.

---

[5] Additional facts about the case can be found in the district court's earlier decision enforcing the policy's choice of law clause and denying the insured's motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Clear Spring Property and Casualty Company v. Viking Power LLC*, --- F.Supp.3d ----; 2022 WL 17987074 (S.D.Fla.2022).

In the present matter, the fire suppression equipment warranty expressly required that such equipment be recertified and retagged as necessary. Ex 8, p. 13. However, the undisputed and irrefutable photographic evidence establishes that the tags on the Vessel's fire suppression equipment were all expired at the inception of the Policy and at the time of the partial sinking. Therefore, under federal admiralty law, New York law, and the express terms of the Policy, there can be no coverage for WELLO's loss, regardless of the cause, and CLEAR SPRING is entitled to an award of summary judgment declaring that the Policy affords no coverage for WELLO's loss.

## Failure to Disclose Prior Losses

Under federal admiralty law, every applicant for marine insurance is under an affirmative duty to truthfully disclose all facts material to the underwriter's judgment, even if not asked. *Quintero v. Geico Marine Insurance Company*, 983 F.3d 1264 (11th Cir. 2020); *Fireman's Fund Ins. Co. v. Great American Ins. Co. of New York*, 822 F.3d 620, 2016 A.M.C. 1217 (2d. Cir. 2016); *Catlin at Lloyd's v. San Juan Towing & Marine*, 778 F.3d 69, 2015 A.M.C. 694 (1st Cir. 2015); *St. Paul Fire & Marine Ins. Co. v. Abhe & Svoboda, Inc.*, 798 F.3d 715, 2015 A.M.C. 2113 (8th Cir. 2015); *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 2008 A.M.C. 2300 (3d Cir. 2008); *Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645, 2008 A.M.C. 305 (9th Cir. 2008).[6] In the Eleventh Circuit, the question of materiality is viewed from the objective standpoint of the platonic reasonable underwriter. *AIG v. O'Neill*, *supra*. A misrepresented or withheld fact is material if it would have caused the platonic reasonable underwriter reviewing the application to either refuse to issue a policy, to issue a policy with different terms, or to issue a policy at a higher premium. *McLanahan v. Universal Ins. Co.*, 26

---

[6] The same rule applies under New York law. *New York Marine & General Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 123; 2002 A.M.C. 149 (2d Cir.2001).

11

U.S. 170, 188; 1998 A.M.C. 285 (1828), *HIH Marine Services, Inc. v. Fraser*, 211 F.3d 1359, 1362; 2000 A.M.C. 1817 (11th Cir.2000). Therefore, if the truthful disclosure of a misrepresented or withheld fact would have caused the platonic reasonable underwriter to either (1) refuse to issue a policy, (2) issue a policy with different terms, or (3) issue a policy at a higher premium, then the fact was material, and the disputed policy of marine insurance is void from its inception ("*ab initio*"). *Id*.

For instance, in the recent matter of *AIG v. O'Neill*, the Eleventh Circuit considered an insurance claim arising out of the theft of the vessel. *Supra*. On summary judgment, it was undisputed that, at the time the application for coverage was submitted, the insured misrepresented the purchase price of the vessel. *Id*, at 1302. On these undisputed facts, the Eleventh Circuit started by repeating the basic rule that decides the present case, that "an insured must fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk. *Id*, at 1303 [internal citations and quotations omitted]. Next, the Eleventh Circuit held that, "[t]o decide whether a fact is material, we inquire whether it could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk." *Id* [internal quotations omitted]. This establishes an objective test for materiality. Therefore, since any prudent and intelligent underwriter would consider the purchase price material when deciding to cover a proposed risk and setting the amount of coverage, the Eleventh Circuit affirmed the decision of the district court and held that the policy of marine insurance was void from inception. *Id*, at 1305-06.

Based on the Eleventh Circuit's rule, resolving the present summary judgment motion requires answering two questions. First, did WELLO misrepresent or fail to truthfully disclose any facts to CLEAR SPRING? Second, would the truthful disclosure of those facts have caused a

platonic reasonable underwriter to either refuse to issue a policy, to issue a policy with different terms, or to issue a policy at a higher premium?

