**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**IN ADMIRALTY**

**CLEAR SPRING PROPERTY**
**AND CASUALTY COMPANY,**

    Plaintiff,

Case No. 1:21-cv-24234-RKA

**vs.**

**WELLO AND MOM, LLC,**

    Defendant.

_____

**DEFENDANT, WELLO AND MOM, LLC'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT [ECF NO. 81]**

Defendant, WELLO AND MOM, LLC (hereinafter **"WELLO"**), by and through its undersigned attorneys, and pursuant to and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7.1 and 56.1 of the Local Rules of the United States District Court for the Southern District of Florida, file this Response in Opposition to Plaintiff, CLEAR SPRING PROPERTY AND CASUALTY COMPANY's (**"CLEAR SPRING"**) *Motion For Summary Judgment and Incorporated Memorandum of Law* [ECF No. 81], (the **"Motion"**), and states that CLEAR SPRING's Motion should be denied for the following reasons:

**GENERAL STATEMENT OF THE CASE**

1. At all times material hereto, WELLO was the owner of the 2003 LoLette 40' Sunseeker with Identification No. XSK02857F304 and all its accessories (the **"Sunseeker"**). [ECF 86 ¶3].

2. In or around 2018, WELLO completely ***replaced*** the Sunseeker's prior engines, the Yamaha 250 2-stroke engines, ***with Suzuki triple 300hp gas engines*** (the term **"Suzuki**

**Sunseeker"** shall hereinafter refer to the 2003 37' Sunseeker vessel with Suzuki triple 300hp gas engines with HIN XSK02857F304). [ECF 86 ¶18].

3. On or about July 31st, 2021, CONCEPT SPECIAL RISKS LTD. (**"CONCEPT"**), issued on behalf of CLEAR SPRING a marine insurance policy, Policy No. CSRYP/204845, for the policy period of July 31st 2021, through July 31st, 2022 (the **"2021-2022 Policy"** or the **"Policy"**). [ECF 84 ¶1].

4. CLEAR SPRING did not conduct a thorough investigation of its underwriting file prior to writing the 2021-2022 Policy. [ECF 86 ¶40].

5. On or about September 27th, 2021, during the period of coverage afforded under the 2021-2022 Policy by CLEAR SPRING, the Suzuki Sunseeker suffered a sinking (**"2021 Loss"**). [ECF 86 ¶43].

6. On December 3rd, 2021, CONCEPT informed WELLO in writing that CLEAR SPRING denied coverage for the Suzuki Sunseeker for the 2021 Loss. [ECF 84 ¶3].

## SUMMARY OF THE ARGUMENTS

In its Motion, CLEAR SPRING asserts summary judgment is warranted on its Fifth Cause of Action due as WELLO made the following two (2) misrepresentations on the 2021 Renewal Questionnaire: 1) failing to disclose a 2016 loss related to a fuel tank leak (**"2016 Claim"**) and 2) failing to disclose an engine loss in 2018 (**"2018 Claim"**). As explained in detail below, there is no genuine dispute of material fact as to whether WELLO made any misrepresentation, and whether said misrepresentation were material fats. Thus, precluding summary judgment. Next, CLEAR SPRING seeks summary judgment on its Sixth Cause of Action due an alleged breach by WELLO of the 2021-2022 Policy's fire extinguisher warranty. However, there is no genuine

dispute of material fact that WELLO complied with the terms of the Policy and did not breach said provision. Thus, this argument also fails and the Motion must be denied.

I. **GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING WHETHER WELLO BREACHED THE POLICY'S FIRE EXTINGUISHER WARRANTY**

As an initial matter, CLEAR SPRING's Motion must be denied because there is a genuine issue of material fact concerning whether or not WELLO breached the purported warranties of the policy at issue. Specifically, in the Motion, CLEAR SPRING argues that WELLO breached the Policy's fire extinguishing equipment warranty in section (k) of the Policy because it claims "the certification tags on the fire suppression system and the fire extinguisher were all expired." Mot. P. 6. However, as explained below, WELLO disputes this fact, which creates a genuine issue of material fact, thus, preventing entry of summary judgment. Moreover, as highlighted below, the policy does not contain any warranty requirements concerning the "fire suppression system."

The explicit language of the Policy states, "(k) [i]f the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is **_properly installed and is maintained in good working order_**. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary." [ECF 86 Ex 9]. First, it is clear by the plain language of the Policy that section (k) does not refer to the "fire suppression system," only "fire extinguishing equipment." *Id*. Next, certification/tagging and recharging need only be done "as necessary." *Id*. The Policy is ambiguous and does not explain what "as necessary" means, and CLEAR SPRING has not produced any evidence demonstrating, or presented an expert opinion, that certification/tagging and recharging is "necessary" yearly (or at any other interval).

