**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**IN ADMIRALTY**

**CLEAR SPRING PROPERTY AND**
**CASUALTY COMPANY**,

    Plaintiff,

                                                              Case No. 1:21-cv-24234-RKA

vs.

**WELLO AND MOM, LLC**,

    Defendant.

_____/

**CLEAR SPRING PROPERTY AND CASUALTY COMPANY'S REPLY**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

    COMES NOW the Plaintiff/Counter-Defendant, CLEAR SPRING PROPERTY AND CASUALTY COMPANY, by and through its undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7.1 and 56.1 of the United States District Court for the Southern District of Florida, and files this its Reply Memorandum of Law in Support of its Motion for Summary Judgment on Counts V and VI of the Second Amended Complaint for Declaratory Judgment [ECF No. 74]. Further thereto would respectfully state as follows:

**There are no good faith disputes of material fact.**

    With respect to the facts, the opposition memorandum (ECF no. 88) and statement of facts (ECF no. 87) filed by WELLO must fail because almost every single fact asserted is not merely false, but is contradicted by the undisputed documentary and photographic evidence. First, WELLO asserts eleven times, ***in bolded underlined italics***, that the 2018 Application and all the renewal applications were only seeking information about the "***Sunseeker with Suzuki triple 300hp gas engine***," and that, therefore, no material facts were misrepresented concerning the Vessel when it had different engines. ECF no. 87, 19, ¶21, ¶22, ¶24, ¶25, ¶27, ¶28, ¶73, ¶76, ¶79, and ¶82 [emphasis in original], ECF no. 88, pp. 14-18. The problem with this pathetic sophistry is that there is not one single word in either the 2018 Application of the multiple renewals which restricts the inquiry to the specific Vessel or its new engines. On the contrary, every word of the 2018 Application and the multiple renewals ask about the loss history of WELLO, Roy Cisneros,

1

and Amelina Cisneros. *See* ECF No.'s 80-4, 80-6, 80-7, and 80-8. Nor can a prospective insured evade the broad disclosure obligations of *uberrimae fidei* by claiming that the questions on an application are too narrow, because "the duty to disclose extends to those material facts not directly inquired into by the insurer." *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000).

Whatever subjective impressions may have been going through the minds of Roy and Amelina Cisneros, there is absolutely nothing in the 2018 Application or the multiple Renewal Questionnaires which limited the disclosure obligation strictly to the Vessel while it had its new engines. The actual words of the 2018 Application and the multiple renewal applications required Roy Cisneros to disclose his own loss history. ECF no. 80-4 through ECF no. 80-8.

Second, WELLO actually argues that the photos of the Vessel's handheld fire extinguisher and fire suppression system do not prove what they plainly show, which is that the inspection tags were all expired at the inception of the Policy and at the time of the loss. Like Chico Marx, opposing counsel askes, "Well, who you gonna believe, me or your own eyes?" Chico Marx, *Duck Soup*, directed by Leo McCarey (Paramount Pictures, 1933), *Smiley v. Colvin*, 2015 WL 4134542, p. 7 (D.Kan.2015).

The photographs of the tags on the Vessel's handheld fire extinguisher and fire suppression system show irrefutably that these were last inspected in March 2019 and were therefore expired at the inception of the Policy and at the time of the loss. ECF no. 80-10, pp. 10-11. The Policy's fire suppression equipment warranty states: "If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary." ECF no. 80-9, p. 13. The warranty expressly states that the tanks must be certified and tagged "as necessary." *Id*. When the tags expired, certification and tagging were necessary. Therefore, there is simply no possible way that expired tags satisfy the Policy's express warranty.

Finally, WELLO's opposing facts include a single paragraph which complains that the Underwriting Manual attached to CLEAR SPRING's summary judgment motion was neither authenticated nor timely produced. ECF no. 87, ¶29. First, WELLO is simply wrong on the facts: the Underwriting Manual was authenticated in the sworn declaration of CLEAR SPRING's 30(b)(6) witness, Beric Anthony Usher, ECF no. 80-11, at ¶36. Second, CLEAR SPRING's fault

