UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 21-CV-24234-ALTMAN/REINHART

CLEAR SPRING PROPERTY
AND CASUALTY COMPANY,

    Plaintiff,

vs.

WELLO AND MOM, LLC.,

    Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT [ECF Nos. 81, 85]

From 2018 through 2021 Clear Spring Property and Casualty Company ("Clear Spring") insured Wello and Mom, LLC.'s, ("Wello") 2003 37-inch Sunseeker vessel. According to the Complaint, in 2021, the Sunseeker suffered a loss and Clear Spring declined to cover it. Clear Spring initiated this action seeking declaratory judgment. Clear Spring now moves for summary judgment on the grounds that the policy itself is void *ab initio* and even if it was not, the 2021 loss was still excluded from coverage because Wello breached an express warranty. Wello cross moves for summary judgment on the grounds that Clear Spring breached its policy coverage contract. I have reviewed the Motions, the Responses, and the Replies. ECF No. 81, 85, 88, 90, 96, 97. For the reasons stated below, I **RECOMMEND** Clear Spring's Motion for

Summary Judgment be **GRANTED** and Wello's Motion for Summary Judgment be **DENIED**.

## I. MATERIAL FACTS

In 2016, Wello purchased a 2003 37-inch Sunseeker vessel, hull identification number XSK02857F304, ("Sunseeker"). PSOF ¶1[1]. The Sunseeker was purchased for $94,000.00 and its title owners are Roy and Amelia Cisneros.[2] *Id.* ¶3; ECF No. 80-2. Mr. and Mrs. Cisneros are the only members of Wello. PSOF ¶2. Clear Spring is an admitted, licensed insurance carrier in the State of New York. PSOF ¶51. Clear Spring also maintains bank accounts and accepts service of process in New York.

In June 2016, Wello applied for a policy of marine insurance to Concept Special Risks Ltd. ("Concept"). *Id.* ¶4. At the time, Concept was the underwriting and claims handling agent for Great Lakes Insurance SE. *Id.* The 2016 application was for the Sunseeker. The application listed the Sunseeker's purchase price as $180,000 and listed Wello as an "additional insured." ECF No. 80-2 at 2, 3. In August 2016, Concept issued Wello a policy endorsement with a policy number of CSRYP/157469. ECF No. 80-3. The assured listed on the endorsement is Wello and the insurance provider

---

[1] The citation "PSOF" refers to Clear Spring's Statement of Material Facts, ECF No. 80. The citation "DSOF" refers to Wello's Response to Clear Spring's Statement of Material Facts, ECF No. 87. The citation "Wello Additional Facts" refers to Wello's Statement of Additional Material Facts, ECF No. 87 at 10. The citation "Joint SOF" refers to the Joint Statement of Facts, ECF No. 84.

[2] The pleadings interchangeably refer to Mrs. Cisneros as Amelia, Amelina, and Ameilinda. For Clarity, I will use "Mrs. Cisneros" unless directly quoting from a pleading.

listed is Great Lakes. *Id.* at 1. The policy endorsement also includes the following language with an effective date of July 25, 2016:

> It is hereby noted and agreed that with effect from Tuesday July 26, 2016
>
> The Hull Sum Insured is increased to $140,000 deductible $4,200 (named windstorm deductible $8,400). The Uninsured Boaters Limit is also increased to $140,000.
>
> In consideration of which, an Additional Premium of US$ 966 is due.
>
> All other terms and conditions remain unaltered.

*Id.* The initial "Hull" coverage had been $94,000. *Id.* at 2.

The Sunseeker had two losses—one in 2016 and one in 2018. ECF No. 80-1 at 112. Great Lakes denied the 2016 claim and another insurance carrier covered the 2018 loss through a settlement. *Id.* at 106. Between 2017 and 2018, the Sunseeker was insured with a different insurance carrier. Wello Additional Facts ¶66. In May 2018, the Sunseeker's Yamaha engines were replaced with Suzuki engines. *Id.* ¶69.

In July 2018, Wello applied for marine insurance again through Concept. ECF No. 80-4. Under "Named Insured" the application lists "[sic] Roy and Ameilinda Cisneros." *Id.* The 2018 application also says "none" under "loss history" for Sunseeker, hull identification number XSK02857F304. *Id.* Great Lakes issued a new policy CSRYP/169671. PSOF ¶20; DSOF ¶20.[3] In 2019, 2020, and 2021 a renewal application for Sunseeker XSK02857F304 was filed. ECF No. 80-6–8. The 2019, 2020,

---

[3] The parties dispute *why* Great Lakes issued a 2018 policy number but do not dispute that a policy was, in fact, issued. PSOF ¶20; DSOF ¶20.

