UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

Case No. 1:21-cv-24234-RK – ALTMAN/REINHART

CLEAR SPRING PROPERTY
AND CASUALTY COMPANY,

    Plaintiff,

vs.

WELLO AND MOM, LLC,

    Defendant.

_____

**DEFENDANT, WELLO AND MOM, LLC'S, OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF No. 101]**

    COMES NOW, the Defendant, Defendant WELLO AND MOM, LLC ( **"Wello"**), by and through its undersigned attorney and pursuant to 28 U.S.C. § 636(b)(1)(C), Federal Rule of Civil Procedure 72(b) and Southern District of Florida Magistrate Rule 4(b), and files and serves its Objections to the *Report and Recommendation on Cross-Motions for Summary Judgment* entered on October 1st, 2024, [ECF No. 101] (**"Report"**) and states as follows:

**INTRODUCTION**

    1.    This case involves the sinking of a vessel owned by Wello – a 2003 LoLette 40' Sunseeker with Identification No. XSK02857F304, with Suzuki Triple 300hp gas engines (the **"Vessel"**), the series of events leading up to the issuance of marine insurance policy No. CSRYP/204845, for policy period of July 31st 2021, through July 31st, 2022 (**"Policy"**) by CLEAR SPRING PROPERTY & CASUALTY COMPANY (**"Clear Spring"**), covering the Vessel, and the Vessel's partial sinking in September 2021 and Clear Spring's denial of the claim for damages

resulting therefrom.

2. In this action, Clear Spring sought declaratory relief declaring that the Policy was void *ab initio* for alleged violations of the doctrine of *uberrimae fidei* and alleged breaches of a fire extinguisher warranty contained in the Policy. Wello counter-claimed against Clear Spring, arguing that in reality it was Clear Spring who breached the Policy by failing to cover the September 2021 claim.

3. Ultimately, the parties filed competing Motions for Summary Judgment against each other (D.E. #81 – Clear Spring's motion – and #85 – Wello's motion). This Honorable Court referred both motions to Magistrate Judge Bruce E. Reinhart for resolution.

4. On October 1st, 2024, Magistrate Judge Reinhart issued his *Report and Recommendation on Cross Motions for Summary Judgment [ECF Nos. 81, 85]* (**"Report"**), and recommended that the Court grant Clear Spring's February 14th, 2023 *Motion For Summary Judgment and Incorporated Memorandum of Law* [D.E. #81] (**"Clear Spring's MSJ"**), and deny Wello's February 17th, 2023 *Motion for Summary Judgment and Incorporated Memorandum of Law as to Counterclaim and Plaintiff's Second Amended Complaint* [D.E. 85] (**"Wello's MSJ"**).

5. Wello respectfully objects to the recommendation of the Magistrate Judge to deny Wello's MSJ and to grant Clear Spring's MSJ. Accordingly, for the reasons set forth below, the Court should not follow the recommendations contained in the Report.

## MEMORANDUM OF LAW

### I. LEGAL STANDARD

The District Court reviews de novo the portions of the report and recommendation or specified proposed findings to which an objection is made. *See* 28 U.S.C. § 636(b)(1)(C); *See also,* Fed. R. Civ. P. 72(b)(3). The District Court may accept, reject, or modify in whole or in part the report and recommendation of a magistrate judge, or may receive further evidence, or may

recommit the matter to the magistrate judge with instructions. *Id*; *see also Tran v. Waste Mgmt., Inc.,* 290 F.Supp.2d 1286, 1291 (M.D.Fla. 2003). Moreover, and regardless of whether specific objections are filed, the magistrate's legal conclusions must be reviewed de novo. *Id* at 1291. In addition, "the district court's consideration of the factual issues must be independent and based upon the record before the court." *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir. 1988).