In answer to the first question, there is no dispute that WELLO completely failed to disclose two losses, the 2016 fuel leak loss and the 2018 grounding loss. Despite specific questions on the 2018 Application and the renewal questionnaires, WELLO omitted any mention of the 2016 fuel leak loss or the 2018 grounding loss. Whatever the cause of these omissions, WELLO failed to respond truthfully to the specific questions on the 2018 Application, the 2019 Renewal Application, the 2020 Renewal Application, and the 2021 Renewal Application.

Moreover, the undisputed facts show that, even though Concept was the agent that acted for the prior insurer in paying the 2016 loss, Concept could not have known of the 2016 loss from its own files because the 2018 Application spelled WELLO's name differently. Because of this different spelling, a search of Concept's records did not find WELLO's prior loss from 2016.

Moreover, any argument as to whether Concept was actually or constructively aware of the 2016 loss is irrelevant because insurer is entitled to rely on the truth of the material facts disclosed with no affirmative duty to "double check" those facts, even where the insurer theoretically could have located such information through a search of its own records. In the case of *AIG Centennial Ins. Co. v. O'Neill*, No. 09-60551-CIV, 2013 WL 10450139, at *6 (S.D. Fla. May 9, 2013), *aff'd*, 782 F.3d 1296 (11th Cir. 2015), the insured submitted an application which inquired into prior loss history. In response, the insured stated he had suffered only one prior loss. *Id.* The insurer, PCG (an affiliate of AIG) issued the policy. *Id.* After the claim was submitted, the insurer learned that in fact the insured had suffered three prior losses with AIG or other AIG affiliates. *Id.*, at *12. To begin its analysis, the Court acknowledged that prior loss history was material to the risk where underwriters had testified that "if three prior losses, instead of one, had existed, the

PCG underwriters might have 'charge[d] a higher premium, [ ] increse[d] the deductible, [or] add[ed] conditions and warranties into the policy to mitigate some exposure such as a captain warrantee.'" *Id.*, at *17. The insured argued that AIG, PCG and/or AIG had access to his loss history and therefore had actual knowledge of his prior losses, as these losses were allegedly incurred on policies underwritten by other components of AIG, other than PCG. *Id.* The Court said that this "speculative assertion" concerning whether the insurer had actual knowledge was "immaterial" because under the doctrine of *uberrimae fidei,* an underwriter is entitled to rely on the information provided by the prospective insured, and the underwriter need not undertake any independent investigation to confirm the accuracy of the application submitted. *Id.*

Any assertion by the Defendant that Concept could have or should have checked its own records to confirm that the Insured was not misrepresenting its loss history would be similarly "speculative." *Id.* Under the federal admiralty doctrine of *uberrimae fidei*, Underwriters at Concept were entitled to rely upon the accuracy of the representations made to it by the Insured and were under no affirmative duty to perform their own investigations into whether such representations were in fact correct. *Id.* Although Florida law is not applicable in this matter, it should be noted that the result would be the same under Florida law where the general rule is clear that "an insurer is entitled, as a matter of law, to rely upon the accuracy of the information contained in the application and has no duty to make additional inquiry." *Miguel v. Metropolitan Life Ins. Co.*, 200 Fed. Appx. 961, 969 (11th Cir. 2006) (citing *Independent Fire Ins. Co. v. Arvidson*, 604 So.2d 854, 856 (Fla. 4th DCA 1992), *rev. denied*, 617 So.2d 318 (Fla. 1993)). *See also*, *First Nat'l Bank Holding Co. v. Fid & Deposit Co. of Md.*, 885 F. Supp. 1533, 1535 (N.D. Fla. 1995); *Mt. Hawley Ins. Co. v. Miami River Port Terminal, LLC*, 228 F.Supp.3d 1313, n.8 (S.D. Fla. 2017); *Baquero v. Lancet Indem. Risk Retention Group, Inc.*, 2013 WL 5237740 (S.D. Fla. 2013); *State Farm Mut.*

14

*Auto. Ins. Co. v. Cockram*, 2012 WL 4903271, at *4 (M.D. Fla. 2012); *Markel Ins. Co. v. Whigham Law Group, P.A.*, 2018 WL 4559089, n.4 (M.D. Fla. 2018); *Braddy v. Infinity Assur. Ins. Co.*, 2015 WL 1056068, at *3 (M.D. Fla. 2015).