Notably, a fire extinguisher's useful life is twelve (12) years. [ECF 87 Ex 4 ¶9]. Here, WELLO contends that the Suzuki Sunseeker's fire extinguishers were in working condition on

3

MM | MARTINEZ MORALES
Attorneys at Law
2600 S. Douglas Road, Suite 305, Coral Gables, FL 33134, T: 305-501-5011, F: 786-272-7997

September 27th, 2021. [ECF 87 Ex 4 ¶7]. Moreover, WELLO asserts that its fire extinguishers were completely filled and had never been used at the time of the 2021 Loss. [ECF 87 Ex 4 ¶8]. WELLO further attests that one of its owners and managers, Roy Cisneros, weighed the fire extinguishing equipment on the Suzuki Sunseeker, specifically the fire extinguishing tanks, once a year, since WELLO purchased the Suzuki Sunseeker. [ECF 87 Ex 4 ¶5]. Moreover, WELLO hired an individual to certify/tag and recharge the fire extinguishing tanks as necessary since the vessel was purchased. [ECF 87 Ex 4 ¶6]. Thus, in reality, there is no dispute of material fact that WELLO complied with its duties under the Policy, and CLEAR SPRING's argument fails. CLEAR SPRING's contention that WELLO breached the Policy because the fire extinguishers were not certified/tagged yearly, is clearly disputed. At the very least, WELLO's assertions create genuine issues of material facts that prevent the entry of CLEAR SPRING's Motion.

## II. A BREACH OF THE FIRE EXTINGUISHING EQUIPMENT WARRANTY DOES NOT VOID THE POLICY

In the event that the Court finds that WELLO breached the fire extinguisher warranty, CLEAR SPRING argues that such breach voids the Policy under Federal admiralty law and New York law. However, CLEAR SPRING's Motion erroneously presupposes the validity of the 2021-2022 Policy's Choice of Law provision and that the application of the fire extinguisher warranty in the Policy is governed by Federal Admiralty or New York law.[1] As addressed in WELLO's Motion for Summary Judgment [ECF No. 85] and herein, Florida law governs choice of law

---

[1] The 2021-2022 Policy's Choice of Law clause states:
    It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

disputes concerning breach claims and whether the alleged breach of the fire extinguisher warranty voids the Policy (it would not, under Florida law).

This insurance coverage and contractual dispute is proceeding under admiralty jurisdiction and is subject to federal maritime conflict of laws. *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1161–62 (11th Cir.2009); *GREAT LAKES Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1257 (S.D. Fla. 2010)When admiralty jurisdiction applies, established federal rules of law govern over state law. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314 (1955) ("[I]n the absence of controlling Acts of Congress this Court has fashioned a large part of the existing rules that govern admiralty. And States can no more override such judicial rules validly fashioned than they can override Acts of Congress." (alteration added; citation omitted)). State law only applies in the absence of a judicially fashioned admiralty rule. *See GEICO Marine Ins. Co. v. Shackleford,* 945 F.3d 1135, 1139 (11th Cir. 2019) (quoting *AIG Centennial Ins. Co. v. O'Neill*, 782 F.3d 1296, 1302 (11th Cir. 2015)).  In this case, the Policy provides that New York law is to apply in the absence of a "well established, entrenched principles and precedents of substantive United States Federal Admiralty law." [ECF 86 Ex 9]

Whether an express warranty in a maritime insurance contract is governed by federal maritime or state law depends on the precise warranty being debated.  Entrenched federal maritime law exists concerning only ***specific*** express warranties in maritime insurance policies—not ***all*** warranties. *GREAT LAKES Ins. SE v. Lassiter*, 21-21452-CIV, 2022 WL 1288741, at *5 (S.D. Fla. Apr. 29, 2022) (citations omitted). For example, specific warranties governed by entrenched maritime law include, but are not necessarily limited to, navigation limit and trading limit warranties. *See GREAT LAKES Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1257 (S.D. Fla. 2010) *citing Lexington Ins. Co*., 835 F.2d at 1367 (citations omitted).This principle that

there is no uniform entrenched maritime law governing express warranties originated in *Wilburn Boat*, in which the Supreme Court specifically ruled that there was no established federal admiralty rule "requiring strict fulfillment of maritime insurance warranties," and, importantly, declined to fashion such a federal rule. *See id*. at 314–16, 75 S.Ct. 368.  In *Ocean Reef* the Eleventh Circuit refused to "eviscerate *Wilburn Boat* and its holding that there is no established federal maritime rule requiring strict fulfillment of **_all warranties_** in marine insurance policies," instead finding there are no entrenched federal maritime rules governing captain or crew warranties. *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1169 (11th Cir. 2021)(emphasis added). ("[T]here is no established and entrenched federal precedent concerning the effect of a breach of a 'named operator' warranty[.]" (alterations added; quotation marks omitted; quoting *GREAT LAKES Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1257 (S.D. Fla. 2010)).