in not producing the Underwriting Manual is properly excused because the error is harmless. This exact issue was addressed in the case of *Isacks v. Walton County*, which concerned a motion to strike photographs disclosed for the first time in support of a summary judgment motion. 2021 WL 5002624 (N.D.Fla.2021), at *1. The district court recognized the rule that "[a] discovery violation is more likely to be harmless when the injured party was provided some knowledge of the relevant information." *Id*. Since the photographs merely depicted activities that were described in other timely disclosed evidence, the court held that their late disclosure was harmless because the defendant had knowledge of the relevant information. *Id*. The same is true in the present case. As is reflected in this Court's docket, CLEAR SPRING's 30(b)(6) Corporate Representative, the very same Mr. Usher whose declaration established materiality and authenticated the Underwriting Manual, testified at his deposition as to the materiality of WELLO's non-disclosures. *See* ECF no. 86-10, pp. 39-41, 46-47, and 66-69. The Underwriting Manual merely repeats information which WELLO always had, i.e., that its misrepresentations were material to the judgment of Underwriters because truthful disclosure would have resulted in either a higher premium or the refusal to issue a policy. Therefore, the late disclosure of the Underwriting Manual is harmless.

## **CLEAR SPRING Has Substantial Connections to New York**

WELLO falsely asserts that CLEAR SPRING has no substantial connections to New York. ECF no. 88, p. 7. This is contrary to the undisputed facts. As already noted repeatedly by CLEAR SPRING, the Policy's choice of law clause has been found to be enforceable by multiple federal district and appellate courts throughout the country. ECF no. 80, p. 5 (fn. 1), ECF no. 90, pp. 3-5. The undisputed facts show that CLEAR SPRING has multiple connections to New York: 1) CLEAR SPRING is an admitted, licensed insurance carrier in New York, 2) CLEAR SPRING maintains bank accounts in New York, and 3) CLEAR SPRING accepts service of process in New York. ECF no. 80, ¶¶'s 51-53.

In response to the same challenge, the Fifth Circuit in the *Durham Auctions* case specifically found that these exact connections to New York were adequate to enforce the same choice of law clause which was issued to an insured in Mississippi. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions Inc.*, 585 F.3d 236; 2010 A.M.C. 185 (5th Cir.2009). In fact, just last year, this exact same choice of law clause was enforced by Chief Judge Cecilia M. Altonaga to block application of Florida's anti-technical statute, Fl.Stat. §627.409(2). *Great Lakes Insurance SE v. Lassiter*, 2022 WL 1288741 (S.D.Fla.2022). This same choice of law clause was

3

applied to the same effect in *Great Lakes Reinsurance (UK) PLC v. Rosin*, which held that Fl.Stat. §627.409(2) could not be applied to bar the enforcement of a named operator warranty in an identical policy of marine insurance. 757 F.Supp.2d 1244; 2011 A.M.C. 223 (S.D.Fla.2010). Therefore, CLEAR SPRING's connections to New York are clearly adequate and Florida's anti-technical statute cannot be applied to invalidate any part of the Policy.

### **CLEAR SPRING's Choice of Law Clause is Reasonable and Just,**

Under the precedent of the Eleventh Circuit, which has enforced this choice of law clause multiple times, there is nothing unreasonable or unjust about enforcing CLEAR SPRING's choice of law clause. *Great Lakes Insurance SE v. Wave Cruiser LLC*, 36 F.4th 1346 (11th Cir.2022), *Great Lakes Reinsurance (UK) PLC v. Vasquez*, 341 Fed.Appx. 515 (11th Cir.2009). As noted above, multiple district courts in the Eleventh Circuit have enforced this precise choice of law clause and have enforced warranties in policies of marine insurance that might otherwise have been unenforceable under Fl.Stat. §627.409(2). *Lassiter* and *Rosin*, *supra*. In both those cases, the Southern District of Florida enforced this choice of law clause and held that coverage for a loss was barred by the insured's breach of the policy's named operator warranty. *Id*. However, ignoring these precedents, WELLO instead asks this Court to borrow the different standard which the Supreme Court has held applies to forum selection clauses. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1; 1972 A.M.C. 1407 (1972). Under *Bremen*, a forum selection clause might not be enforced if "enforcement would contravene strong public policy of forum in which suit is brought." *Id*, at 15.

This is precisely the opposite standard which the Fifth Circuit applied to enforce this precise choice of law clause in the *Durham Auctions* case, *supra*. In that case, the insured challenged the choice of law clause's election for New York law, which necessarily displaced Mississippi's law pertaining to the issue of *uberrimae fidei* ("utmost good faith"). *Id*, at 239-40. In response to the exact same argument that is now advanced by WELLO, the Fifth Circuit rejected the contention that Mississippi's strong public policy was a relevant consideration when determining whether to enforce the choice of law clause. *Id*, at 244. Instead, the Fifth Circuit held that the proper relevant inquiry was whether New York's law was contrary to any "fundamental principle" of federal admiralty law. *Id*. Therefore, since the election for New York law was not contrary to any fundamental principle of federal admiralty law, the clause was enforced, and the court applied the doctrine of *uberrimae fidei* under New York law. *Id*.