3

and 2021 renewal applications listed "Roy Cisneros" under operator and "none" under "all losses in the past 10 years."

> All losses in the past 10 years (whether insured or not), including payment amounts and current status
> Example: 2005, Hurricane Loss, $20,000 Paid, Closed
> None

*Id.* at 3. Great Lakes subsequently issued policy numbers CSRYP/177227, CSRYP/183480, and CSRYP/204845. PSOF ¶23, 26, 30 DSOF ¶23, 26, 30. [4] Under the "Exclusions to Coverage A" section the policy says,

> Unless specifically agreed by us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this insuring agreement:
>
> b. Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, [sic] mould, animal, and marine life.

ECF No. 80-9 pp 5–6. Under the "General Conditions & Warranties" section the policy says,

> k. If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.
>
> ….

---

[4] The parties dispute *why* Great Lakes issued the 2019, 2020, and 2021 policies but do not dispute that the additional policies were in fact, issued. PSOF ¶23; DSOF ¶23, 26, 30.

> m.  This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.
>
> ….
>
> t. Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted' the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this insuring agreement from inception, it is hereby agreed that any such breach will voids this policy from inception.

*Id.* pp 13–14. Under "Service of Suit, Choice of Law, and Forum," the policy says,

> **It is hereby agreed that any dispute arising hereunder shall be adjudicated according to the well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.**

*Id.* pp 16. (emphasis in original).

Clear Spring's Senior Underwriter, Beric Anthony Usher says Clear Spring relied on the facts disclosed in the 2018 through 2021 applications in issuing a policy to cover the Sunseeker. ECF No. 80-11 ¶¶18–26.

In September 2021, during the coverage period of the policy, the Sunseeker suffered a partial sinking. PSOF ¶39. Wello reported the partial sinking to Clear Spring and Clear Spring assigned Revel Boulon of Sedgwick to investigate the causes and circumstances of the loss. PSOF ¶40; ECF No. 80-10. According to Mr. Boulon's report, the Sunseeker "was fitted with a fixed fire fighting suppression system in the machinery space [and] the inspection tag on the system was dated March 2019." ECF No. 80-10 pp 5.  Clear Spring denied the claim. Joint SOF ¶3.

## II. LEGAL PRINCIPLES

1. <u>Summary Judgment</u>

The legal standard on cross-motions for summary judgment does not differ from the standard applied when only one party files a summary judgment motion. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). That standard is well-settled:

> Summary judgment is authorized only when, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). In applying this standard, the *Adickes* Court explained that when assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *See Adickes*, 398 U.S. at 157.
>
> The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

*Those Certain Underwriters at Lloyd's Subscribing to Policy No. 25693JB v. Capri of Palm Beach, Inc.,* 932 F. Supp. 1444, 1446 (S.D. Fla. 1996), *aff'd sub nom. Certain Underwriters v. Capri,* 128 F.3d 732 (11th Cir. 1997).

> The moving party's burden on a motion for summary judgment "depend[s] on whether the legal issues ... are ones on which the movant

> or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). "[F]or issues on which the movant would bear the burden of proof at trial, 'that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'" *Id.* (emphasis in original) (quoting *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. In State of Ala.*, 941 F.2d 1428, 1437 (11th Cir. 1991)). "For issues, however, on which the non-movant would bear the burden of proof at trial, 'the moving party is not required to support its motion with affidavits or other similar material *negating* the opponent's claim in order to discharge this initial responsibility.'" *Id.* (emphasis in original) (quoting *Four Parcels*, 941 F.2d at 1437–38).

*Nunez v. Coloplast Corp.*, No. 19-CV-24000, 2020 WL 2561364, at *1 (S.D. Fla. May 20, 2020). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson,* 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

2. Choice of Law

Choice of law provisions in maritime contracts are presumptively enforceable with certain narrow exceptions; state law public policy and greater interest disputes do not overcome that presumption. *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65 (2024).

In *Raiders* the Supreme Court addressed the narrow exceptions to the presumptive enforceability of choice of law provisions in maritime contracts. Those exceptions apply when the chosen law would contravene a controlling federal statute, or conflict with an established federal maritime policy, or when parties can furnish no reasonable basis for the chosen jurisdiction. *Raiders Retreat Realty*, 601 U.S. at 77. "For example, if applying the choice of law meant applying the law of a foreign distant country, or if it would release a carrier from liability for negligence — a result that federal maritime law forbids." *Id*. But, whether the choice of law would "contravene the fundamental public policy of the State with the greatest interest in the dispute," is not one of those exceptions. *Id*.