## II. PORTIONS OF THE REPORT TO WHICH OBJECTION IS MADE

- The statement that "Roy and Amelia Cisneros" are the title owners of the Vessel;

- The statement that Clear Spring maintains bank accounts and accepts service of process in New York;

- All other facts that were established as true in the "Material Facts" section of the Report, but which denied or admitted with qualifications by Wello in its February 28th, 2023 *Response to Plaintiff's Statement of Material Facts [ECF No. 80]* (D.E. #87);

- The conclusion that New York law applies to fill the "gaps" in established federal maritime law for disputes between the parties;

- The conclusion that Wello failed to disclose prior losses to Clear Spring;

- The conclusion that the undisclosed losses would be material to Clear Spring's determination of the risk in insuring the Vessel;

- The conclusion that the Policy is void *ab initio* for failure to disclose prior losses;

- The conclusion that there is a "reasonable basis" for choosing New York in the choice of law clause;

- The conclusion that there is no "substantial relationship" test for determining whether a choice of law provision in a maritime contract is enforceable;

- The conclusion that Wello did not meet the requirements of the fire suppression

warranty, did not dispute Clear Spring's factual contentions regarding the fire suppression equipment on the Vessel, that the 2019 inspection tag voids the Policy;

- The conclusion that the certification/tagging/recharging of the fire extinguisher had to be done "once a year";

- The summary denial of Wello's MSJ based on the findings above; and

- Any other fact or conclusion not specifically listed above, that is challenged in the memorandum below.

### III. SUMMARY OF THE ARGUMENT

Wello objects to the Report because it incorrectly concludes that there is no genuine dispute of material fact that 1) Wello made misrepresentations/omissions on its insurance applications and 2) those misrepresentations/omissions impacted the calculation of the insurance risk such that the Policy should be void *ab initio*. Further, the Report incorrectly analyzed whether the New York law should apply to fill in the "gaps" in entrenched federal maritime law, and disregarded existing federal tests which permit a Court to reject a choice of law provision if the parties and transaction have no substantial connection to the place whose law was "chosen" to govern a maritime contract. Regardless of which law fills the "gaps" in maritime law, the Report also incorrectly concluded that there was no genuine dispute that Wello breached the Policy's fire suppression warranty; in reality, Wello complied by weighing the fire extinguisher tanks once a year and retagging/recertifying/recharging "as necessary." Finally, the Report's findings should be re-examined and the cross-MSJs reviewed *de novo*, while taking into consideration Wello's objections to Clear Spring's summary judgment evidence, as well as the admissions of fact Clear Spring made by failing to challenge the statement of facts Wello made in connection with its MSJ.

IV. **ARGUMENT**

Clear Spring's MSJ should not have been granted because genuine issues of material facts exist, precluding entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) ("Summary judgment must be entered if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). As explained below, the Report failed to consider the material facts in their entirety. Accordingly, and pursuant to its de novo review, this Court should not follow the Magistrate's recommendations and should instead grant Wello's Motion for Summary Judgment, or at the very least, set this case down for a trial.

A. **THERE IS A GENUINE DISPUTE WHETHER WELLO MISREPRESENTED THE FACTS ON THE POLICY APPLICATION**

The first recommendation by the Magistrate Judge in the Report is that the Policy is void *ab initio* for Wello's alleged failure to disclose "two prior losses in 2016 and 2018" in its applications for insurance. Report, P. 9. The Report states that "[t]here is no genuine dispute that the application forms Wello filled out in 2019-2021 asked Wello to disclose 'all losses within the last 10 years' for that vessel or that Wello answered 'none.'" *Id.* This is incorrect. In Wello's *Response to Plaintiff's Statement of Material Facts* [D.E. 87] and its *Response to Plaintiff's Motion for Summary Judgment* [D.E. 88], it raised a genuine dispute of material fact as to 1) what Vessel the insurance applications were inquiring about (the applications specified the Vessel with ***Suzuki*** engines; 2) whose loss history the applications sought (the loss history requested is in the section for details about the ***operator*** of the Vessel, not the Vessel itself); 3) whether Clear Spring already had knowledge of the 2016 loss (it did); and 4) whether Wello was obligated to re-disclose the

2016 loss on the "renewal" applications, renewing coverage with Great Lakes insurance, when Great Lakes had previously denied the claim associated with the 2016 loss.