In answer to the second question, the undisputed affidavit of Concept's underwriter, Beric Anthony Usher, establishes that he is a reasonable underwriter[7] and that the truthful disclosure of WELLO's loss history would have caused any reasonable underwriter to have refuse to issue the Policy. SMFND, ¶50.

Only sixteen months ago, this precise issue was the subject of a decision from Judge Altonaga in the case of *Great Lakes Insurance SE v. SEA 21-21 LLC*, 568 F.Supp.3d 1318 (S.D.Fla.2021). *SEA 21-21* arose out of an identical policy of marine insurance, containing an identical choice of law clause, and issued by the same underwriting and claims handling agent, Concept Special Risks Ltd. *Id*, at 1321. Following a fire loss, Concept investigated and discovered that, just as in the present case, the insured had repeatedly failed to disclose material information, specifically, a named operator's loss history over the course of several renewals. *Id*. On summary judgment, the marine insurer presented exactly the same undisputable evidence as the present case, (1) the affidavit of the underwriter, Beric Anthony Usher, and (2) Concept's Underwriting Manual. *Id*. Although summary judgment was denied for other reasons not relevant here, Judge Altonaga determined that the materiality of the prior losses had been established as a matter of law. *Id*., at 1324.

Since there can be no dispute that WELLO failed to truthfully answer specific questions on the original application and multiple renewals, the only further question before this Court is

---

[7] As an aside, it should be noted that, as far back as 1998, federal courts have specifically found Mr. Usher to be a reasonable underwriter whose sworn affidavit is sufficient to support an award of summary judgment. *Certain Underwriters at Lloyds, London v. Giroire*, 27 F.Supp.2d 1306; 1998 A.M.C. 2153 (S.D.Fla.1998).

whether those misrepresentations were material to Concept's underwriter. In the present case, CLEAR SPRING has offered the exact same evidence which was presented in the *SEA 21-21* case, (1) the affidavit of Concept's underwriter and (2) Concept's Underwriting Manual. This undisputable evidence establishes that Concept considered it vital to know the loss history of every individual who might operate WELLO's vessel. Further, this undisputable evidence establishes that, had the truth been disclosed, Concept would have entirely declined to offer coverage. SMFND, ¶50. Therefore, WELLO's misrepresentations were material, with the result that the Policy is void *ab initio* ("from inception") under the federal admiralty law doctrine of *uberrimae fidei* ("utmost good faith").

## Conclusion

WHEREFORE, CLEAR SPRING asks that this Court issue its order declaring that Policy No. CSRYP/204845 is void from its inception, affording no coverage of the loss suffered by WELLO, and awarding all such further relief as may be appropriate in the premises.

Dated:       February 14, 2023
             Fort Lauderdale, Florida

                                        Respectfully submitted,

                                        THE GOLDMAN MARITIME LAW GROUP
                                        *Attorneys for Plaintiff*
                                        401 East Las Olas Boulevard
                                        Suite 1400
                                        Fort Lauderdale, FL 33301
                                        Tel (954)356-0460
                                        Fax (954)832-0878
                                        Cel (617)784-1100


                                        By: /s/ Steven E. Goldman
                                        STEVEN E. GOLDMAN
                                        FLA. BAR. NO. 345210

By: /s/ Jacqueline L. Goldman
JACQUELINE L. GOLDMAN
FLA. BAR. NO. 1005573

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 14, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all counsel of record.

Raul Morales, Esq.
Cristina Salem, Esq.
MARTINEZ MORALES
2600 S. Douglas Road, Suite 305
Coral Gables, FL 33134
T: 305-501-5011
F: 786-272-7997
rmorales@mmlawfl.com
csalem@mmlawfl.com

    THE GOLDMAN MARITIME LAW GROUP
    *Attorneys for Plaintiff*
    401 East Las Olas Boulevard
    Suite 1400
    Fort Lauderdale, FL 33301
    Tel (954)356-0460
    Fax (954)832-0878
    Cel (617)784-1100

    By: /s/ Steven E. Goldman
    STEVEN E. GOLDMAN
    FLA. BAR. NO. 345210

    By: /s/ Jacqueline L. Goldman
    JACQUELINE L. GOLDMAN
    FLA. BAR. NO. 1005573