Thus, per *Wilburn Boat*, a court must look to see if the specific warranty at issue is (or should be) the subject of a uniform or entrenched federal admiralty rule. *See Coastal Fuels Mktg., Inc. v. Fla. Exp. Shipping Co., Inc.*, 207 F.3d 1247, 1251 (11th Cir.2000); *Wilburn Boat Co. v. Fireman's Fund Ins. Co*., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). "[T]here is no firmly established federal maritime precedent governing express fire-suppression or survey-compliance warranties." *Clear Spring Prop. & Causalty Co. v. Viking Power LLC*, No. 21-62306-CIV, 2022 WL 17987074, at *3 (S.D. Fla. Mar. 11, 2022*)* Thus, state law applies.  *See id.* As explained below, Florida, not New York, law should apply.

### A. APPLYING NEW YORK LAW WOULD BE UNREASONABLE AND UNJUST

The Policy at issue states that if there is no "entrenched principles and precedents of substantive United States Federal Admiralty law and practice" and "no such well established,

entrenched precedent exists," the Policy is "subject to the substantive laws of the State of New York." [ECF 86 ¶9]. "Although the Eleventh Circuit apparently has not addressed the effect of a choice-of-law provision in a marine insurance policy, the general rule in the federal courts is that such a provision will be applied unless the state in question "has **_no substantial relationship_** to the parties or the transaction or the state's law conflicts with the fundamental purpose of maritime law." *See GREAT LAKES Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1250–51 (S.D. Fla. 2010) *citing Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514, 1517 (5th Cir.1988); *accord Hawkspere Shipping Co. Ltd. v. Intamex, S.A.*, 330 F.3d 225, 233 (4th Cir.2003); *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir.1997); *Neely v. Club Med Management Services, Inc.*, 63 F.3d 166, 197 n. 36 (3rd Cir.1995) *(en banc)*; *Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 766–68 (D.C.Cir.1992). Moreover, a court may decline to enforce a choice of law provision in a maritime insurance contract if enforcement would be unreasonable or unjust." *Rosin* 757 F. Supp. 2d at 1251 citing GREAT LAKES *Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 242 (5th Cir.2009). Here, the undisputed facts evidence that there is no substantial relationship to New York, and it would be unreasonable and unjust to apply New York law. The only reason CLEAR SPRING seeks to apply New York law is to scam and defraud WELLO, as will be discussed below.

The unreasonableness of New York as the "chosen state" is specifically evidenced by the fact that neither the parties nor the vessel at issue have any relationship with New York. CLEAR SPRING is not a New York corporate entity and it does not have its principal place of business in New York. [ECF 74: p. 2, ¶ 4]. As CLEAR SPRING admits in its pleadings, it "is a corporation organized and existing under the laws of the State of Texas, with its office and principal place of business located in the State of Illinois." [ECF 74: p. 2, ¶ 4]. All relevant underwriting and claims

decisions are generally and were in this case made by its managing general agent CONCEPT in the United Kingdom – not even in the United States. [ECF 80 Ex 11].

Furthermore, this "transaction" has zero relationship, much less a "substantial relationship" to New York. The state highly-connected to the 2021-2022 Policy is actually Florida. In fact, the 2021-2022 Policy was applied for through CASEY INSURANCE GROUP, INC. (**"CASEY INSURANCE"**), a Florida based agency. [ECF 87 Ex 3]. However, CASEY INSURANCE was never authorized to act as an agent for WELLO; in fact, WELLO did not ever communicate with CASEY INSURANCE. [ECF 87 Ex 3]. WELLO never bargained for and was never made aware of the choice of law provision. CASEY INSURANCE dealt directly with CLEAR SPRING's managing general agent CONCEPT and CASEY INSURANCE, as the producing and surplus lines agent, issued the 2021-2022 Policy pursuant to Florida's Surplus Lines law and delivered the Policy to the Assured and Additional Assured in Florida. [ECF 89 Ex 9].

Moreover, WELLO, the Vessel's owner, as well as the Policy's Additional Assured and Loss Payee is a Florida Limited Liability Company. WELLO's sole members, Roy Cisneros and Amelina Cisneros, are residents of the state of Florida for purposes of the 2021-2022 Policy and this action. [ECF 87 Ex 3, Ex 4]. The Vessel sank in Marathon, Florida. *Id*.