Next even if one were to misapply the *Bremen* standard (which applies to forum selection clauses) and consider Florida's public policy, it is vital to note that no court applying Florida law has ever held that a choice of law clause displacing Florida law and electing the law of another state is contrary to any public policy of Florida merely because the chosen law is less favorable than Florida law to the Florida party. *Pharma Funding, LLC v. FLTX Holdings, LLC*, 2021 WL 1166051 (S.D.Fla.2021), *Arndt v. Twenty-One Eighty-five, LLC*, 448 F.Supp.3d 1310 (S.D.Fla.2020), *Great American Fidelity Ins. Co. v. JWR Const. Services, Inc.*, 882 F.Supp.2d 1340 (S.D.Fla.2012), *Jet Pay, LLC v. RJD Stores, LLC*, 2011 WL 2708650 (S.D.Fla.2011), *Caban v. J.P. Morgan Chase & Co.*, 606 F.Supp.2d 1361 (S.D.Fla.2009), *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306 (Fla.2000). "The mere fact that Florida law would effect a different result does not render a choice-of-law clause invalid; rather, the law of the alternative forum must conflict with a Florida policy interest of 'paramount' importance." *Caban*, at 1365. Nothing WELLO has argued shows that there is any Florida law of "paramount importance," greater than the mere fact that WELLO might prevail under Florida law. Therefore, there is no basis for contending that the election for New York law, which is less favorable to WELLO than Florida law, is contrary to any public policy of Florida.

Similarly, every federal appellate decision applying the *Bremen* standard to forum selection clauses has held that, in order to show a "strong public policy," the challenging party had to show that a state statute specifically barred the clause in dispute: in the *DePuy* case the Ninth Circuit held that California had a "strong public policy" against a forum selection clause requiring suit be brought in New Jersey because California had passed a statute specifically prohibiting such clauses in employment contracts, Cal.Lab.Code §925. *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 965 (9th Cir.2022). In the *Lakeside* case, the Sixth Circuit held that Michigan had a "strong public policy" against a forum selection requiring suit be brought in Minnesota because Michigan had passed a statute specifically prohibiting such clauses in franchise contracts, MCL §445.1527(f). *Lakeside Surfaces, Inc. v. Cambria Company, LLC*, 16 F.4th 209 (6th Cir.2021). In the *Davis* case, the Eleventh Circuit held that Georgia had a "strong public policy" against a forum selection clause requiring that suit be brought in Illinois because Georgia had passed a statute specifically prohibiting such clauses in pay-day loan contracts, O.C.G.A. §16-17-1. *Davis v. Oasis Legal Finance Company, LLC*, 936 F.3d 1174 (11th Cir.2019). In the *Gemini* case, the Ninth Circuit held that Idaho had a "strong public policy" against a forum selection clause requiring that

suit be brought in Delaware because Idaho had a statute categorically prohibiting forum selection clauses in all contracts, Idaho Code §29-110(1). *Gemini Technologies, Inc. v. Smith & Wesson Corp.*, 931 F.3d 911 (9th Cir.2019).

In contrast, the Second Circuit enforced a forum selection clause in a vacation tour ticket which requiring suit be brought in Canada. *Starkey v. G Adventures, Inc.*, 796 F.3d 193 (2d Cir.2015). The purchaser challenged the forum selection clause because, under Canadian law, she might be held liable for attorney's fees if she lost. The Second Circuit held that merely showing that the chosen forum was different or less favorable did not suffice to show a "strong public policy" powerful enough to defeat a forum selection clause. *Id*, at 198.

Similarly, in 1998, a disgruntled investor challenged a forum selection clause in a Lloyd's of London syndicate agreement requiring that suit be brought in the United Kingdom. *Lipcon v. Underwriters at Lloyd's, London*, 148 3d 1285 (11th Cir.1998). The Eleventh Circuit held that, even though enforcement of the clause would deny the investors the remedies afforded under American securities regulations, less favorable law did not justify declining to enforce the forum selection clause. *Id*, at 1298.