The "no reasonable basis" exception "must be applied with substantial deference to the contracting parties, recognizing that maritime actors may sometimes choose the law of a specific jurisdiction because, for example, that jurisdiction's law is 'well developed, well known, and well regarded.'" *Id*. at 78.

3. Doctrine of Uberrimae Fidei

The doctrine of *uberrimae fidei* requires marine policies to be executed in good faith. *Great Lakes Reinsurance (UK) PLC v. Morales*, 760 F. Supp. 2d 1315, 1323 (S.D.

8

Fla. 2010). The insured bears the burden of full and voluntary disclosure of facts material to a calculation of the insurance risk. *Id*. A material misrepresentation on an application for marine insurance is grounds for voiding the policy, even if the misrepresentation is a result of mistake, accident, or forgetfulness. *Steelmet v. Caribe Towing Corp.,* 747 F.2d 689, 695 (11th Cir.1984)); *see also Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974, 980 (5th Cir.1969) ("Nothing is better established in the law of marine insurance than that a mistake or commission material to a marine risk, whether it be willful or accidental, or result from mistake, negligence or voluntary ignorance, avoids the policy").

In the Eleventh Circuit, materiality is "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk." *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.,* 795 F.2d 940, 942–43 (11th Cir.1986).

### III. DISCUSSION

*A. The policy is void ab initio.*

Clear Spring says Wello failed to disclose prior losses and therefore the policy is void *ab initio*. Wello says the Sunseeker's engine was replaced therefore it was not obligated to disclose those losses. I disagree.

The parties agree that Sunseeker, Hull Identification number XSK02857F304, had two prior losses in 2016 and 2018. There is no genuine dispute that the application forms Wello filled out in 2019–2021 asked Wello to disclose "all losses within the last 10 years" for that vessel or that Wello answered "none."

9

> All losses in the past 10 years (whether insured or not), including payment amounts and current status
> Example: 2005, Hurricane Loss, $20,000 Paid, Closed
> None

ECF No. 80-6–8. And, there is no genuine dispute that Clear Spring relied on the facts disclosed in the applications in issuing a policy to cover the Sunseeker. ECF No. 80-11 ¶¶18–16.

Any reasonable juror would find the application inquiry regarding losses poses a risk assessment to the insurer. Based on an answer to the losses question, the insurer would determine whether to insure and or whether to issue a policy with different terms or at a higher premium. Likewise, any reasonable juror would find that the answer "none" is material to the insurer's decision assessing the risk.

Wello does not dispute the losses or its answer, instead it argues that the vessel in 2019 was not the same vessel that experienced the 2016 and 2018 losses because the engines were since replaced. Wello raises the millennium-old Ship of Theseus paradox.[5] But, I need not participate in the thought experiment because the object here remained the same. New engines or not, there is no dispute that the Hull Identification number remained the same, so the response to the loss question was inaccurate. Even viewed in

---

[5] The Ship of Theseus, also known as Theseus' paradox, is a thought experiment that raises the question of whether an object that has had all of its components replaced remains fundamentally the same object. Noah Levin, *Ship of Theseus*, https://open.library.okstate.edu/introphilosophy/chapter/ship-of-theseus (last visited Sept. 25, 2024).

the light most favorable to Wello, no reasonable jury could conclude that Wello's omission did not materially affect the calculation of insurance risk. Whichever way Wello chooses to classify its omission, it still voids the policy *ab initio* under *uberrimae fidei*.

> B. *Even if the policy was not void ab initio, the choice of law provision is enforceable and Wello breached an express warranty thus rendering the policy void.*
>
> 1. <u>Choice of law</u>

The policy between Wello and Clear Springs says disputes are to be "adjudicated according to [] United States Federal Admiralty law and practice but where no such [] precedent exists, this insuring agreement is subject to the substantive laws of the State of New York." This New York choice of law provision is presumptively enforceable.

Wello argues that the that choice of law provision is unreasonable and unjust because Wello did not "bargain for nor was it made aware of the choice of law provision" and the transaction has "zero" relationship to New York. Wello also asks this Court to apply Florida's conflict of law rules and says that the choice of law provision violates Florida's public policy.

First, the Supreme Court has declined to create a public policy exception and therefore I am required to do the same. *Raiders Retreat Realty Co.,* 601 U.S. at 77. "A federal presumption of enforceability would not be much of a presumption if it could be routinely swept aside based on 50 States' public policy determinations." *Id*.