Firstly, the Report does not consider or address any of the extremely important facts or arguments made by Wello concerning Clear Spring's knowledge of the 2016 loss at the time it issued the Policy, and the effect of that knowledge on Wello's obligation to re-disclose the loss to Clear Spring. Wello presented evidence in its Response to Clear Spring's MSJ that Concept Special Risks, LTD. (**"Concept"**), Clear Spring's agent who processed Wello's insurance applications and issued insurance to them, and Clear Spring **_already knew about the 2016 loss at the time of Policy application and issuance_**. ECF #88, P. 15-17.   If Clear Spring **_already knew_** about the 2016 loss, why would Wello have had to re-disclose the loss to Clear Spring, and why would the failure to re-disclose a loss Clear Spring already knew about void the Policy?

Nor did the Report consider the facts or arguments made by Wello concerning the fact that Concept and Clear Spring, in 2021, presented Wello with a **_renewal_** application for insurance (the application for the Policy at issue) with Wello's then-insurer **_Great Lakes Insurance SE_** (**"Great Lakes"**), instead of a fresh application for insurance with a new insurer, Clear Spring. *Id.*  Great Lakes also clearly already knew about the 2016 loss since it **_was the past insurer who denied_** the claim for same. *Id*.  If Wello was presented with a renewal application for insurance with prior insurer **_Great Lakes_**, who already knew about the 2016 loss, why would Wello have had to re-disclose the loss on said application? How was Wello supposed to know that the "renewal" application was actually an application for insurance with a brand-new carrier, Clear Spring?  This chain of events demonstrates that there is a genuine dispute of material fact as to how much Clear Spring already knew, and how much Wello was required to disclose on its renewal application for insurance.  Clear Spring tricked Wello into believing that it did not have to disclose the 2016 loss,

because Wello believed it was reapplying for insurance with Great Lakes, who already knew about the loss. None of this extremely concerning history concerning Concept's and Clear Spring's "bait-and-switch" – their leading Wello to believe it was applying for renewal of a Great Lakes policy, and then switching the insurer on Wello – was considered in the Report.

Moreover, the 2016 loss was related to a fuel tank leak and the 2018 loss was an engine loss in 2018. Following the engine loss in 2018, Wello completely replaced the Yamaha engines that were previously on the Vessel with new Suzuki engines. Following replacement of the engines, the only part of the Vessel which had been affected by the 2018 loss was gone, replaced, and no longer existed. The Magistrate Judge found that Wello was required to disclose the 2016 Claim and 2018 Claim as prior losses in the 2021 Renewal Questionnaire because the vessel remained the same even after replacement of the old engines, simply because the Hull Identification Number for the Vessel remained the same.

However, the Report did not consider Wello's argument that the 2021 Renewal Questionnaire expressly defines the Vessel to be insured as follows: "scheduled vessel: Lolotte, 2003 40' **<u>Sunseeker with Suzuki triple 300hp gas engine</u>** XSK02857F304," and requests information concerning the Suzuki Sunseeker with **<u>the Suzuki engines</u>**. ECF #86 ¶ 33-35. Therefore, the 2021 Renewal Questionnaire specifically requests information concerning any prior losses to the Vessel, **<u>with the Suzuki engines</u>**, about which Wello correctly responded as "none." ECF #86 ¶ 35. Such a response is truthful, as the 2018 Claim only involved the engines, which at the time of the 2021 renewal application had been completely replaced. ECF #86 ¶ 18. The "scheduled vessel" to be insured was **<u>not</u>** the Sunseeker with Yamaha Engines. Even if the Magistrate does not agree with Wello's contention above, a genuine issue of material fact still

7

MM | MARTINEZ MORALES
Attorneys at Law
*2600 S. Douglas Road, Suite 305, Coral Gables, FL 33134, T: 305-501-5011, F: 786-272-7997*

exists between the parties as to whether the subject insurance policy application referred to the Suzuki Sunseeker, with the Suzuki engines, and whether Wello answered the questions truthfully.

Thus, the Report's finding that Wello's "response to the loss question was inaccurate" improperly ignores the disputed material facts and fails to account for the entire history of Wello's quest to insure the Vessel. Report P. 10. There is a very serious question still remaining as to what Wello had to report, to whom, and about whom, on its insurance application. As such, summary judgment should not have been granted on Clear Spring's MSJ.

### B. THERE IS A GENUINE DISPUTE WHETHER THE LOSS HISTORY WAS MATERIAL TO THE INSURANCE DECISION

After concluding that there was no dispute of fact that Wello did not disclose prior losses on its insurance applications, the Report concludes that "[a]ny reasonable juror would find the application inquiry regarding losses poses a risk assessment to the insurer . . . the answer "none" is material to the insurer's decision assessing the risk." Report P. 10. However, there is not a single legal citation to support this contention. And, as Wello pointed out in its response to Clear Spring's MSJ, the law is clear that prior loss history is not, as a matter of law, material to a coverage decision. *See GREAT LAKES Reinsurance (UK) PLC. v. Roca*, 0723322-CIV, 2009 WL 200252, at *4 (S.D. Fla. Jan. 27, 2009); ECF #88 P. 18. And, whether a specific misrepresentation or omission is material to a decision to insure is a ***fact-specific inquiry***. *See, e.g., HIH Marine Servs. v. Fraser,* 211 F.3d 1359 (analyzing the record to determine whether insured's misrepresentation regarding the custody of the vessel and finality of the charter agreement was material to insurer's decision to provide coverage for the vessel).; *La Reunion Francaise, S.A. v. Christy,* 122 F.Supp.2d 1325, 1330–31 (M.D.Fla.1999).

Here, not only did the Report did not make any findings that the alleged misrepresentation was material in light of the facts presented, it does not conduct any factual analysis at all.

Moreover, the Report concluded that the "application inquiry regarding losses poses a risk assessment to the insurer," and that an applicant answering "none" would be material to an insurer's decision concerning risk. However, this is the **_incorrect analysis_**. The question is not whether the **_question_** asked or the answer to the question would possibly be material to the insurer. The question is whether the **_omitted facts_** are material to a calculation of the insurance risk. *See HIH Marine Servs.*, 211 F/ 3d at 1362; *Quintero v. Geico Marine Ins. Co.*, 983 F.3d 1264, 1271 (11th Cir. 2020).

There remains a genuine question of material fact as to whether or not the omitted losses were material to Clear Spring's calculation of the insurance risk, so as to void the Policy. The Report did **_not_** consider or analyze whether the **_actual facts_** allegedly omitted by Wello – the existence of the 2016 and 2018 losses – would be material to **_this specific insurer,_** Clear Spring, when issuing this Policy. Again – how could the 2016 loss have been material to the calculation of the insurance risk, when Clear Spring (and its predecessor, Great Lakes, and its underwriting agent, Concept) had known about the risk for years, and insured Wello anyways, repeatedly? And, how could a loss to engines which **_had completely been replaced_** increase the insurance risk in any way? The reality is, that it could not. As such, Wello's alleged failure to report the 2018 loss is irrelevant, because the loss itself was not material to the calculation of the insurance risk.

Instead of analyzing – or considering these facts at all – the Report determined that "no reasonable jury could conclude that Wello's omissions did not materially affect the calculation of insurance risk" and did not provide a viable explanation for same. Report P. 11. There needs to be a fact-specific analysis supporting that conclusion. The fact of the matter is that the risk to Clear Spring did not change one bit due to 2016 Claim – which it **_knew about_** and chose to insure anyways–

or the 2018 Claim. [ECF 87 Ex 1]. As such, there still remains a genuine question of material fact whether the purported omission of the 2016 and 2018 claims voids the Policy *ab initio*.

### C. THERE IS A GENUINE QUESTION OF WHICH LAW SHOULD BE APPLIED TO DETERMINE WHETHER A BREACH OF WARRANTY VOIDS THE POLICY

Next, the Report recommends that Clear Spring's MSJ be granted regardless of whether the Policy was void *ab initio* for failure to disclose prior losses, because Wello also allegedly breached the fire suppression warranty in the Policy. In order to reach this conclusion, the Report first determines that New York law concerning technical breaches of warranty applies to void the Policy, rather than Florida's law prohibiting same. The Report relies on the recent Supreme Court Decision, *Great Lakes Insurance SE v. Raisers Retreat Realty Co., LLC,* 601 U.S. 65 (2024), to determine that Florida's public policy on "technical" insurance policy breaches does not work to defeat the New York choice of law provision in the Policy.

First of all, the *Raiders* case was decided *after* the parties had fully briefed their respective MSJs, meaning that Clear Spring did not proffer argument under this case, and Wello did not have an opportunity to respond to same in defense. This opportunity should be provided before a final decision is reached on the Cross-MSJs. Regardless, the *Raiders* case alone is not dispositive of the choice of law issue. First of all, the *Raiders* case is clear that a choice-of-law provision in a maritime contract can be disregarded "when parties can furnish no reasonable basis for the chosen jurisdiction." *Raiders*, 601 U.S. at 76. The Report states that Wello cannot pass this test, because it "does not challenge whether New York has 'well-known and highly elaborated commercial law." Report P.12. However, Clear Spring never made the assertion in the first place that New York law was chosen because it has "well-known and highly elaborated commercial law" in any

of its summary judgment papers. The Magistrate Judge could not conclude that the soundness of New York's law was a "reasonable basis" for the parties to pick that law to govern the Policy, **<u>because neither party ever said that</u>**. To make such a determination was incorrect and unfounded.

Next, the Report briefly disposes of Wello's contention that the New York choice of law should be disregarded because the parties, Policy, and incident have no connection to New York, by stating that "the Supreme Court has not recognized a 'substantial relationship test' in the no reasonable basis analysis." Report P. 12. However, just because the Supreme Court has not commented on or endorsed a test, does not mean the test does not exist. In Wello's response to Clear Spring's MSJ, it cites to a litany of cases which have stated that a choice of law clause in a marine insurance policy will not be applied if the state in question "has **<u>no substantial relationship</u>** to the parties or the transaction or the state's law conflicts with the fundamental purpose of maritime law." ECF #88 P. 7; *see Great Lakes Reinsurance (UK), PLC v. Rosin,* 757 F. Supp. 2d 1244*,* 1250–51 (S.D. Fla. 2010); (even *Big Toys*, *infra*, cited to by the Report later in its discussion of the fire suppression warranty, discusses the "substantial relationship" test).

*Raiders* did not reject or foreclose this exception to the general presumption that choice-of-law statutes are valid in maritime contracts. In fact, *Raiders* did not comment on it at all, and *only* commented on the two exceptions that the parties in that case *agreed* existed – where the chosen law would contravene a controlling federal statute/established federal maritime policy, or where there is "no reasonable basis" for the chosen jurisdiction – and a third new exception that the appellee requested the Supreme Court endorse. *Raiders*, 601 U.S. at 76-77. Moreover, Clear Spring *agrees* in its MSJ that the "substantial relationship test" exists and is an important part of the analysis of whether New York law applies, and spent time going through Clear Spring's

connections to the state of New York and analyzing how Clear Spring passes this test. ECF No. 81, P. 5-6; ECF No. 96, P. 3-4; ECF No. 80 ¶ 50-53.

Despite the fact that Courts in this Circuit and this very district have applied the "substantial relationship test" to determine if a choice of law provision should be enforced, the Report disregards and fails to apply or analyze the test. Wello challenges Clear Spring's connections to the state of New York in both its response to Clear Spring's MSJ and its reply in support of Wello's MSJ, even going through a thorough description of how Clear Spring's connections with the state of New York fail to meet the "substantial relationship" requirement and how there are no facts proffered by Clear Spring that meet the requirement. ECF No. 88, P. 7-9; ECF No. 97, P. 4-6; ECF No. 85, P. 8-10. The Report does not examine what Clear Spring's connection to New York is. Wello has clearly shown that there is a genuine question of material fact as to whether Clear Spring and this transaction have any relationship to New York, so as to justify enforcing the choice of law provision.

Finally, the Report overlooks the fact that the *Raiders* case leaves open the possibility for a court to assess whether its decision to apply a specific maritime rule "produces an 'equitable result.'" *Raiders*, 601 U.S. 75. If the Court is going to consider *Raiders'* impact on this matter, even though it was decided after the cross-MSJs were fully briefed and the parties did not have opportunity to submit briefing on the decision, then it should consider this pronouncement as well. Clearly, the result of applying maritime rules and enforcing the New York choice of law in this case produces a highly inequitable result. Clear Spring and Concept set Wello up for failure, by first misrepresenting that Wello was applying to renew insurance with Great Lakes, to forcing a choice of law provision on them that Clear Spring has used countless times to unjustifiably cheat its insureds out of coverage. Clear Spring and Concept set Wello up to be in a position where they

could feign ignorance about prior claims, all while taking advantage of a highly technical fire suppression warranty to evade coverage. This is not the first time that Clear Spring, in alliance with Concept, have taken advantage of innocent insureds to ensure that they will never have to cover a single claim, despite gladly taking their client's premiums. After Clear Spring's and Concepts machinations, the end result here is absolutely inequitable, and the choice of New York law should be disregarded.

### D. THERE IS A GENUINE DISPUTE WHETHER WELLO BREACHED THE FIRE SUPPRESSION WARRANTY

After determining that New York law applies – which law permits an insurer to void an insurance policy simply because of a "technical" breach of the Policy which played no role in the loss – the Report determines that Wello breached the fire suppression warranty in the Policy. However, this determination runs contrary to the clear text of the case relied on by the Magistrate Judge to decide this point – *Clear Spring Property and Casualty Company v. Big Toys*, 683 F. Supp. 3d 1297 (S.D. Fla. 2023), *appeal dismissed* (Mar. 18, 2024), and ignores the clear dispute of material fact raised by the affidavits submitted by Wello's principals.

The fire suppression warranty at issue reads:

> k) If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

In Big Toys, the insured read a similar fire suppression warranty to mean that the tanks only had to be weighed "as necessary," instead of once a year. *Big Toys,* 683 F.Supp.3d at 1306. The Court in Big Toys stated that was incorrect, explaining as follows:

> "The final clause of the warranty requires that "certification/tagging and recharging" occur "as necessary," and the penultimate clause requires weighing of the tanks "once a year." Big Toys' alternative interpretation of the warranty omits entirely the term "once a year" which immediately follows "weighing of tanks." The only reasonable interpretation of the Fire Suppression Warranty is that it

required the tanks be weighed "once a year." The Court agrees . . . that the Fire Suppression Warranty clearly and unambiguously requires that fire suppression tanks be weighed at least once a year. "

*Id.* at 1306-07 (citations omitted). This appears to mean that 1) the tanks must be weighed at least once a year; and 2) certification/tagging and recharging must occur "as necessary."

The Report gets this backwards, stating that because the inspection tag on the fire extinguisher stated it was last inspected in 2019 – over a year before the loss, there is no dispute of material fact that Wello violated this warranty. That is not the correct reading of the warranty, as demonstrated above. The tagging/recharging needs to occur "***as necessary,***" while the ***weighing*** must occur once a year. Here, the affidavits submitted by Wello in opposition to Clear Spring's MSJ prove that they complied with this provision, and at the very least creates a question of fact as to their compliance. In the *Affidavit of Amelina Cisneros, In Opposition to Plaintiff/Counter-Defendant, Clear Spring Property and Casualty Company's Motion for Summary Judgment,* D.E. #87-3, Amelina Cisneros attests as follows:

> 8. To the best of my knowledge, my husband, Roy Cisneros, weighed the fire extinguishing equipment on the Suzuki Sunseeker, specifically the fire extinguishing tanks, once a year, since WELLO purchased the Suzuki Sunseeker.
>
> 9. To the best of my recollection, we hired an individual to certify/tag and recharge the fire extinguishing tanks as necessary since the vessel was purchased.
>
> 10. To the best of my knowledge, on or about September 27th, 2021, the Suzuki Sunseeker's fire extinguishers were in working condition.
>
> 11. To the best of my knowledge, the fire extinguishers were completely filled and had never been used on or about September 27th, 2021.
>
> 12. It is my understanding that a fire extinguisher's useful life is twelve (12) years.
>
> 13. To the best of my recollection, in or around 2020 I contacted the company who normally recertifies and retags our fire extinguishers; however, I was unable to obtain an inspection date due to COVID-19. I was told that no inspectors were going to home residences for these type of inspections due to COVID-19.

In the *Affidavit of Roy Cisneros, In Opposition of Plaintiff/Counter-Defendant, Clear Spring Property and Casualty Company's Motion for Summary Judgment* (D.E. #87-4), Roy Cisneros attests as follows:

> 5. To the best of my knowledge, I weighed the fire extinguishing equipment on the Suzuki Sunseeker, specifically the fire extinguishing tanks, once a year, since WELLO purchased the Suzuki Sunseeker.
>
> 6. To the best of my recollection, we hired an individual to certify/tag and recharge the fire extinguishing tanks as necessary since the vessel was purchased.
>
> 7. To the best of my knowledge, the Suzuki Sunseeker's fire extinguishers were in working condition on or about September 27th, 2021.
>
> 8. To the best of my knowledge, on or about September 27th, 2021, the fire extinguishers were completely filled and had never been used.
>
> 9. It is my understanding that a fire extinguisher's useful life is twelve (12) years.
>
> 10. To the best of my recollection, in or around 2020 my wife, Amelina Cisneros, contacted the company who normally recertifies and retags our fire extinguishers; however, I was unable to obtain an inspection date due to COVID-19. She was told that no inspectors were going to home residences for these type of inspections due to COVID-19.

These affidavits demonstrate that Wello did indeed weigh the tanks once per year, and had the fire extinguisher certified/retagged/recharged as necessary. Clear Spring did not file any evidence contradicting the statements made in these affidavits, or explaining why it would have been "necessary" to retag/recertify/recharge the fire extinguisher more recently than 2019 (keeping in mind that the incident occurred in 2021). Nor did Clear Spring provide any expert testimony or affidavit to that effect. As such, there is obviously a genuine dispute of material fact as to whether Wello complied with the Policy's mandates to weigh the tanks "yearly" or to retag/recertify/recharge them "as necessary," and a dispute as to what "as necessary" means.[1]

---

[1] And, if Wello complied with the fire extinguisher warranty, then it does not matter which state's law – Florida or New York's – governs the impact of technical warranty breaches.

### E. THE REPORT DOES NOT MAKE RECOMMENDATIONS CONCERNING WELLO'S OBJECTIONS TO CLEAR SPRING'S SUMMARY JUDGMENT EVIDENCE

Another issue with the Report is that it does not comment on whether Wello's objections to Clear Spring's summary evidence were well-taken, or disregarded. In Wello's *Response to Plaintiff's Statement of Material Facts* (D.E. # 87), Wello objects to certain summary judgment evidence submitted by Clear Spring. ECF #87, ¶ 17, 18, 19, 29. For example, in paragraph 17, Wello "objects to the admissibility of this document under FRCP 56(c)(ii) as hearsay" (referring to a purported 2018 application for insurance) and unauthenticated. ECF #87, ¶ 17. Wello objected again to the admissibility of this document in Paragraph 18. ECF #87, ¶ 18. Wello also objected to the admissibility or use of Clear Spring's Underwriting Manual, which was produced for the first time in this case as Exhibit 5 to Clear Spring's *Statement of Material Facts Not in Dispute in Support of its Motion for Summary Judgment* (D.E. #80) (Clear Spring committed a discovery violation by failing to produce the Underwriting Manual in discovery). ECF 87, ¶ 29. In addition, in its *Reply in Support of its Motion for Summary Judgment* (D.E. #97), Wello objected to the report of Clear Spring's expert, Revel Boulon, because Clear Spring did not provide a copy of the report *with* exhibits. ECF 97, P.2

In the Report, it is unclear to what extent the Magistrate Judge's findings and conclusions are the result of or are supported by these objected-to documents – in particular, to what extent the Magistrate relied on the Underwriting Manual to conclude that Wello's alleged misrepresentations affected the insurance risk. The Report's recommendations should reviewed de novo, with said *de novo* review excluding any summary judgment evidence objected to by Clear Spring.

### F. THE REPORT DOES NOT CONSIDER THAT CLEAR SPRING ADMITTED TO EACH AND EVERY FACT IN WELLO'S STATEMENT OF FACTS

Finally, the Report errs by summarily disposing of Wello's MSJ, and by granting Clear Spring's MSJ, without considering the fact that Clear Spring admitted each and every fact in Wello's *Statement of Material Facts not in Dispute in Support of its Motion for Summary Judgment* (D.E. #86). Clear Spring admitted these facts by not filing an opposing Statement of Material Facts as required by Local Rule 56.1(a). This means that the Court may consider *all* of Wello's proffered facts as admitted by Clear Spring, and grant summary judgment in Wello's favor. F.R.C.P. 56(3); Local Rule 56.1(c). This failure to dispute Wello's factual statement is extremely important and should have been taken into consideration by the Magistrate Judge. However, the report is silent on this front. As such, Wello respectfully requests that the Court review the cross-MSJs *de novo* while considering the facts proffered by Wello as undisputed.

### G. CONCLUSION

Wello respectfully requests that this Honorable Court disregard the recommendations in the Report and conduct a *de novo* review of the Cross-MSJs, as there remain genuine disputes of material fact that prevent entry of summary judgment on Clear Spring's MSJ.

**WHEREFORE**, Wello asks that this Court review Wello's MSJ and Clear Spring's MSJ *de novo*, and enter an order 1) DENYING Clear Spring's MSJ, 2) GRANTING Wello's MSJ, and 3) awarding Wello all such further relief this Court deems just and necessary.

Dated: October 15th, 2024                Respectfully submitted,

                                          MARTINEZ MORALES
                                          2600 S. Douglas Road, Suite 305
                                          Coral Gables, FL 33134
                                          T: 305-501-5011
                                          F: 786-272-7997
                                          rmorales@mmlawfl.com
                                          abousalis@mmlawfl.com

                              By: */s/ Raul Morales*_____
                                          **RAUL MORALES**
                                          **FBN: 065307**
                                          **ANGELA BOUSALIS**
                                          **FBN: 111379**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record on October 15th, 2024**,** via the CM/ECF system.

                                         By: */s/ Raul Morales*_____
                                          **RAUL MORALES**
                                          **ANGELA BOUSALIS**