The only connection this entire case has to New York is the bare reference in the Policy's choice of law provision. In sum, the application of New York law to this case is not reasonable or just. Stated differently, there is no reasonable basis for the choice of New York law to govern the 2021-2022 Policy providing hull and machinery coverage for accidental physical loss or damage to the subject Vessel where (i) the Vessel's owner was/is in Florida; (ii) the Assured is a Florida Limited Liability Company; (iii) the Vessel was registered, flagged and had its home dock in Florida; and (iv) the Vessel was subject to the navigational limits of the East Coast of the United

States, Florida and the Bahamas. [ECF 87 Ex 3]. The requisite "substantial relationship" to New York is fatally absent and Section 187(2)(a) therefore does not permit the application New York law.

### B. CONFLICT OF LAW RULES

Generally, in a dispute over which state's law applies, federal courts apply the conflict-of-law rules of the forum state. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1059 (11th Cir. 2007). As noted above, the Policy at issue contains a Choice of Law clause, thus,

> under Florida law, courts will enforce "choice-of-law provisions ***unless*** the law of the chosen forum contravenes strong public policy." *Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co.,* 761 So. 2d 306, 311 (Fla. 2000) (citations omitted); *see Burroughs Corp. v. Suntogs of Miami, Inc.,* 472 So. 2d 1166, 1167-69 (Fla. 1985).

*Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2005). (emphasis added). Regardless of whether CLEAR SPRING's choice of law has general application to the insurance contract, Florida does indeed have a court-recognized "paramount interest in protecting its citizens from inequitable insurance contracts." *Aetna Cas. & Sur. Co. v. Enright*, 258 So. 2d 472, 475 (Fla. 3d DCA 1972), *quoted in State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160 (Fla. 2006). The intent of Florida's Insurance Code is plain:

> **624.11 Compliance required.** –
> (1) No person shall transact insurance in this state, or relative to a subject of insurance resident, located, or to be performed in this state, without complying with the applicable provisions of this [Insurance Code, Fla. Stat. Title XXXVII, chap. 624-651].

Thus, the State of Florida prohibits insurance companies from operating in the State without complying with Fla. Stat. § 627.409. In this case, it is evident that the subject Policy is a form contract intended to ***circumvent the protections of Florida residents*** enacted by the Florida Legislature. Applying New York law would be contrary to a fundamental public policy. It is

evident that Florida has a materially greater interest than New York with regard to the ramifications of the alleged breach of warranties that are not causally-related to the loss. Thus, it would conflict with public policy to apply New York law.

Aside from the public-policy exception to contractual choice-of-law matters, Florida authorities occasionally apply a reasonable-relationship test. In the Uniform Commercial Code context, Fla. Stat. § 671.105(1) (2008) provides: "[W]hen a transaction bears a ***reasonable relation*** to this state and also to another state or nation, the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties." (emphasis added). At least one District Court of Appeal found it instructive to recite that

> [i]n addition to the express intent of the parties, a reasonable relationship to New Jersey is shown in the agreement itself. Under the agreement, cars were ordered in New Jersey, titles remained in New Jersey prior to receipt of payment, pricing and credit terms were established in New Jersey, claims for damages were made in New Jersey, and all parts were ordered from New Jersey.

*Dept. of Motor Vehicles for Use and Benefit of Fifth Ave. Motors v. Mercedes-Benz of N. Am., Inc.* 408 So. 2d 627, 629 (Fla. 2nd DCA 1981).

Moreover, the "most significant relationship" test was used by the Eleventh Circuit to determine which state's law applies in a conflict of law dispute. *See RMI Holdings v. Aspen Am. Ins. Co.*, 5:19CV153-TKW-MJF, 2020 WL 6749042, at *3 (N.D. Fla. July 15, 2020) *citing Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377, 1381-82 (11th Cir. 2006). That test requires consideration of five factors: "(a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the locus of the subject matter of the contract; and (e) the domicile of the parties." *Id*. at 1382 (citing Restatement (Second) Conflicts of Law § 188(2)).

Here, an analysis of those five factors leads to the conclusion that Florida has the "most significant relationship" to this case and Florida's law should govern. In the instant action, the

insurance coverage was negotiated in Florida, to be performed in Florida, paid for in Florida, through a Florida insurance broker or agent, for a Florida vessel, for a Florida permanent resident. New York has nothing to do with the transaction, its negotiation or performance, the parties, the vessel, nor the accident. Thus, it is clear that the parties have no relationship **_at all_** with New York, and Florida law should apply.

    C. **CHOICE OF NEW YORK LAW IS UNJUST, UNREASONABLE, AND UNENFORCEABLE**

As noted above, enforcing the 2021-2022 Policy's choice-of-law provision is unreasonable and unjust and contravenes Florida law; moreover, it is unenforceable under *The Bremen v. Zapata Off-Shore Co*, which held that under federal admiralty law a forum-selection provision is unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought." *The Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

*The Bremen* involved a dispute between an American and a German company concerning the enforceability of a forum-selection provision in a towing contract. The contract facilitated the transport of a drilling rig from Louisiana to Italy and mandated that disputes be brought before the "London Court of Justice." 407 U.S. at 2, 92 S.Ct. 1907. The Supreme Court held that the contract's forum selection was facially valid and should be honored **_unless a compelling and countervailing reason rendered enforcement unreasonable_**. *Id*. at 10, 15, 20, 92 S.Ct. 1907. The Supreme Court provided examples of circumstances where enforcement of a choice-of-forum provision would be "unreasonable and unjust," including, among other things, situations where enforcement would **_"contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."_** *Id* at 15, 92 S.Ct. 1907. (emphasis added).

Florida's public policy detests the voiding of a marine insurance policy based on a technicality that has no bearing on the loss and did not increase the risk. Fla. Stat. § 627.409(2) states:

> A breach or violation by the insured of a warranty, condition, or provision of a wet marine or transportation insurance policy, contract of insurance, endorsement, or application ***does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured***.

§ 627.409(2), Fla. Stat. (emphasis added). *See Pickett v. Woods*, 404 So. 2d 1152, 1153 (Fla. 5th DCA 1981) (stating that Section 627.409(2) was "designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss"); *Eastern Ins. Co. v. Austin*, 396 So. 2d 823, 824-25 (Fla. 4th DCA 1981) (holding that term "hazard" in Section 627.409(2) "refer[s] to danger to the insured vessel itself"); *see also Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1170 (11th Cir. 2021) (holding that Section 627.409(2) governed the effect of the insured's breach of the captain and crew warranties). Consistent therewith, Florida law imposes upon the insurer "the burden of proving a breach and 'a resulting increase of the hazard.'" *Ocean Reef Charters*, *supra* (citing *Fla. Power and Light Co. v. Foremost Ins. Co.*, 433 So. 2d 536, 536-37 (Fla. 4th DCA 1983)).

To the contrary, "New York Insurance Law [section] 3106(c)[,]" which "exempts marine insurance contracts from the general rule that a breach of warranty must be material in order for the insurer to disclaim coverage." *Cunningham v. Ins. Co. of N. Am.*, 521 F. Supp. 2d 166, 170 (E.D.N.Y. 2006) (alterations added; citation omitted); *see also N.Y. Ins. Law § 3106(c) (McKinney 2022). Similarly, New York law requires strict construction to warranties in maritime policies irrespective of the relation between the breach and the damage. *New Hampshire Ins. Co. v. Dagnone*, 394 F.Supp.2d 480: 2005 A.M.C. 1339 (D.R.I.2005). Thus, it is clear that New York

law is clearly to contrary to the laws of Florida and the public policy behind the law. The Southern District of Florida recognized this stark difference over 11 years ago when it stated: "New York law has long provided that 'the breach of an express warranty [in a marine insurance policy], whether material to the risk or not, whether a loss happens through the breach or not, absolutely determines the policy and the assured forfeits his rights under it.'" *Rosin*, 757 F.Supp.2d at 1258. Surely, in an effort to preserve Florida public policy, New York law should **_NOT_** apply and Florida law shall govern.

On this note, the instant case is highly distinguishable from *Viking Power* for various reasons, notably, the *Viking Power* case concerns coverage for a vessel **damaged *in* a fire** by August 2021. *See Clear Spring Property and Casualty Company v. Viking Power, LLC*, 2022 WL 17987116 (S.D.Fla 2022). In *Viking Power* it was alleged that the fire extinguishers were expired and granted summary judgment in favor of the insurer. *Id*. However, it must be noted that unlike the *Viking Power* case, here, the 2021 Loss has nothing to do with a fire! Thus, this Court should consider the fact that there is absolutely no relation between the alleged breach and the damage to the Suzuki Sunseeker.

**D. SECTION 627.409(2) DOES NOT PERMIT A "FROM INCEPTION" FORFEITURE OF COVERAGE UPON THE ALLEGED PRIOR VIOLATION OF A WARRANTY THAT DID NOT INCREASE THE HAZARD TO THE VESSEL AND PROXIMATELY CAUSE THE LOSS.**

There is no genuine issue of material fact that WELLO did not increase the hazard to the Suzuki Sunseeker and cause the sinking due to its alleged breach of the policy's fire extinguisher warranty. As noted above, Florida's public policy detests the voiding of a marine insurance policy based on a technicality that has no bearing on the loss and did not increase the risk. Fla. Stat. § 627.409(2) states:

13

MM | MARTINEZ MORALES
Attorneys at Law
2600 S. Douglas Road, Suite 305, Coral Gables, FL 33134, T: 305-501-5011, F: 786-272-7997

> A breach or violation by the insured of a warranty, condition, or provision of a wet marine or transportation insurance policy, contract of insurance, endorsement, or application ***does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured***.

§ 627.409(2), Fla. Stat. (emphasis added). In its Motion, CLEAR SPRING fails to allege or identify a single fact evidencing an "increased hazard" linkable to alleged expired fire extinguisher. Moreover, the affidavit of Mr. Usher does not refer to a single "increased hazard" caused by WELLO's alleged breach. In fact, there was no increase of the hazard whatsoever because WELLO disputes that the fire extinguishers were any way inoperable or deficient. Moreover, there is not a single fact in the Motion or any supporting evidence that evidences the alleged breach caused the sinking of the Suzuki Sunseeker. This is simply because the facts do not exist. Thus, CLEAR SPRING's Motion must be denied.

### III. THERE IS A GENUINE DISPUTE AS TO WHETHER WELLO MISREPRESENTED ITS LOSS HISTORY

In its second and final argument, CLEAR SPRING seeks to void the policy under the doctrine of *uberrimae fidei* due to WELLO's alleged failure to disclose loss history in its renewal application for insurance. "*Uberrimae fidei* requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000) (emphasis added). That *uberrimae fidei* applies only to facts material to ***a calculation of the insurance risk*** is a critical inquiry here, as "a material misrepresentation on an application for marine insurance is grounds for voiding" a policy of marine insurance. *Id.; Quintero v. Geico Marine Ins. Co.*, 983 F.3d 1264, 1271 (11th Cir. 2020) ("the *uberrimae fidei* doctrine requires an insured to 'fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk.'"). "The ultimate fact itself, which is the

test of materiality" is "whether the risk be increased so as to enhance the premium." *McLanahan v. Universal Ins. Co.*, 26 U.S. 170, 188, 7 L. Ed. 98 (1828).

Firstly, there is a genuine dispute of material fact as to whether WELLO made any misrepresentations or omissions in the 2021 Renewal Questionnaire. In its Motion, CLEAR SPRING alleges that WELLO made the following two (2) misrepresentations on the Renewal Questionnaire: 1) failing to disclose a 2016 loss related to a fuel tank leak (**"2016 Claim"**) and 2) failing to disclose an engine loss in 2018 (**"2018 Claim"**). To understand how there was no misrepresentation here, it is important to grasp the history of the Sunseeker's insurance and the ***bait-and-switch*** pulled off by CONCEPT, acting in concert with CLEAR SPRING. In July of 2016, when WELLO first acquired the Sunseeker, it obtained insurance for the vessel from GREAT LAKES INSURANCE SE (**"GREAT LAKES"**) through ***CONCEPT***. [ECF 86 ¶ 3-7.] Later, WELLO made the 2016 Claim to GREAT LAKES ***through CONCEPT***. [ECF 86 ¶ 11]. GREAT LAKES denied the claim, and in fact decided not to renew WELLO's insurance. [ECF 86 ¶ 11, 13]. In fact, it is undisputed that CLEAR SPRING had ***notice*** of the non-renewal as CONCEPT issued a letter notifying WELLO of this non-renewal! [ECF 87 Ex 1]. Therefore, there is absolutely no dispute that CLEAR SPRING had notice of both the 2016 Claim and the subsequent non-renewal in its underwriting file. *Id*.

Thereafter, WELLO insured the Sunseeker with Certain Underwriters at Lloyd's Subscribing to Certificate number M172742 and HISCOX MGA (collectively referred to as **"HISCOX"**). [ECF 86 ¶ 15]. While insured by HISCOX, an engine loss occurred on May 6th, 2018, resulting in the 2018 Claim made by WELLO to HISCOX. [ECF 86 ¶ 16-17]. Following the engine loss, WELLO completely ***replaced*** the Sunseeker's Yamaha 250 2-stroke engines ***with Suzuki triple 300hp gas engines*** (the term **"Suzuki Sunseeker"** shall hereinafter refer to the 2003

37' Sunseeker vessel with Suzuki triple 300hp gas engines with HIN XSK02857F304). [ECF 86 Ex 1, ¶17].

Later, through **CONCEPT**, WELLO again obtained coverage, this time for the Suzuki Sunseeker, from **GREAT LAKES** for July 2018-July 2019. [ECF 86 ¶ 24]. GREAT LAKES, having been the insurer at the time of the 2016 Claim, and CONCEPT, having been underwriting and claims handling agent, *already knew about the 2016 Claim*. [ECF 86 ¶ 11-12]. Accordingly, there was no need for WELLO to *re-disclose* the 2016 Claim to CONCEPT or GREAT LAKES at the time of application. Further, WELLO had completely replaced the engines impacted by the 2018 Claim, meaning there was *no loss to report – the engines, the only part of the Sunseeker which had been affected by the 2018 Claim, were gone and no longer part of the vessel.* Moreover, the application for insurance to GREAT LAKES for July 2018-2019 specifically requested information about the *Suzuki Sunseeker*, *not* the Sunseeker when it had Yamaha engines. [ECF 86 ¶ 20-23].

WELLO then filled out a renewal questionnaire from CONCEPT, and again renewed its insurance with GREAT LAKES for the July 2019-2020 policy period. [ECF 86 ¶ 25-28]. When it came time to renew for the July 2020-2021 policy period, CONCEPT *again* presented WELLO with a renewal questionnaire, and GREAT LAKES renewed WELLO's insurance. [ECF 86 ¶ 29-32]. In July of 2021, as expected CONCEPT *again* provided WELLO with a Renewal Questionnaire – the Renewal Questionnaire at issue in this action – nearly identical to the prior two renewal questionnaires. [ECF 86 ¶ 33]. As this was a *Renewal* Questionnaire to renew a **GREAT LAKES** Policy serviced by **CONCEPT**, there was again no need to re-disclose the 2016 Claim, of which all parties involved were aware.

However, unbeknownst to WELLO, CONCEPT, acting in concert with CLEAR SPRING,

was pulling a bait-and-switch on WELLO. Whereas WELLO was supplied with and completed a *Renewal* Questionnaire to renew a **GREAT LAKES** Policy serviced by **CONCEPT**, CONCEPT went ahead and issued a brand new policy with a brand new carrier – CLEAR SPRING! [ECF 87 Ex 1 ¶35-37]. Now, of course, to evade its coverage obligations, CLEAR SPRING claims WELLO failed to disclose the 2016 Claim and subsequent non-renewal of coverage on the Renewal Questionnaire. However, if WELLO's insurance had been instead *renewed* with GREAT LAKES, as it believed was occurring, there would have been no need for a re-disclosure of the claim. [ECF 87 Ex 1 ¶35-37]. As such, there was ***absolutely no misrepresentation by WELLO***, who believed it was re-applying to GREAT LAKES, which had handled the 2016 Claim. [ECF 87 Ex 1 ¶35-37]. More importantly, it has been discovered during this case that CLEAR SPRING had notice and documentation of the 2016 Claim in its underwriting files, because CONCEPT serviced both CLEAR SPRING and GREAT LAKES! [ECF 86 ¶41]. Accordingly, there can be absolutely no genuine dispute that CLEAR SPRING knew of the 2016 Claim at the time of the Renewal Application. To claim otherwise is not only disingenuous and false, but a fraud upon the Court.

Further, a review of the 2021 Renewal Questionnaire evidences that there is no genuine dispute that there was not a single misleading statement from WELLO as to the condition of the Suzuki Sunseeker. [ECF 86 ¶33-35]. Specifically, the 2021 Renewal Questionnaire expressly defines the vessel to be insured as follows: "scheduled vessel: Lolotte, 2003 40' ***Sunseeker with Suzuki triple 300hp gas engine*** XSK02857F304," and requests information concerning the Suzuki Sunseeker with the Suzuki engines, as described above. [ECF 86 ¶33-35]. The 2021 Renewal Questionnaire specifically requests information concerning any prior losses Suzuki Sunseeker, ***with the Suzuki engines***, which WELLO responded as "none." [ECF 86 ¶ 35]. Such a response is truthful, as the 2018 Claim only involved the engines, which at the time of the 2021 Renewal

Questionnaire had been completely replaced. [ECF 86 ¶ 18]. The "scheduled vessel" to be insured was ***not*** the Sunseeker with Yamaha Engines.

IV.  **THERE IS A GENUINE DISPUTE AS TO WHETHER THE LOSS HISTORY WAS MATERIAL TO THE INSURANCE DECISION**

Secondly, there is no genuine dispute of material fact that CLEAR SPRING's knowledge of the 2016 Claim (which it did have) and 2018 Claim would ***not*** have been material to CLEAR SPRING's decision to insure the Suzuki Sunseeker and issue the 2021-2022 Policy. Prior loss history is not, as a matter of law, material to a coverage decision. *See GREAT LAKES Reinsurance (UK) PLC. v. Roca*, 0723322-CIV, 2009 WL 200252, at *4 (S.D. Fla. Jan. 27, 2009). Nor is there a bright-line rule that every misrepresentation to a specifically-inquired question on an insurance application is material as a matter of law; instead, the court must use a more fact-specific inquiry. *Id; See, e.g., HIH Marine Servs.,* 211 F.3d at 1364 (analyzing the record to determine whether insured's misrepresentation regarding the custody of the vessel and finality of the charter agreement was material to insurer's decision to provide coverage for the vessel); *La Reunion Francaise, S.A. v. Christy,* 122 F.Supp.2d 1325, 1330–31 (M.D.Fla.1999) (analyzing undisputed evidence on record and finding insured's failure to disclose prior criminal convictions not material as a matter of law). Here, neither the 2016 loss nor the 2018 loss can be deemed material to the calculation of the insurance risk such that it is a subject that falls within the doctrine of *uberrimae fidei*. The risk to the CLEAR SPRING did not change one iota due to 2016 Claim – which it ***knew about*** – or the 2018 Claim. [ECF 87 Ex 1].

In the CLEAR SPRING further claims it would not have issued the policy on the same terms or condition if WELLO had disclosed prior claims from 2016 and 2018. However, the prior 2016 and 2018 losses were not with the Suzuki engines—they occurred with Yamaha engines that

WELLO replaced in or around 2018. [ECF 86 ¶33-35]. More importantly, WELLO made all necessary repairs following both losses and completely replaced the engines, which were the source of the 2018 loss. [ECF 86 ¶10, 18]. Moreover, CLEAR SPRING had notice of both the 2016 Claim and GREAT LAKES' subsequent non-renewal of insurance[2] in its underwriting files; however, it now claims it did not discover this information during the underwriting process. [ECF 86 ¶41]. CLEAR SPRING's corporate representative, Beric Anthony Usher ("Usher"), testified that CLEAR SPRING did not search the Suzuki Sunseeker by its hull identification number during the underwriting process, which could have revealed information concerning the vessel. [ECF 86 ¶42].

CLEAR SPRING's Motion must be denied because it cannot be permitted to use its underhanded tactics to shift the blame to WELLO. It is eminently clear that CLEAR SPRING never intended to afford coverage to WELLO under any circumstances, as is apparent from its underhanded inclusion in the Policy of a choice-of-law provision favoring voiding policies on the basis of technical violations of warranties, deceptive "renewal" practices, and the convoluted chain of entities through which WELLO's various applications, representations and renewals traveled. Regardless, there can be no dispute that WELLO did ***not*** make any misrepresentation on its 2021 Renewal Questionnaire.  Even if it *had* been required to list the 2016 Claim and 2018 Claim on the questionnaire, it is clear that those claims could not have been material to CLEAR SPRING's assessment of the insurance risk.  As such, CLEAR SPRING's request for summary judgment must be denied.

---

[2] Additionally, WELLO disputes CLEAR SRPING'S assertions as to the reason behind GREAT LAKES' non-renewal notice. The non-renewal notice from GREAT LAKES does not cite to any reason for non-renewal of the 2016-2017 policy; however, conveniently, Usher now claims that the non-renewal was somehow connected to the maintenance of the vessel. [ECF 87 Ex 1]

Clear Spring v. Wello<br>
Case No. 1:21-cv-24234-RKA-ALTMAN<br>
WELLO's Response to Plaintiff's Motion for Summary Judgment

**WHEREFORE**, WELLO asks that this Court issue its order denying CLEAR SPRING's Motion for Summary Judgment, and awarding all such further relief this Court deems just and necessary.

Dated: February 28th, 2023

            Respectfully submitted,

            MARTINEZ MORALES
            2600 S. Douglas Road, Suite 305
            Coral Gables, FL 33134
            T: 305-501-5011
            F: 786-272-7997
            rmorales@mmlawfl.com
            csalem@mmlawfl.com

            By: */s/ Raul Morales*_____
              **RAUL MORALES**
              **FBN: 065307**
              **CRISTINA SALEM**
              **FBN: 1011103**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record on February 28th, 2023**,** via the CM/ECF system.

            By: */s/ Raul Morales*_____
              **RAUL MORALES**
              **CRISTINA SALEM**