In the present case, just as United Kingdom law was less favorable than American law for the American investor in *Lipcon*, it is undeniably the case that New York law is less favorable for WELLO than Florida law. However, since there is no Florida statute specifically barring a choice of law clause in a marine insurance policy, there is no "strong public policy" which satisfies the *Bremen* standard. Therefore, CLEAR SPRING's choice of law clause must be enforced.

## WELLO Misrepresented the Loss History of Roy Cisneros

On this issue, WELLO first contends that CLEAR SPRING knew about the 2016 loss because CLEAR SPRING's agent, Concept Special Risks, Ltd. (hereinafter "Concept"), was the agent acting for the insurer who issued Policy No. CSRYP/157469. ECF no. 88, p. 15. However, this argument must fail for three reasons, two factual and one legal. First, as to the undisputed facts, no matter what CLEAR SPRING is alleged to have known about the 2016 loss, there is absolutely no evidence whatsoever that CLEAR SPRING knew, or could have known, about the 2018 loss because that loss was covered by a different insurer with no connection to Concept. ECF no. 80, ¶¶14-16. Therefore, the evidence is absolutely undisputed that WELLO failed to truthfully disclose the 2018 loss. *Id*, at ¶17. In addition, the declaration of Concept's underwriter, whose deposition was taken on October 19, 2022, confirms that truthful disclosure of the 2018 loss,

6

standing alone, would have resulted in a higher premium. Usher Declaration, dated March 2, 2023, previously filed as ECF No. 90-4, at ¶7.

Second, WELLO has presented no evidence showing that a search of Concept's files would have found the 2016 loss or that such a search was even possible. Concept receives an average of one hundred (100) proposed risks each day and it would be too time consuming to check the HIN in its system. *Id*. Concept does not perform such searches because it relies on the applicant's duty to disclose material facts, because such searches frequently do not turn up the actual vessel, and because it does not consider it important that a vessel might have suffered a loss when it was owned by a different insured. *Id.*, at ¶¶'s 4-6.

Third, turning to the legal issue, when an application is submitted to a marine insurer, the marine insurer is under absolutely no legal duty whatsoever to go scouring its own records to determine whether the applicant is lying. *See cases analyzed infra*. There is absolutely no duty of investigation or inquiry whatsoever. When it was misrepresented to CLEAR SPRING that WELLO had no prior losses, CLEAR SPRING was under no obligation whatsoever to investigate that misrepresentation and determine whether WELLO was telling the truth. On the contrary, under the strict doctrine of *uberrimae fidei* ("utmost good faith"), the underwriter at CLEAR SPRING who reviewed WELLO's disclosures was entitled to act with assurance that WELLO would satisfy its duty to act with the "utmost good faith," without imposing on CLEAR SPRING the duty to investigate WELLO's representations and without imposing on CLEAR SPRING the duty to examine its own voluminous files.

The United States Court of Appeals for the Ninth Circuit dealt with this precise issue in a case concerning a policy of marine insurance issued to an insured who failed to disclose a prior loss, just like WELLO in the present case. *Certain Underwriters at Lloyd's v. Montford*, 52 F.3d 219 (9th Cir.1995). In 1985, the insured suffered a loss which the marine insurer paid. *Id*, at 221. Two years later, the insured submitted an application to the same marine insurer for coverage on the same vessel. *Id*. Although the application specifically asked about prior losses, the insured did not disclose the 1985 loss. *Id*. Relying wholly on the insured's duty to make complete truthful disclosure of material facts, the insurer did not conduct any search of its own records. *Id*. Although it was undisputed that the marine insurer had records which contained information regarding the 1985 loss, the Ninth Circuit held that the duty of *uberrimae fidei* did not excuse the insured from disclosing the prior loss. *Id*, at 222. The insurer was under no duty to go searching its own records

7

to determine whether the insured was telling the truth. *Id*. Since the insured failed to respond truthfully to the question on the application demanding truthful disclosure of loss history, the policy of marine insurance was held void from inception, no matter the fact that the insurer could have searched its own records for information about the insured's loss history. *Id*.[1]

The Southern District of Georgia applied this rule in 2013 in the case of *Deep Sea Financing, LLC v. QBE Ins., Ltd.*, 2013 WL 1288972 (S.D.Ga.2013). *Deep Sea* arose out of a vessel which ran aground on a coral reef. *Id*, at 1. In the course of its post-loss investigation, the marine insurer found that, at the time that the application was submitted, the vessel was under arrest in Texas. *Id*, at 3. Despite there being no dispute that the facts concerning the arrest of the vessel could have easily been found by a search through public records, the Southern District of Georgia found that this did not relieve the insured of the duty to make complete truthful disclosure of material facts. *Id*, at 6. Citing the Eleventh Circuit's decision in *HIH Marine Servs.*, the court wrote, "[e]ven where information could have been discovered by the insurer, the insured must disclose the information because the insurer ***is under no duty to conduct research***." *Id* [emphasis added], *citing*, *HIH*, 211 F.3d at 1363-64. Explaining the reason for this rule, the Northern District of Florida wrote, "placing the burden of good faith on the insured rather than the insurer, with penalties absolving the insurer should there be a misrepresentation or non-disclosure, saves the costs of time and investigation which would normally be passed on, at least in part, to the insured. So, the good faith requirement saves money for both the insured and insurer at very little cost— simply the truthfulness of the insurance applicant." *Northfield Ins. Co. v. Barlow*, 983 F.Supp. 1376, 1383 (N.D.Fla.1997).

In the present case, it makes no difference whatsoever that CLEAR SPRING (or its agent, Concept) could have searched its own records for information about the Vessel because CLEAR SPRING was under no duty whatsoever to undertake such a search. *Montford*, *supra*, *Deep Sea*, *supra*. Rather, the whole duty rested on WELLO to obviate the need for such a search, and the cost, by making complete truthful disclosure. *Id*. In fact, the whole point of the doctrine of *uberrimae fidei* ("utmost good faith") is to relieve the marine insurer of the time and expense of independently verifying the truth of the applicant's representations. Nothing can excuse WELLO's

---

[1] The Ninth Circuit in *Montford* applied the doctrine of "utmost good faith" under California law. *Id*. However, this is a distinction without a difference because the doctrine is identical under California law and federal admiralty law. *Certain Underwriters at Lloyds, London v. Inlet Fisheries Inc.*, 518 F.3d 645 (9th Cir.2008), *Cigna Property and Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412 (9th Cir.1998).

false representation concerning its own loss history. *Montford*, *supra*. When CLEAR SPRING received an application which represented that WELLO had no losses, CLEAR SPRING's underwriter was entitled to rely completely on the truth of that representation. *Id*, at 222, *Barlow*, at 1383. Therefore, WELLO's false representation that it had no losses was a breach of its duty under the federal admiralty law doctrine of *uberrimae fidei* and the Policy is void from inception. Moreover, even if CLEAR SPRING's agent had run a check of its own records, it would not have turned up anything because WELLO spelled its name differently on the 2018 application. ECF no. 80-11, p. 5.

The next issue raised by WELLO is the claim that, because the Vessel had engines which were different from the engines which were damaged in 2018, there was no need to disclose a loss that involved the Vessel while it had different engines. ECF no. 88, p. 16. This argument must fail because multiple questions on the 2018 Application and the Renewal Questionnaires are in no conceivable way limited to losses suffered by the Vessel or its engines. ECF no. 86-4, ECF no. 86-6, ECF no. 86-7, and ECF no. 86-8. On the contrary, 2018 Application and all three Renewal Questionnaires asked broadly about the loss history of WELLO and Roy Cisneros:

- The 2018 Application asked: "Loss History (if none, state NONE), Details of any previous losses all operators." ECF no. 80-4, p. 1. The disclosed beneficial owner was WELLO and the disclosed operators were Roy and Amelina Cisneros. *Id*. WELLO answered "None." *Id*.

- The Operator page of the 2019 Renewal Questionnaire specifically required WELLO to provide information for Roy Cisneros. ECF no. 80-6, p. 3. In response to the question for "All losses in the past 10 years," WELLO replied, "None." *Id*.

- The Operator page of the 2020 Renewal Questionnaire specifically required WELLO to provide information for Roy Cisneros. ECF no. 80-7, p. 3. In response to the question for disclosure of "All losses in the past 10 years," WELLO replied, "None." *Id*.

- The Operator page of the 2021 Renewal Questionnaire specifically required WELLO to provide information for Roy Cisneros. ECF no. 80-8, p. 3. In response to the question for "All losses in the past 10 years," WELLO replied, "None." *Id*.

The undisputed evidence establishes that WELLO, and not merely the Vessel, suffered two losses, the 2016 fuel leak and the 2018 grounding. Deposition of Wello's 30(b)(6) Corp. Rep, ECF no. 80-1, at 25 and 112. The undisputed evidence further establishes that neither loss was ever disclosed on the Application or the Renewal Questionnaires. *See* 80-4, 80-6, 80-7, and 80-8.

9

Therefore, there can be no dispute of fact that WELLO falsely represented that it had no prior losses. Moreover, the undisputed evidence establishes shows that, had WELLO fulfilled its duty to truthfully disclose these losses, CLEAR SPRING would have refused to issue the Policy. *Plaintiff's SOMF*, ECF no. 80, at ¶¶'s 49-50.  Therefore, under the federal admiralty law doctrine of *uberrimae fidei*, the Policy is void from inception. *Quintero v. Geico Marine Insurance Company*, 983 F.3d 1264 (11th Cir. 2020). Finally, the materiality of these misrepresentations is established by the undisputed deposition testimony and declaration of Mr. Usher, Senior Underwriter at Concept (CLEAR SPRING's managing general agent for underwriting and claims handling). Had WELLO truthfully disclosed both losses, CLEAR SPRING's underwriting agent, Concept, would have refused to issue any policy of marine insurance.  Had the 2016 loss theoretically not occurred and WELLO had truthfully disclosed just the 2018 loss with Hiscox Ltd, Concept would only have issued a policy of marine insurance at a higher premium. Usher Declaration, ECF No. 90-4, at ¶7. Therefore, no matter whether CLEAR SPRING is held to have known about the 2016 loss, WELLO still misrepresented material facts and the Policy is still void *ab initio* under the federal admiralty law doctrine of *uberrimae fidei* and the express terms of the Policy.

      Lastly, the Defendant's arguments about the application questions being too narrow (which CLEAR SPRING does not concede) is irrelevant because a prospective insured must disclose all material information, even where not asked. *See, e.g., Grande v. St. Paul Fire & Marine Ins. Co.*, 436 F.3d 277, 283 (1st Cir. 2006) ("[U]nder the strict maritime rule of *uberrimae fidei*, an insured must make full disclosure of all material facts of which the insured has, or ought to have, knowledge ... even though no inquiry be made."); *HIH*, 211 F.3d at 1362 ("The duty to disclose extends to those material facts not directly inquired into by the insurer"); *Cigna Property,* 159 F.3d at 420 ("Whether or not asked, an applicant for marine insurance is bound to reveal every fact within his knowledge that is material to the risk."); *Jackson v. Leads Diamond Corp*., 767 F. Supp. 268, 271 (S.D. Fla. 1991) ("In this case [the Insured] had a duty to disclose voluntarily every material fact and circumstance within his knowledge and unknown to the insurer even though no direct inquiry was made.")

**Conclusion**

WHEREFORE, CLEAR SPRING asks that this Court issue its order declaring that Policy No. CSRYP/204845 is void from its inception, affording no coverage of the loss suffered by WELLO, and awarding all such further relief as may be appropriate in the premises.

Dated:	March 14, 2023
	Fort Lauderdale, Florida

		Respectfully submitted,

		THE GOLDMAN MARITIME LAW GROUP
		*Attorneys for Plaintiff*
		401 East Las Olas Boulevard
		Suite 1400
		Fort Lauderdale, FL 33301
		Tel (954)356-0460
		Fax (954)832-0878
		Cel (617)784-1100


		By: /s/ Steven E. Goldman
		STEVEN E. GOLDMAN
		FLA. BAR. NO. 345210

		By: /s/ Jacqueline L. Goldman
		JACQUELINE L. GOLDMAN
		FLA. BAR. NO. 1005573

**CERTIFICATE OF SERVICE**

  **I HEREBY CERTIFY** that on March 14, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all counsel of record.

Raul Morales, Esq.
Cristina Salem, Esq.
MARTINEZ MORALES
2600 S. Douglas Road, Suite 305
Coral Gables, FL 33134
T: 305-501-5011
F: 786-272-7997
rmorales@mmlawfl.com
csalem@mmlawfl.com

              THE GOLDMAN MARITIME LAW GROUP
              *Attorneys for Plaintiff*
              401 East Las Olas Boulevard
              Suite 1400
              Fort Lauderdale, FL 33301
              Tel (954)356-0460
              Fax (954)832-0878
              Cel (617)784-1100

              By: /s/ Steven E. Goldman
              STEVEN E. GOLDMAN
              FLA. BAR. NO. 345210

              By: /s/ Jacqueline L. Goldman
              JACQUELINE L. GOLDMAN
              FLA. BAR. NO. 1005573