Next, viewed in the light most favorable to Wello, I construe its argument that the choice of law provision is "unreasonable and unjust" to be a "no reasonable basis"

11

argument. But even then, that argument fails. The "no reasonable basis" analysis must be applied with substantial deference to the contracting parties, recognizing that maritime actors may sometimes choose the law of a specific jurisdiction." *Id.* Wello does not challenge whether New York has "well-known and highly elaborated commercial law." *Id.* at 78. Instead, it argues that the parties do not have a substantial relationship to New York and that Wello was not aware of the choice of law provision. First, the Supreme Court has not recognized a "substantial relationship" test in the no reasonable basis analysis. And second, the choice of law provision in the policy is titled and in bold. The parties entered a contract for insurance coverage. Absent a showing of misrepresentation, fraud, undue influence etc., Wello is bound by the provisions of parties' policy agreement even if it has not read the agreement and or was unaware of the provision's existence. *Allied Van Lines, Inc. v. Bratton,* 351 So. 2d 344 (Fla. 1977). Under both Florida and New York ignorance of the contents of a contract due to failure to read a contract alone, is not a defense against a contract's enforcement. *Boyd v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 614 F. Supp. 940 (S.D. Fla. 1985); *Melnik v. Cunard Line Ltd.,* 875 F. Supp. 103 (N.D.N.Y. 1994) (Passenger's alleged failure to read forum selection clause contained in cruise ship passage contract was irrelevant to issue of whether passenger had sufficient notice of clause; failure to read ticket did not relieve passenger of contractual limitation).

The choice of law provision is presumptively enforceable. It was Wello's burden to overcome that presumption. It failed to sufficiently do so. Therefore, the choice of law provision applies. So, in accordance with the policy terms,

> "**[] any dispute arising hereunder shall be adjudicated according to the well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.** "

ECF No. 80-9 at 16. (emphasis in original).

2. <u>Wello breached the fire suppression warranty.</u>

Applying New York law, breach of an express warranty in a marine insurance policy voids the policy, even where the breach played no role in the loss. *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244 (S.D. Fla. 2010) (holding choice of law clause, which required application of New York law if there was no established and entrenched federal admiralty precedent, governed which law applied in suit); *See also Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC,* 996 F.3d 1161 (11th Cir. 2021) (holding that there is no "entrenched maritime rule governing captain or crew warranties, and that as a result [state] law applies).

Clear Spring says Wello breached the fire suppression warranty. The loss in this case happened in 2021. Wello reported a partial sinking and Clear Spring assigned Mr. Boulon to investigate the loss. Mr. Boulon's report says the Sunseeker "was fitted with a fixed firefighting suppression system in the machinery space [and] the inspection tag on the system was dated March 2019." ECF No. 80-10. Wello does

13

not dispute the inspection tag's date. Instead, Wello submits Mr. Cisneros' affidavit saying, "to the best of my knowledge we hired an individual to certify/tag and recharge the fire extinguishing tanks as necessary since the vessel was purchased." ECF No. 87-4. This District, addressing an identical provision in an identical policy recently rejected Wello's identical argument:

> The [fire suppression] warranty requires that "certification/tagging and recharging" occur "as necessary," and the penultimate clause requires weighing of the tanks "once a year." Big Toys' alternative interpretation of the warranty omits entirely the term "once a year" which immediately follows "weighing of tanks." The only reasonable interpretation of the Fire Suppression Warranty is that it required the tanks be weighed "once a year."

*Clear Spring Property and Casualty Company v. Big Toys LLC,* 683 F.Supp.3d 1297 (S.D. Fla. 2023). A 2019 inspection tag means the Sunseeker's fire suppression system and handheld fire extinguisher certification and tagging would have expired in May 2020—a year before the reported loss. So, at the time of the loss, the policy was void and Clear Spring's Motion for Summary Judgment should be granted.

C. *Wello's Motion for Summary Judgment.*

Wello's Motion for Summary Judgment should be denied. For the reasons discussed above, the choice of law provision is valid and enforceable. A reasonable jury viewing the undisputed facts in the light most favorable to Clear Spring could find that Wello's insurance application omission violated its burden to disclose all facts material to a calculation of the insurance risk and therefore the policy was void *ab initio*. In the alternative, even if the policy was not void *ab initio,* there is no genuine dispute of material fact that Wello breached the fire suppression warranty,

14

therefore rendering the policy void. And for these reasons, I do not reach Wello's argument that Clear Spring breached its policy coverage contract.

## **REPORT AND RECOMMENDATION**

Accordingly, this Court **RECOMMENDS** that the District Court **GRANT** Clear Spring's Motion for Summary Judgment and **DENY** Wello's Motion for Summary Judgment.

## **NOTICE OF RIGHT TO OBJECT**

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Roy K. Altman, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 30th day of September 2024.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE