## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 21-cv-24234-ALTMAN/Reinhart

**CLEAR SPRING PROPERTY AND
CASUALTY COMPANY**,

     *Plaintiff,*

*v.*

**WELLO AND MOM, LLC,**

     *Defendant.*

_____/

### ORDER ADOPTING REPORT AND RECOMMENDATION

On September 27, 2021, Wello and Mom, LLC's vessel suffered a "partial sinking." Second Amended Complaint ("SAC") [ECF No. 74] ¶ 9. Although our Plaintiff, Clear Spring Property and Casualty Company, issued Wello a marine insurance policy (the "Policy"), Clear Spring declined to cover the loss after it concluded that Wello "failed to disclose facts which would have been material to the judgment of the underwriter who made the decision to issue the Policy." *Id.* ¶ 15. Clear Spring sought declaratory relief in this Court, and both parties subsequently moved for summary judgment—with Clear Spring arguing that the Policy was void *ab initio* and Wello insisting that Clear Spring breached the Policy by refusing to cover the loss. *See* Clear Spring's Motion for Summary Judgment ("Clear Spring MSJ") [ECF No. 81] at 1 ("The Plaintiff seeks summary judgment . . . the policy is void due to misrepresentation and/or nondisclosure of material fact[s] made at the time of the time of the application process."); Wello and Mom, LLC's Motion for Summary Judgment ("Wello MSJ") [ECF No. 85] at 1 ("Wello . . . [contends] that [Clear Spring] breached a valid and enforceable contract between the parties—the marine insurance policy.").

We referred these cross-motions for summary judgment to U.S. Magistrate Judge Bruce E. Reinhart for a Report and Recommendation. *See* Order of Referral [ECF No. 98]. After reviewing the

parties' briefing, Magistrate Judge Reinhart recommended that we "grant Clear Spring's Motion for Summary Judgment and deny Wello's Motion for Summary Judgment." Report and Recommendation ("R&R") [ECF No. 101] at 15. Magistrate Judge Reinhart agreed with Clear Spring (1) that the Policy is void *ab initio* because "Wello failed to disclose prior losses" and (2) that "Clear Spring relied on the facts disclosed in [Wello's] applications in issuing a policy to cover the [Vessel]." *Id.* at 9–10. Magistrate Judge Reinhart also found, in the alternative, that Wello had voided the Policy before the Vessel sunk when it breached the Policy's "Fire Extinguisher Warranty." *See id.* at 14 ("A 2019 inspection tag means the [Vessel's] fire suppression system and handheld fire extinguisher certification and tagging would have expired in May [sic] 2020—a year before the reported loss. So, at the time of the loss, the policy was void and Clear Spring's Motion for Summary Judgment should be granted."). Magistrate Judge Reinhart then cautioned the parties as follows:

> A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Roy K. Altman, United States District Court Judge for the Southern District of Florida, within FOURTEEN (14) DAYS of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11TH CIR. R. 3-1 (2016).

*Id.* at 16.

Wello timely objected to Magistrate Judge Reinhart's R&R. *See* Objections to Report and Recommendation ("Objections") [ECF No. 102]. Clear Spring has now responded to those Objections. *See* Plaintiff's Response to the Defendant's Objections ("Objections Response") [ECF No. 105]. After careful review, we **OVERRULE** Wello's Objections and **ADOPT** Magistrate Judge Reinhart's R&R in full.

BACKGROUND

## I.    The Undisputed Facts[1]

On July 23, 2016, Wello purchased a "2003 37' Sunseeker vessel, bearing [Hull Identification Number] XSK02857F304" (the "Vessel"). Plaintiff's Statement of Material Facts ("PSOF") [ECF No. 80] ¶ 1; *see also* Defendant's Response to PSOF ("PSOF Response") [ECF No. 87] ¶ 1 ("Undisputed"). Wello is an LLC with only two members: Amelina Cisneros and Roy Cisneros. *See* PSOF ¶ 2; *see also* PSOF Response ¶ 2 ("Undisputed."). Shortly after the Vessel was purchased, Wello "submitted an application for a policy of marine insurance to Concept Special Risks Ltd. . . . which was then acting as underwriting and claims handling agent for another marine insurer, Great Lakes Insurance SE[.]" PSOF ¶ 4; *see also* PSOF Response ¶ 4 ("Undisputed."). Acting on behalf of Great Lakes, Concept issued "a policy of marine insurance to Wello, Policy No. CSRYP/157469, for the policy period of July 26, 2016 through July 26, 2017." Defendant's Statement of Material Facts ("DSOF") [ECF No. 86] ¶ 7.[2]

---

[1] "The facts are described in the light most favorable to the non-moving party." *Plott v. NCL Am., LLC*, 786 F. App'x 199, 201 (11th Cir. 2019); *see also Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) ("[F]or summary judgment purposes, our analysis must begin with a description of the facts in the light most favorable to the [non-movant]."). We accept these facts for summary-judgment purposes *only* and recognize that "[t]hey may not be the actual facts that could be established through live testimony at trial." *Snac Lite, LLC v. Nuts 'N More, LLC*, 2016 WL 6778268, at *1 n.1 (N.D. Ala. Nov. 16, 2016) (Proctor, J.); *see also Cox Adm'r US Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994) ("[W]hat we state as 'facts' in this opinion for purposes of reviewing the rulings on the summary judgment motion may not be the actual facts. They are, however, the facts for present purposes[.]" (cleaned up)). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (cleaned up). In adjudicating cross-motions, then, we consider each motion separately and, of course, resolve all reasonable inferences against the movant. *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).

[2] Clear Spring never responded to the DSOF. *See generally* Docket. Our Local Rules require litigants to respond to the opposing party's statement of material facts to the extent that factual issues are disputed. *See* S.D. FLA. L.R. 56.1(b)(2)(B)–(C) ("An opponent's Statement of Material Facts shall use, as the very first word in each paragraph-by-paragraph response, the word 'disputed' or 'undisputed.' If an opponent's Statement of Material Facts disputes a fact in the movant's Statement of Material Facts, then the evidentiary citations supporting the opponent's position must be limited to evidence

The Vessel suffered "two losses—one in 2016 and one in 2018." R&R at 3. The first loss occurred on September 1, 2016, when the Vessel "suffered damage related to a fuel tank leak[.]" DSOF ¶ 8. Great Lakes denied "coverage for the loss suffered in 2016" and subsequently "elected not to renew insurance coverage for the [Vessel]" in July 2017. *Id.* ¶¶ 11, 13. Thus, on July 28, 2017, Wello "entered into a marine insurance policy with Certain Underwriters at Lloyd's . . . for the 2017 through 2018 policy period[.]" *Id.* ¶ 15. On May 6, 2018, the Vessel "suffered an engine loss." *Id.* ¶ 16.[3] As a consequence of this loss, Wello "completely replaced the [Vessel's] Yamaha 250 2-stroke engines with Suzuki triple 300hp gas engines[.]" *Id.* ¶ 18.

Around the same time, Wello prepared "a marine insurance application to obtain coverage for the [Vessel] for the 2018–19 policy period." *Id.* ¶ 20. This application described the Vessel as a "Sunseeker with Suzuki triple 300hp gas engines" and affirmed that the Vessel had not been involved "in a Loss in the last 10 years[.]" *Id.* ¶¶ 22–23; *see also* PSOF ¶ 19 ("In response to a question on the 2018 Application requiring disclosure of 'Loss History.' Wello answered, 'None.'"). "Thereafter, Concept issued on behalf of Great Lakes a marine insurance policy to Wello to cover the [Vessel], Policy No. CSRYP/169671, for the policy period of July 31st, 2018, through July 31st, 2019." DSOF ¶ 24. Wello renewed the Policy in 2019, 2020, and 2021—each time claiming that the Vessel had not suffered a loss in the preceding ten years. *See* R&R at 3–4 ("In 2019, 2020, and 2021 a renewal application for [the Vessel] was filed. The 2019, 2020, and 2021 renewal applications listed 'Roy

---

specific to that particular dispute."). We'll therefore deem every fact Wello asserted in its SOF "admitted" *unless* that fact is contradicted by the PSOF or other evidence in the record. *See Ibezim v. GEO Grp., Inc.*, 2018 WL 8222121, at *7 (S.D. Fla. July 6, 2018) (Marra, J.) ("Failure of a respondent to file a statement of disputed facts, in the format as required [by the Local Rules] causes all material facts set forth in the movant's statement to be deemed admitted unless controverted by the opposing party's statement." (cleaned up)); *see also* S.D. FLA. L.R. 56.1(c) (same).

[3] Clear Spring alleges that this "engine loss" occurred when the Vessel "ran aground and suffered approximately twenty thousand dollars ($20,000.00) in damages." PSOF ¶ 15; *see also* PSOF Response ¶ 15 ("Disputed as phrased. Wello suffered a loss in 2018 and its damages exceeded $20,000.00."). How exactly the Vessel suffered an engine loss in 2018 is irrelevant to the issues in this case.

Cisneros' under operator and 'none' under 'all losses in the past 10 years.'"); *see also* DSOF ¶¶ 25–35 (same). In 2021, "Concept issued on behalf of Clear Spring a marine insurance policy, Policy No. CSRYP/204845, for the policy period of July 31st, 2021, through July 31st, 2022[.]" DSOF ¶ 36.

On September 27, 2021, "during the period of coverage afforded under the Policy, the [Vessel] suffered a partial sinking." PSOF ¶ 39; *see also* PSOF Response ¶ 39 ("Undisputed."). "The sinking occurred at around 2:00–4:00 AM while the [Vessel] was docked at Amelina and Roy Cisneros' vacation home in Marathon, Florida. The [V]essel was completely submerged in water and [was] deemed a total loss." DSOF ¶ 44. Clear Spring assigned Revel Boulon "to undertake a full investigation into the causes and circumstances of the loss." PSOF ¶ 40; *see also* PSOF Response ¶ 40 ("Undisputed."). After investigating Wello's claim, Clear Spring denied coverage. *See* Joint Statement of Material Facts ("Joint SOF") [ECF No. 84] ¶ 3 ("Clear Spring informed Wello in writing that it denied the claim and did not pay for the alleged damages.").

## II.     The Procedural History and the R&R

Clear Spring's operative SAC seeks "declaratory relief pursuant to [28 U.S.C. § 2201] . . . to adjudicate and determine the rights of the parties to a contract of marine insurance which is in dispute." SAC ¶ 1. The SAC asks us—across six causes of action—to find: (1) that the Vessel's partial sinking "does not constitute an accidental physical loss for which coverage would be afforded under the express terms and provisions of the Policy," *id.* ¶ 20; (2) that the sinking "was due to wear and tear, gradual deterioration, lack of maintenance, etc., for which coverage is excluded under the express terms and provisions of Plaintiff's policy of marine insurance," *id.* ¶ 27; (3) that the damage to the Vessel's engines "was not caused by an accidental external event such as a collision, impact with a fixed or floating object, grounding, stranding, ingestion of a foreign object, lightning strike or fire," *id.* ¶ 34; (4) that "[t]he Vessel was unseaworthy at the time of the partial sinking on September 27, 2021," *id.* ¶ 42; (5) that Wello breached its duty of *uberrimae fidei* by "fail[ing] to disclose material facts at the

time that it submitted the Renewal Questionnaire and prior to the issuance of the Policy," *id.* ¶ 49; and (6) that Wello breached the Policy's "Fire Extinguisher Warranty" because "the inspection and certification tags on the Vessel's fire extinguishers and fire suppression system had been expired since March 2020," *id.* ¶ 60.

Both parties moved for summary judgment on different portions of the SAC. Clear Spring moved for summary judgment on Counts 5 and 6 (*viz.*, the breach of *uberrimae fidei* and the breach of the Fire Extinguisher Warranty). *See* Clear Spring MSJ at 1. Wello, by contrast, moved for summary judgment on Counts 1 through 5. *See* Wello MSJ at 1–2. After reviewing the cross-motions for summary judgment, Magistrate Judge Reinhart sided with Clear Spring and recommended that we grant Clear Spring's MSJ in full and deny Wello's. *See* R&R at 15.

Magistrate Judge Reinhart first found that Wello "failed to disclose prior losses and therefore the [P]olicy is void *ab initio.*" *Id.* at 9. In reaching this conclusion, Magistrate Judge Reinhart rejected Wello's argument "that the vessel in 2019 was not the same vessel that experienced the 2016 and 2018 losses because the engines were since replaced." *Id.* at 10. "New engines or not," Magistrate Judge Reinhart explained, "there is no dispute that the Hull Identification number remained the same, so the response to the loss question was inaccurate." *Ibid.* Magistrate Judge Reinhart also found that "there is no genuine dispute that Clear Spring relied on the facts disclosed in [Wello's] applications in issuing a policy to cover the [Vessel]" and that "any reasonable juror would find that the answer 'none' is material to the insurer's decision assessing the risk." *Ibid.* Since "no reasonable jury could conclude that Wello's omission did not materially affect the calculation of insurance risk," Magistrate Judge Reinhart recommends that we grant summary judgment in favor of Clear Spring and declare the Policy void *ab initio.* *Id.* at 11.

Magistrate Judge Reinhart also found that Wello had voided the Policy by breaching its Fire Extinguisher Warranty. Magistrate Judge Reinhart divided this analysis in two parts. *First*, the

Magistrate Judge determined that the Policy's "New York choice of law provision is presumptively enforceable" and, therefore, that the Policy "is subject to the substantive laws of the State of New York"—not Florida. *Ibid.* Although Wello argued that the Policy's "choice of law provision is unreasonable and unjust," Magistrate Judge Reinhart found the choice-of-law provision "presumptively enforceable" and concluded that Wello had failed to surmount its "burden to overcome that presumption." *Id.* at 11, 13. *Second*, Magistrate Judge Reinhart applied the relevant New York law, which holds that a "breach of an express warranty in a marine insurance policy voids the policy, even where the breach played no role in the loss." *Id.* at 13. Based on evidence that "Wello does not dispute," Magistrate Judge Reinhart concluded that the Fire Extinguisher Warranty was breached because the Vessel's "fire suppression system and handheld fire extinguisher certification and tagging would have expired in May [sic] 2020—a year before the reported loss." *Id.* at 13–14.[4] Accordingly, "at the time of the loss, the policy was void and Clear Spring's Motion for Summary Judgment should be granted." *Id.* at 14.[5]

## THE LAW

District courts must review *de novo* any part of a magistrate judge's disposition that has been

---

[4] Although Magistrate Judge Reinhart found that the fire-suppression system and handheld-fire-extinguisher certification and tagging expired in "May 2020," this appears to be a scrivener's error. There's no evidence in the record that *anything* expired in May 2020, and Magistrate Judge Reinhart himself suggested (mere sentences earlier) that the suppression system's certification expired one year *after* "the inspection tag on the system was dated *March 2019*." R&R at 13 (emphasis added). We'll assume, then, that Magistrate Judge Reinhart meant to find that the certification and tags expired in *March*—not May—2020.

[5] Since Magistrate Judge Reinhart recommended that we grant Clear Spring's Motion for Summary Judgment *and* hold that the Policy is void, he also recommended that we deny Wello's Motion for Summary Judgment because Clear Spring couldn't have breached an insurance policy Wello had already rendered void. *See* R&R at 14–15 ("Wello's Motion for Summary Judgment should be denied. . . . A reasonable jury viewing the undisputed facts in the light most favorable to Clear Spring could find that Wello's insurance application omission violated its burden to disclose all facts material to a calculation of the insurance risk and therefore the policy was void ab initio. In the alternative, even if the policy was not void ab initio, there is no genuine dispute of material fact that Wello breached the fire suppression warranty, therefore rendering the policy void. And for these reasons, I do not reach Wello's argument that Clear Spring breached its policy coverage contract.").

properly objected to. *See* FED. R. CIV. P. 72(b)(3). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). "If no objection or only [a] partial objection is made to the magistrate judge's report, the district judge reviews those unobjected portions for clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (quoting *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) (cleaned up)).

When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Leonard v. Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). The "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citation omitted).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See ibid.*

At summary judgment, the moving party bears the initial burden of "showing the absence of a genuine issue as to any material fact." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion [ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."). Once the moving party satisfies its initial burden, the burden then shifts to the non-moving party to "come forward with 'specific facts showing there is a genuine issue for trial.'" *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted)).

The Court, in ruling on a motion for summary judgment, "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3); *see also Green v. Northport*, 599 F. App'x 894, 895 (11th Cir. 2015) ("The district court could consider the record as a whole to determine the undisputed facts on summary judgment."); *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) (noting that a "court may decide a motion for summary judgment without undertaking an independent search of the record" (quoting FED. R. CIV. P. 56 advisory committee's note to 2010 amendment)). In any event, on summary judgment, the Court must "review the facts and all reasonable inferences in the light most favorable to the non-moving party." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1265 (11th Cir. 2001). Where, as here, there are competing cross-motions for summary judgment, "the facts are viewed in the light most favorable to the non-moving party on each motion[.]" *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). "Cross-motions for summary judgment will not, in themselves,

warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (cleaned up).

In sum, if there are any genuine issues of material fact, the Court must deny summary judgment and proceed to trial. *Whelan v. Royal Caribbean Cruises Ltd.*, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (Ungaro, J.). On the other hand, the Court must grant summary judgment if a party "has failed to make a sufficient showing on an essential element of her case." *Celotex*, 477 U.S. at 323; *see also Lima v. Fla. Dep't of Children & Families*, 627 F. App'x 782, 785–86 (11th Cir. 2015) ("If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." (quoting *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994))).

## ANALYSIS

Wello advances six objections to Magistrate Judge Reinhart's R&R: two on the doctrine of *uberrimae fidei* (Count 5), *see* Objections at 5–10; two relating to the alleged breach of the Fire Extinguisher Warranty (Count 6), *see id.* at 10–15; and the final two about the evidence Magistrate Judge Reinhart may (or may not) have considered in reaching his decision, *see id.* at 16–17.[6] We'll

---

[6] Wello's Objections also contain a bullet-point list titled "Portions of the Report to Which Objection is Made." Objections at 3–4. Wello expands on most of these general and conclusory objections in later portions of its Objections, so we find that many of these one-line complaints have been preserved for our review. *Compare, e.g., id.* at 3 ("The conclusion that the undisclosed losses would be material to Clear Spring's determination of the risk in insuring the Vessel."), *with id.* at 8 ("Here, not only did the Report did [sic] not make any findings that the alleged misrepresentation was material in light of the facts presented, it does not conduct any factual analysis at all."). But as to those one-sentence objections that *aren't* discussed in more detail, we find this list of one-liners (submitted without citations to the record or to caselaw) insufficient to trigger *de novo* review. *See Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) ("Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court.").

address Wello's objections to Magistrate Judge Reinhart's process first. After that, we'll go through the substantive legal objections Wello has offered as to each count.

## I.      Objections to Judge Reinhart's Methodology

Wello has identified two flaws that (it says) infect Magistrate Judge Reinhart's entire R&R. *First*, Wello claims that "the Report . . . does not comment on whether Wello's objections to Clear Spring's summary evidence were well-taken, or disregarded." R&R at 16. Wello argues that "it is unclear to what extent the Magistrate Judge's findings and conclusions are the result of or are supported by these objected-to documents" and insists that, because of this uncertainty, we must review the *entire* Report *de novo* to ensure that Magistrate Judge Reinhart's findings weren't tainted by objectionable evidence. *Ibid*. *Second*, Wello again asserts that we must "review the cross-MSJs *de novo*" because Magistrate Judge Reinhart failed to "consider[ ] the fact that Clear Spring admitted each and every fact in [the DSOF] . . . by not filing an opposing Statement of Material Facts[.]" *Id.* at 17.

We reject Wello's transparent attempt to avoid Magistrate Judge Reinhart's unfavorable recommendation by forcing us to conduct a full *de novo* review of the summary-judgment record. Wello's complaints are based on the flawed premise that the entire R&R is tainted because it's "unclear to what extent" Magistrate Judge Reinhart relied on "objected-to documents[.]" *Id.* at 16. Magistrate Judge Reinhart's R&R is replete with detailed citations to the parties' briefing, and he painstakingly described the evidence he relied on in making his findings. *See generally* R&R. If the Magistrate Judge did, in fact, incorrectly rely on objected-to evidence, Wello could easily have identified those errors by referring to the R&R's citations and checking Magistrate Judge Reinhart's work. But Wello hasn't done that. In fact, it hasn't identified *even a single specific instance* in which Magistrate Judge Reinhart relied on objected-to evidence. Instead, Wello merely speculates that he *might* have done that. *See* Objections at 16 ("In the Report, it is unclear to what extent the Magistrate Judge's findings and conclusions are the result of or are supported by these objected-to documents—in particular, to what extent the

Magistrate relied on the Underwriting Manual to conclude that Wello's alleged misrepresentations affected the insurance risk."). That's not good enough. *See Marsden*, 847 F.2d at 1548 ("Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court."); *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("After a magistrate judge has issued a report and recommendation under § 636(b)(1)(B), a party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with.").[7]

Wello's related objection about Clear Spring's failure to respond to the DSOF is similarly unavailing. Wello contends that the "failure to dispute Wello's factual statement is extremely important and should have been taken into consideration by the Magistrate Judge" and that "the report is silent on this front." Objections at 17. Again, however, Wello doesn't identify any portion of the R&R in which Magistrate Judge Reinhart failed to give proper deference to "Wello's proffered facts as admitted by Clear Spring[.]" *Ibid*. Wello also misapprehends the scope of the relevant Local Rule. Although Wello says that "Clear Spring admitted each any every fact" in the DSOF when it failed to

---

[7] Wello mistakenly believes that, "regardless of whether specific objections are filed, the magistrate's legal conclusions must be reviewed *de novo*." Objections at 3 (citing *Tran v. Waste Mgmt., Inc.*, 290 F. Supp. 2d 1286, 1291 (M.D. Fla. 2003) (Conway, J.)). Wello's misunderstanding of the law derives from the *Tran* Court's own misreading of the Eleventh Circuit's opinion in *Cooper-Houston v. Southern Railroad Co.*, which held that a district court must "review [a magistrate judge's] legal conclusions *de novo*"—but only *if* the case "was tried by a magistrate judge *sitting as a special master*[.]" 37 F.3d 603, 604 (11th Cir. 1994) (emphasis added). That's not the situation we have here. And the Eleventh Circuit has been clear that a party's general objections to an R&R aren't sufficient to invoke our *de novo* review of a magistrate judge's *legal* conclusions. *See Marsden*, 847 F.2d at 1548 ("Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to."); *Schultz*, 565 F.3d at 1360 ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). And this makes sense. To hold otherwise would be to permit an unhappy litigant (like Wello) to *double* judicial labor by forcing both the magistrate judge and the district judge to conduct a full *de novo* review of the record simply by asserting an omnibus objection about the magistrate judge's methodology. That's plainly not the law. *See Schultz*, 565 F.3d at 1361 ("It is reasonable to place upon the parties the duty to pinpoint those portions of the magistrate's report that the district court must specially consider. This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act.").

respond, *ibid.*, we still can't take the facts alleged in the DSOF as a given unless "the material fact at issue is supported by properly cited record evidence," S.D. FLA. L.R. 56.1(c); *see also ante*, at note 2 ("Accordingly, we'll deem every fact Wello asserted in their SOF 'admitted' *unless* that fact is contradicted by the PSOF or the other evidence in the record.").

We therefore **OVERRULE** Wello's two objections to Magistrate Judge Reinhart's methodology insofar as Wello demands a second (and complete) *de novo* review of the cross-motions for summary judgment. However, if we determine that Magistrate Judge Reinhart made a *specific* factual finding that *either* relied on a document Wello had objected to *or* failed to afford proper deference to an admitted fact from the DSOF, we'll review that finding *de novo*. *See Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993) ("Because Johnson did not file specific objections to *factual findings* by the magistrate judge, there was no requirement that the district court *de novo* review those findings.").

## II.     The *Uberrimae Fidei* (Count 5) Objections

Wello's next objections concern Magistrate Judge Reinhart's recommendation that we grant summary judgment in favor of Clear Spring on Count 5 because (in Judge Reinhart's words) Wello's material omissions "void[ed] the [P]olicy *ab initio* under *uberrimae fidei*." R&R at 11. According to Wello, Magistrate Judge Reinhart's "finding that Wello's 'response to the loss question was inaccurate' improperly ignores the disputed material facts and fails to account for the entire history of Wello's quest to insure the Vessel." Objections at 8 (quoting R&R at 10). Put another way, Wello says that Magistrate Judge Reinhart failed to recognize "serious" disputes of material fact "as to what Wello had to report, to whom, and about whom, on its insurance application." *Ibid.* Wello also argues that, even if it didn't accurately "disclose prior losses on its insurance applications," Magistrate Judge Reinhart failed to "make any findings that the alleged misrepresentation was material in light of the facts presented[.]" *Ibid.*

"Marine insurance contracts are governed by federal maritime law." *Quintero v. GEICO Marine Ins. Co.*, 983 F.3d 1264, 1270 (11th Cir. 2020). The maritime doctrine of *uberrimae fidei* (*i.e.*, "utmost good faith") requires "that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk." *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000); *see also Great Lakes Ins. SE v. Sunset Watersports, Inc.*, 570 F. Supp. 3d 1252, 1261 (S.D. Fla. 2021) (Dimitrouleas, J.) ("The doctrine of *uberrimae fidei*, or utmost good faith, requires an insurance applicant to voluntarily and accurately disclose to the insurance company all facts which might have a bearing on the insurer's decision to accept or reject the risk."). This "duty to disclose extends to those material facts not directly inquired into by the insurer" and "includes all material facts that are within or ought to be within, the knowledge of one party, and of which the other party has no actual or presumptive knowledge." *Quintero*, 983 F.3d at 1271 (cleaned up). A fact is "material" if it "could 'possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk.'" *Sunset Watersports*, 570 F. Supp. 3d at 1261 (quoting *Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942–43 (11th Cir. 1986)). "Under *uberrimae fidei*, a material misrepresentation on an application for marine insurance is grounds for voiding the policy." *HIH Marine Servs.*, 211 F.3d at 1363. This harsh penalty applies even if the misrepresentation was mistaken or inadvertent. *See Steelmet, Inc. v. Caribe Towing Corp.*, 747 F.2d 689, 695 (11th Cir. 1984) ("[T]he insured is bound to communicate every material fact within his knowledge not known or presumed to be known to the underwriter, whether inquired for or not; and [ ] a failure in either particular, although it may arise from mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void, for the reason that the risk assumed is not the one intended to be assumed by the parties." (quoting *Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974, 980 (5th Cir. 1969))).

In Magistrate Judge Reinhart's view, Wello didn't accurately disclose that the Vessel "experienced the 2016 and 2018 losses," and "no reasonable jury could conclude that Wello's omission did not materially affect the calculation of insurance risk." R&R at 10–11. Wello objects to both conclusions. It contends that "there is a genuine dispute whether Wello misrepresented the facts on the policy application," and it claims that, even if Wello misrepresented the Vessel's loss history, there was a "genuine dispute" about whether that history was "material to a decision to insure[.]" Objections at 5, 8. We disagree with Wello.

### A. The Vessel's Loss History

To begin with, it's clear beyond peradventure that Wello repeatedly misrepresented the Vessel's loss history in various renewal applications. Wello doesn't contest (nor could it) Magistrate Judge Reinhart's finding "that the application forms Wello filled out in 2019–2021 asked Wello to disclose 'all losses within the last 10 years' for that vessel and that Wello answered 'none.'" R&R at 9; *see also* 2019 Renewal Questionnaire [ECF No. 80-6] at 3; 2020 Renewal Questionnaire [ECF No. 80-7] at 3; 2021 Renewal Questionnaire [ECF No. 80-8] at 3. Nor does Wello object to Magistrate Judge Reinhart's finding that the "Sunseeker, with Hull Identification number XSK02857F304, had two prior losses in 2016 and 2018." R&R at 9; *see generally* Objections. Instead, Wello insists that its answer to this question about the Vessel's loss history ("none") wasn't a misrepresentation for three reasons. *One*, it says that Clear Spring already knew (or should have known) about the 2016 loss because Concept, "Clear Spring's agent who processed Wello's insurance applications and issued insurance to them . . . already knew about the 2016 loss at the time of Policy application and issuance." Objections at 6. *Two*, it claims that it didn't need to report the 2018 loss because "Wello completely replaced the Yamaha engines that were previously on the Vessel with new Suzuki engines," so "the only part of the Vessel which had been affected by the 2018 loss was gone, replaced, and no longer existed." *Id.* at 7. *Three*, it insists that there's a genuine dispute of material fact as to whether the 2021 Renewal

Questionnaire was "referr[ing] to the Suzuki Sunseeker, with the Suzuki engines," as opposed to the "Sunseeker with Yahama Engines." *Id.* at 7–8. We'll address (and reject) all three arguments in turn.

*First*, there's no evidence that Clear Spring *knew* about the 2016 loss when it issued the Policy. Viewing the evidence in the light most favorable to Wello, the best inference we could draw for Wello is that Clear Spring *might* have been able to discover the 2016 loss if it had conducted a more intensive investigation. *See* Deposition of Beric Usher Tr. ("Usher Depo. Tr.") [ECF No. 86-10] at 11 ("Q: At that time, did the insurance company know of the loss that occurred in 2016? A: If the search had been conducted more forensically we would have located the previous loss and we would not have written this policy but we had not connected the two."). But the entire point of the *uberrimae fidei* doctrine is that *the insured* has the responsibility to "*fully and voluntarily disclose* to the insurer *all facts material to a calculation of the insurance risk*"—so that the insurance company isn't obliged to undertake an intensive (and expensive) investigation of the insured before issuing the policy. *HIH Marine Servs.*, 211 F.3d at 1362 (emphasis added); *see also Sunset Watersports*, 570 F. Supp. 3d at 1261 ("The duty extends to all facts which are material to the calculation of the insurance risk regardless of whether the insurer, underwriter, or application specifically inquires into them."). Wello's speculation about what Clear Spring could (or should) have known about the 2016 loss thus doesn't excuse Wello's nondisclosure. *See Kilpatrick Marine Piling*, 795 F.2d at 943 ("[C]oncealment of [material] facts voids the policy, whether the concealment be due to fraud, negligence, accident, or mistake.").[8]

---

[8] Trying to parry, Wello argues that *both* Concept *and* Wello's prior insurer (Great Lakes) "already knew about the 2016 loss since it was the past insurer who denied the claim for same." Objections at 6. "If Wello was presented with a renewal application for insurance with prior insurer Great Lakes, who already knew about the 2016 loss," Wello asks, "why would Wello have had to redisclose the loss on said application? How was Wello supposed to know that the 'renewal' application was actually an application for insurance with a brand-new carrier, Clear Spring?" *Ibid.* But Great Lakes and Clear Spring are two different companies, and Wello cites no law for the proposition that its disclosure to one company in year one vitiates its obligation to disclose to a second company (in its application for a different policy) in year two. Again, whether Concept and Great Lakes might have known about the 2016 loss didn't excuse Wello from "fully and voluntarily" disclosing that loss because "the law has placed the burden of good faith disclosure with the person in the best position to know all the facts:

*Second*, we reject Wello's bizarre "Ship of Theseus paradox." R&R at 10. According to Wello, "because [it] completely replaced the Yamaha engines that were previously on the Vessel with new Suzuki engines," it didn't need to disclose the 2018 loss, since "the only part of the Vessel which had been affected by the 2018 loss was gone, replaced, and no longer existed." Objections at 7. This is frivolous. Wello doesn't dispute that the only relevant difference between the Vessel before and after 2018 was its engines. *See* DSOF ¶ 18 ("Thereafter, Wello completely replaced the Yamaha Sunseeker's Yamaha 250 2-stroke engines with Suzuki triple 300hp gas engines."); *see also* Objections at 7 ("Following the engine loss in 2018, Wello completely replaced the Yamaha engines that were previously on the Vessel with new Suzuki engines."). Wello would have us find that the replacement of just one of the Vessel's many components magically transforms the Vessel into an entirely new ship in a way that (conveniently) erases the boat's entire loss history. This is absurd, and no reasonable person would believe that replacing one part of a vessel—even something as important as the engines—would create a new vessel in the eyes of the insurer. *Cf. Berbridge v. Sam's East, Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018) ("Under federal law, an inference must be 'reasonable' to defeat a motion for summary judgment. A reasonable inference is one that a 'reasonable and fair-minded person in the exercise of impartial judgment might draw from the evidence.'" (cleaned up) (quoting *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982))). We thus fully agree with Magistrate Judge Reinhart that "[n]ew engines or not, there is no dispute that the Hull Identification number remained the same, so the response to the loss question was inaccurate." R&R at 10.

---

the insured." *HIH Marine Servs.*, 211 F.3d at 1363. Wello also speculates about the existence of a conspiracy in which "Clear Spring tricked Wello into believing that it did not have to disclose the 2016 loss, because Wello believed it was reapplying for insurance with Great Lakes, who already knew about the loss." Objections at 6–7. There is (of course) no evidence in the record to support this speculation. In any event, this post-hoc accusation of malfeasance doesn't absolve Wello of its duty to disclose material facts to its insurer. *See Kilpatrick Marine Piling*, 795 F.2d at 943 ("[C]oncealment of [material] facts voids the policy, whether the concealment be due to fraud, negligence, accident, or mistake.").

*Third*, Wello's contention that the 2021 Renewal Questionnaire was somehow ambiguous is conclusively refuted by the record. Wello says that "the 2021 Renewal Questionnaire specifically requests information concerning any prior losses to the Vessel, with the Suzuki engines, about which Wello correctly responded as 'none.'" Objections at 7. While the 2021 Renewal Questionnaire indeed mentions the new engines, it plainly and unambiguously referred to the same Vessel (with the same Hull Identification Number) Wello had owned since 2016. *See* 2021 Renewal Questionnaire at 1 (listing the "Scheduled Vessel" as a "Lolotte, 2003 40' Sunseeker with Suzuki triple 300hp gas engines, XSK02857F304"). And, to the extent Wello might have misunderstood the Renewal Questionnaire, this mistake wouldn't absolve Wello of its duty to disclose under *uberrimae fidei. See HIH Marine Servs.*, 211 F.3d at 1363 ("[A] misrepresentation, even if it is a result of mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void[.]" (cleaned up)). Moreover, Wello's own answers to the 2021 Renewal Questionnaire conclusively refute its position now that the Renewal Questionnaire was plagued by any such ambiguity. In response to the "[d]etails of previous vessels owned and/or operated" section, Wello answered "[t]his vessel *since 2016*[.]" 2021 Renewal Questionnaire at 3 (emphasis added). The implication of this honest response could not be more obvious: Wello understood full well that the Vessel—new engines or not—was still the *same* Vessel it had owned since 2016, and Wello knew that the Renewal Questionnaire was referring to this same Vessel (and Wello's history with the Vessel) since 2016.

In short, despite knowing it was obligated to share the Vessel's entire loss history, Wello omitted any mention of the 2016 and 2018 losses. We thus affirm Magistrate Judge Reinhart's conclusion that Wello's "response to the loss question was inaccurate." R&R at 10.

### B.  The Materiality of the Loss History

There's also no genuine dispute that the Vessel's loss history was material to Clear Spring's decision to issue a policy. Even though Wello misrepresented the Vessel's loss history to Clear Spring,

this misrepresentation must still be *material* to violate *uberrimae fidei*. *See HIH Marine Servs.*, 211 F.3d at 1362 ("*Uberrimae fidei* requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk."). And a misrepresentation isn't material unless "it might have a bearing on the risk to be assumed by the insurer." *Id.* at 1363 (cleaned up). Relying on Beric Anthony Usher's declaration, Magistrate Judge Reinhart found that Wello's failure to accurately disclose the Vessel's loss history was material because "there is no genuine dispute that Clear Spring relied on the facts disclosed in the applications in issuing a policy to cover the [Vessel]." R&R at 10 (citing Declaration of Beric Anthony Usher ("Usher Decl.") [ECF No. 80-11] ¶¶ 18–26).[9] Wello accuses Magistrate Judge Reinhart of not making any relevant factual findings on this issue. *See* Objections at 8 ("Here, not only did the Report did [sic] not make any findings that the alleged misrepresentation was material in light of the facts presented, it does not conduct any factual analysis at all."). Wello adds that "[t]here remains a genuine question of material fact as to whether or not the omitted losses were material to Clear Spring's calculation of the insurance risk, so as to void the Policy." *Id.* at 9. Again, we disagree.

Wello is right that loss history *is not* material as a matter of law. *See Clear Spring Prop. & Cas. Co. v. Dream On Yacht LLC*, 2024 WL 5372392, at *6 (S.D. Fla. Sept. 13, 2024) (Altman, J.) ("Although courts often conclude that 'marine loss history' is a fact material to the risk assumed in providing insurance, the Eleventh Circuit has never adopted a bright-line rule to that effect. As such, courts in the Eleventh Circuit have employed 'a more fact-specific inquiry' regarding the question of

---

[9] Mr. Usher was the "Managing Director and Senior Underwriter" for Concept and had "nearly thirty years of experience as an underwriter for Concept, and its corporate predecessors." Usher Decl. ¶ 4. Consequently, Mr. Usher has intimate familiarity with the Policy at issue here. *See id.* ¶ 25 ("Believing that all questions on the Renewal Questionnaire had been answered accurately and that all material information had been disclosed, the underwriter working under my direct supervision at Concept, Neil Burton, issued on behalf of Clear Spring Policy No. CSRYP/204845[.]"); *see also id.* ¶ 7 ("I have reviewed, and I am very familiar with, the application materials which are contained in the Underwriting File for the Policy CSRYP/204845[.]").

materiality." (cleaned up)); *Great Lakes Ins. SE v. SEA 21-21 LLC*, 568 F. Supp. 3d 1318, 1325 (S.D. Fla. 2021) (Altonaga, C.J.) ("Great Lakes begins by incorrectly characterizing 'loss history' as material as a matter of law[.] . . . Such a position ignores relevant and binding precedent. [This Court has] opted for a more fact-specific approach in alignment with more recent Eleventh Circuit precedent[.]"). Conversely, though, Wello is wrong to suggest that Magistrate Judge Reinhart's R&R lacked this "fact-specific inquiry." Magistrate Judge Reinhart properly cited (and relied on) the Usher Declaration to conclude that "there is no genuine dispute that Clear Spring relied on the facts disclosed in the applications in issuing a policy to cover the [Vessel]." R&R at 10; *see also* Usher Decl. ¶ 24 ("In reliance on the truth of the material facts disclosed on the 2021 Renewal Application, Concept issued to Wello Policy No. CSRYP/204845."); *id.* ¶ 34 ("Accurate responses to the specific questions regarding the loss history of the insured and/or the named operators are material because they could and likely would influence the mind of a prudent and intelligent underwriter in determining whether to accept the risk because these past events are the best (and sometimes only) indicators of future risk.").

Wello doesn't dispute Mr. Usher's conclusion that the Vessel's loss history was material to the insurer. *See* PSOF ¶ 47 ("Wello's loss history was material to Usher's judgment as an underwriter and would be material to the judgment of any prudent and intelligent underwriter because it indicates the insured's own care and skill in managing and maintaining the vessel."); PSOF Response ¶ 47 ("Undisputed that Mr. Usher attests so."). Thus, "Mr. Usher's testimony is entirely unrebutted[.]" Objections Response at 4. We've previously "decline[d] to find that an underwriter's statements are *per se* insufficient as a matter of law to establish materiality at summary judgment." *Dream On Yacht*, 2024 WL 5372392, at *7. And, in fact, Mr. Usher's unrebutted testimony in this case (*viz.*, that the Vessel's loss history was material to Clear Spring "because these past events are the best (and sometimes only) indicators of future risk," Usher Decl. ¶ 34) is *identical* to the testimony we found sufficient to establish materiality in *Dream On Yacht. See* 2024 WL 5372392, at *6–7 ("In his

Declaration, Usher tells us why an insurance company would want to know someone's loss history . . . . [P]rior loss is one of the best (and only) indicators of future risk[.]"); *see also id.* at *8 ("Usher doesn't just conclude that the Vessel's loss history was 'material'—nor does he merely speculate that the Vessel's loss history would have influenced the mind of a prudent and intelligent insurer in determining whether he would accept the risk. Instead, Usher explains with 'specific facts why loss history would matter in measuring insurance risks.'").[10] In short, Magistrate Judge Reinhart correctly found that "no reasonable jury could conclude that Wello's omission [of the Vessel's loss history] did not materially affect the calculation of insurance risk." R&R at 11.

Still resisting, Wello contends that there's no evidence (beyond the Usher Declaration) that the 2016 and 2018 losses were material to Clear Spring's decision to issue the Policy. *See* Objections at 9 ("The Report did not consider or analyze whether the actual facts allegedly omitted by Wello— the existence of the 2016 and 2018 losses—would be material to this specific insurer, Clear Spring, when issuing this Policy."); PSOF Response ¶ 49 ("Concept had notice and documentation of the 2016 loss in its underwriting files at the time the policy was issued. Moreover, since the engines involved in the 2018 Loss have been replaced, the prior claims have no bearing on any underwriting decision to insure the Suzuki Sunseeker." (cleaned up)). Of course, as we just discussed, the unrebutted Usher Declaration (standing alone) is sufficient to prove that the Vessel's loss history was material, and "Wello's subjective opinion . . . does not provide the Court with sufficient information as to what

---

[10] *See also Great Lakes Ins. SE v. Chartered Yachts Miami LLC*, 676 F. Supp. 3d 1251, 1262 (S.D. Fla. 2023) (Williams, J.) ("Moreover, Usher's affidavit is unrebutted. Multiple courts in this district have found that an unrebutted affidavit from this very same underwriter, Beric Usher, suffices to establish the materiality of a misrepresented fact." (first citing *Great Lakes Reinsurance (UK) PLC v. Morales*, 760 F. Supp. 2d 1315, 1326 & n.9 (S.D. Fla. 2010) (Gold, J.)); and then citing *Great Lakes Reinsurance PLC v. Barrios*, 2008 WL 6032919, at *5 (S.D. Fla. Dec. 10, 2008) (Ungaro, J.))); *SEA 21-21 LLC*, 568 F. Supp. 3d at 1327 ("Therefore, because Great Lakes has provided specific, undisputed evidence supporting the conclusion that it might have considered SEA 21's loss history before offering SEA 21 marine insurance coverage under the 2018 Policy and subsequent 2019 renewal, the Court finds SEA 21's loss history material as a matter of law.").

would influence a prudent and intelligent insurer in determining whether to accept the risk of issuing a marine insurance policy, what premiums to charge, or what terms to set." Objections Response at 4. Plus, the record reveals that Wello is simply wrong. For one thing, we've already rejected as entirely unsupported Wello's position that Clear Spring *knew* about the 2016 loss before it issued the Policy. *See ante*, at 16. For another, Mr. Usher explained that the 2018 loss was relevant to the insurer because it was indicative of future risk. And Wello's argument that it didn't need to disclose the loss because the damaged engines "had been completely replaced," Objections at 9, misstates the law entirely, *see ante* at 17.

*     *     *

Wello claims that "there still remains a genuine question of material fact whether the purported omission of the 2016 and 2018 claims voids the Policy *ab initio*." Objections at 10. We disagree. Magistrate Judge Reinhart correctly concluded that Wello's "response to the loss question [on the 2021 Renewal Questionnaire] was inaccurate" and that "no reasonable jury could conclude that Wello's omission did not materially affect the calculation of insurance risk." R&R at 10–11. We thus affirm the Magistrate Judge's conclusion that the Policy was voided when Wello breached the duty of *uberrimae fidei*, and we **OVERRULE** Wello's Objections to the R&R as to Count 5.

### III.     Fire Extinguisher Warranty (Count 6) Objections

Magistrate Judge Reinhart also found that Clear Spring was entitled to judgment as a matter of law on Count 6 of the SAC because "Wello breached an express warranty thus rendering the [P]olicy void." *Id.* at 11. Applying New York law, Magistrate Judge Reinhart explained that the Policy became void when "the [Vessel's] fire suppression system and handheld fire extinguisher certification and tagging [expired] in [March] 2020—a year before the reported loss." *Id.* at 14. Wello objects to Magistrate Judge Reinhart's recommendation on two grounds. *First*, Wello contends that the Policy's choice-of-law provision shouldn't be enforced because "there is a genuine question of material fact as

22

to whether Clear Spring and this transaction have any relationship to New York, so as to justify enforcing the choice of law provision." Objections at 12. *Second*, Wello says that it didn't violate the Fire Extinguisher Warranty because it "weigh[ed] the tanks once per year, and had the fire extinguisher certified/retagged/recharged as necessary." *Id.* at 15. We now overrule these objections as well.

### A.  The Policy's Choice-of-Law Provision

It's undisputed that Wello's Policy with Clear Spring has a choice-of-law provision. *See* PSOF ¶ 38 (reciting the choice-of-law provision); *see also* PSOF Response ¶ 38 ("Undisputed that the 2021-2022 Policy contains this language[.]"). This provision—which was emphasized in bold red text—states as follows:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to the well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

Policy [ECF No. 80-9] at 16. "Longstanding precedent establishes a federal maritime rule: Choice-of-law provisions in maritime contracts are presumptively enforceable." *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 70 (2024); *see also Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F.4th 1346, 1354 (11th Cir. 2022) ("Other circuits have enforced choice-of-law agreements in maritime contracts[.] . . . We see no reason to depart from our sister circuits by declining to enforce the parties' choice-of-law agreement in this case."). In *Raiders Retreat*, the Supreme Court recognized only three instances where "courts should disregard choice-of-law clauses in otherwise valid maritime contracts": (1) "when the chosen law would contravene a controlling federal statute"; (2) when the choice-of-law clause would "conflict with an established federal maritime policy"; or (3) "when parties can furnish no reasonable basis for the chosen jurisdiction." 601 U.S. at 76; *accord Dream On Yachts*, 2024 WL 5372392, at *5 n.3 (same). In so holding, the Supreme Court *declined* to recognize an additional exception based on state public policy. *See Raiders Retreat*, 601 U.S. at 77 ("Raiders says that federal

maritime law should recognize an additional exception when enforcing the law of the State designated by the contract would contravene the fundamental public policy of the State with the greatest interest in the dispute. We disagree with that argument.").

Faithfully applying the Supreme Court's holding in *Raiders Retreat*, Magistrate Judge Reinhart rejected Wello's argument that there was "no reasonable basis" for the Policy to contain a New York choice-of-law provision. R&R at 12. Wello objects to this conclusion on three grounds—all unpersuasive. *First*, Wello says that it "did not have an opportunity to respond" to the Supreme Court's decision in *Raiders Retreat* and that we should give it an additional "opportunity to respond to the same in defense." Objections at 10. This is ridiculous. Wello has already had a full and fair opportunity to discuss the applicability of *Raiders Retreat* in its Objections. In any event, *Raiders Retreat* "is now the law of the land and Wello must contend with it." Objections Response at 5. Moreover, *Raiders Retreat* doesn't represent the kind of "sea change" in maritime law that would require additional briefing. This Court's own prior precedents, after all, were already mostly consistent with the holding the Supreme Court later outlined in *Raiders Retreat*. *See, e.g.*, *Sunset Watersports*, 570 F. Supp. 3d at 1261 n.7 ("Under federal maritime choice of law rules, a choice of law provision in a marine insurance policy will be applied unless the state in question has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purpose of maritime law."); *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1251 (S.D. Fla. 2010) (Jordan, J.) ("[T]he general rule in the federal courts is that such a provision will be applied unless the state in question 'has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purpose of maritime law.'" (quoting *Stoot v. Flour Drilling Servs., Inc.*, 851 F.2d 1514, 1517 (5th Cir. 1988))).

*Second*, Wello says that Magistrate Judge Reinhart did not "examine what Clear Spring's connection to New York is" and incorrectly "conclude[d] that the soundness of New York's law was a 'reasonable basis'" for the choice-of-law provision. Objections at 11–12. Wello also accuses

Magistrate Judge Reinhart of failing to apply our Court's "'substantial relationship test' to determine if a choice of law provision should be enforced[.]" *Id.* at 12. Before *Raiders Retreat* (it's true), courts in our District had held that a maritime choice-of-law provision could be enforced so long as the chosen "state has a substantial relationship to the parties or transaction"—even if another state "has a greater relationship to the parties or transaction than another state[.]" *Clear Spring Prop. & Cas. Co. v. Big Toys LLC*, 683 F. Supp. 3d 1297, 1305 (S.D. Fla. 2023) (Bloom, J.) (quoting *Great Lakes Ins. SE v. Lassiter*, 2022 WL 1288741, at *4 (S.D. Fla. Apr. 29, 2022) (Altonaga, C.J.)). The Supreme Court's decision in *Raiders Retreat* did not mention this "substantial relationship test"—and instead held that "courts may disregard choice-of-law clauses when parties can furnish *no reasonable basis* for the chosen jurisdiction." 601 U.S. at 76 (emphasis added). We're not entirely sure whether this "no reasonable basis" test has abrogated the "substantial relationship test" or whether it's merely a different articulation of the same concept. *Cf. Accelerant Specialty Ins. Co. v. Z&G Boat & Jet Ski Rentals, Inc.*, 737 F. Supp. 3d 1297, 1307 (M.D. Fla. 2024) (Mizelle, J.) ("Requiring an agreed-on jurisdiction to have a 'substantial relationship' with the parties or the contract rather than simply asking whether the parties had a 'reasonable' or 'rational' basis to select the jurisdiction would show none of the deference that *Raiders Retreat* requires. . . . Thus, as far as *Raiders Retreat*'s 'no reasonable basis' exception and Blind Pass's 'no substantial relationship' exception are inconsistent, the Supreme Court's articulation controls.").

Fortunately, we don't need to resolve this thorny issue today because the choice-of-law provision in our case is plainly enforceable under *both* the "substantial relationship" *and* the "no reasonable basis" test. Wello insists that it "has clearly shown that there is a genuine question of material fact as to whether Clear Spring and this transaction have any relationship to New York," Objections at 12, but this couldn't be further from the truth. Wello doesn't dispute that Clear Spring "is an admitted, licensed insurance carrier in the State of New York," that Clear Spring "maintains bank accounts in the State of New York," and that it "accepts service of process through attorneys in

the State of New York." PSOF ¶¶ 51–53; *see also* PSOF Response ¶¶ 52–54 ("Undisputed that Mr. Usher attests so."). These facts—courts in our District have consistently held—are more than sufficient to show that there's a "substantial relationship" between the State of New York and our case. *See, e.g.*, *Big Toys*, 683 F. Supp. 3d at 1305 ("Clear Spring asserts that it is an admitted carrier in New York, it is subject to service of process in New York, and New York is a major maritime jurisdiction with a well-developed body of maritime law and insurance law. Consistent with prior decisions from this District, the Court concludes that Clear Spring's ties to New York constitute a sufficient substantial relationship to allow application of New York law." (cleaned up) (citing *Rosin*, 757 F. Supp. 2d at 1251)); *Lassiter*, 2022 WL 1288741, at *6–7 ("Great Lakes first applied to be and is admitted as a surplus lines insurer in New York, Great Lakes maintains its United States Trust Fund account in the State of New York, [and] Great Lakes's agent for service of process is in the State of New York[.] . . . Courts have concluded that such contacts are sufficient to satisfy the substantial relationship test."); *see also Liermo v. Nat'l Cas. Co.*, 733 F. Supp. 3d 1359, 1365 (S.D. Fla. 2024) (Bloom, J.) ("Defendant accurately observes that courts in this District routinely enforce choice of law provisions selecting federal maritime or New York law as the law governing marine insurance policies."). And, if the Policy's choice-of-law provision meets the "substantial relationship test," it (by definition) satisfies the less-stringent "no reasonable basis" test. *See Raiders Realty*, 601 U.S. at 77 ("That said, the 'no reasonable basis' exception must be applied with substantial deference to the contracting parties, recognizing that maritime actors may sometimes choose the law of a specific jurisdiction because, for example, that jurisdiction's law is 'well developed, well known, and well regarded.'").

*Third*, Wello claims that Magistrate Judge Reinhart's R&R "overlooks the fact that the *Raiders* case leaves open the possibility for a court to assess whether its decision to apply a specific maritime rule 'produces an equitable result.'" Objections at 12 (quoting *Raiders Realty*, 601 U.S. at 75). Wello asks us to apply this amorphous "equitable result" exception based on "Clear Spring and Concept's

machinations," by which the two companies (Wello insists) "take[ ] advantage of innocent insureds," like Wello. *Id.* at 13.[11] Of course, the Supreme Court in *Raiders Realty* only approved of *three* "narrow" exceptions to the widely held presumption that choice-of-law provisions are enforceable—and it said nothing at all about a mysterious (and potentially all-encompassing) fourth "equitable result" exception that district courts can apply if they feel sufficiently sorry for the insured. *See* 601 U.S. at 76. Indeed, the Supreme Court expressly disavowed additional exceptions, explaining that "[t]he ensuing disuniformity and uncertainty caused by such an approach would undermine the fundamental purpose of choice-of-law clauses in maritime contracts: uniform and stable rules for maritime actors." *Id.* at 77. We therefore reject Wello's request that we disregard the Policy's choice-of-law provision based on this non-existent "equitable result" exception.

Magistrate Judge Reinhart, in sum, properly applied binding Supreme Court precedent in upholding the validity of the Policy's choice-of-law provision. We therefore adopt his analysis in full and apply New York law to the terms of the Policy.

### B. The Fire Extinguisher Warranty

Wello's final objection is to Magistrate Judge Reinhart's conclusion that the Policy is void because Wello breached the Policy's Fire Extinguisher Warranty. Wello *doesn't* dispute that, if New York law applies, a "breach of an express warranty in a marine insurance policy voids the policy, even where the breach played no role in the loss." R&R at 13 (citing *Rosin*, 757 F. Supp. 2d at 1257); *see also Jarvis Towing & Transp. Corp. v. Aetna Ins. Co.*, 82 N.E.2d 577, 577 (N.Y. 1948) ("It is undisputed, and the trial court correctly instructed the jury, that the provision above quoted is an express promissory warranty, which must be literally complied with, and that noncompliance forbids recovery, regardless of whether the omission had causal relation to the loss."). Instead, Wello says that Magistrate Judge

---

[11] We cannot overlook the irony of Wello's position that Clear Spring operated in bad faith (an inflammatory accusation it levels without citing to any record evidence) when it was *Wello* that made material misrepresentations to Clear Spring. *See ante*, at 15–22.

Reinhart misread the Policy's Fire Extinguisher Warranty and then relied on this misinterpretation to find that Wello breached it. *See* Objections at 14 ("The Report gets this backwards, stating that because the inspection tag on the fire extinguisher stated it was last inspected in 2019—over a year before the loss, there is no dispute of material fact that Wello violated this warranty. That is not the correct reading of the warranty[.]"). In Wello's view, the evidence at summary judgment "demonstrate[s] that Wello did indeed weigh the tanks once per year, and had the fire extinguisher certified/retagged/recharged as necessary." *Id.* at 15. Although we agree that Magistrate Judge Reinhart didn't squarely address Wello's evidence on this point, we overrule Wello's objection anyway because the Magistrate Judge still reached the correct conclusion.

The Policy's Fire Extinguisher Warranty reads as follows:

> If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

Policy at 13. When Clear Spring's inspector, Revel Boulon, investigated the sinking of the Vessel, he observed that the Vessel's automatic fire suppression system *and* portable fire extinguisher "had last been inspected and tagged in March of 2019" and were "therefore expired at the inception of the Policy and at the time of the partial sinking." PSOF ¶¶ 41–42; *see also* Revel Boulon Adjustment Report [ECF No. 80-10] at 10–11 (showing pictures of expired fire-suppression system and portable extinguisher).[12] To combat Mr. Boulon's report, Wello relies on the affidavits of Roy and Amelina Cisneros, both of whom said that Roy Cisneros "weighed the fire extinguishing equipment on the

---

[12] Wello "disputed" these facts by arguing that "[t]he purported report relied on by Clear Spring does not state the fire suppression system was expired or not in working condition." PSOF Response ¶¶ 41–42. But Wello didn't dispute (nor could it) that the fire-suppression system and portable fire extinguisher "had last been inspected and tagged in March of 2019[.]" PSOF ¶¶ 41–42. In any event, Mr. Usher testified in his deposition that "the tags on the vessel's fire extinguishers and fire suppression systems had been expired since March 2020," Usher Depo. at 9, and Wello failed to rebut this testimony with *any* evidence of its own.

[Vessel] . . . once a year," that they had hired "an individual to certify/tag and recharge the fire extinguishing tanks as necessary," and that the Vessel's fire extinguishers "were in working condition" and "completely filled[.]" Affidavit of Amelina Cisneros [ECF No. 87-3] ¶¶ 8–11; Affidavit of Roy Cisneros [ECF No. 87-4] ¶¶ 5–8 (same).

Citing Judge Bloom's opinion in *Clear Spring Property and Casualty Co. v. Big Toys LLC*, Magistrate Judge Reinhart concluded that Wello breached the Fire Extinguisher Warranty because the fire-suppression system and portable fire extinguisher hadn't been inspected and certified since 2019. *See* R&R at 14 ("A 2019 inspection tag means the Sunseeker's fire suppression system and handheld fire extinguisher certification and tagging would have expired in [March] 2020—a year before the reported loss. So, at the time of the loss, the policy was void and Clear Spring's Motion for Summary Judgment should be granted." (citing *Big Toys LLC*, 683 F. Supp. 3d at 1306–07)). And courts in our District have repeatedly found that this same Fire Extinguisher Warranty requires the insured *both* (1) to certify, tag, and recharge the fire suppression system "as necessary" *and* (2) to weigh the tanks "once a year." *Big Toys LLC*, 683 F. Supp. 3d at 1306–07 ("The final clause of the warranty requires that 'certification/tagging and recharging' occur 'as necessary,' and the penultimate clause requires weighing of the tanks 'once a year.'"); *Clear Spring Prop. & Cas. Co. v. Viking Power LLC*, 608 F. Supp. 3d 1220, 1227 (S.D. Fla. 2022) (Altonaga, C.J.) (same) (citing *Lloyd's of London v. Pagan-Sanchez*, 539 F.3d 19, 22–23 (1st Cir. 2008)).

Wello is right that Magistrate Judge Reinhart's R&R didn't address Amelina and Roy Cisneros's affidavits, which establish that Roy Cisneros "weighed the fire extinguishing equipment on the [Vessel], specifically the fire extinguishing tanks, once a year, since Wello purchased [the Vessel]." Affidavit of Roy Cisneros ¶ 5; *see generally* R&R. But the Warranty *also* required Wello to certify, tag, and recharge the fire-extinguishing equipment "as necessary." Policy at 13. Since it's undisputed that the fire-extinguishing equipment had not been formally inspected since March 2019, *see* Revel Boulon

Adjustment Report at 10–11, the sole remaining question is whether Wello properly certified, tagged, and recharged the fire-extinguishing equipment "as necessary" since that last inspection. For two reasons, the answer is obviously "No."

*First*, the unrebutted evidence from Mr. Usher is that the fire-extinguishing equipment's tags and certifications had been expired since March 2020. *See* Usher Depo. at 9 ("Finally, the investigation following loss indicates that the fire extinguishers and the fire suppression system on board the vessel had been serviced and tagged in March 2019 and that the certification and tags on the vessel's fire extinguishers and fire suppression systems had been expired since March 2020."); *see also id.* at 13 ("Q: Does your file indicate that any other fire extinguisher or fire suppression system was issued to the vessel after March of 2020? A: No, on the contrary, it says that the tags on the fire suppression equipment and fire extinguishers had not been checked and tagged and certified since that date."). It should go without saying that, if the fire-extinguishing equipment's certifications and tags had expired more than a year before the Vessel sunk, no reasonable jury could conclude that the Vessel's equipment was being certified and tagged "as necessary." *See Clear Spring Prop. & Cas. Co. v. Smrke*, 2023 WL 7224064, at *3 (M.D. Fla. Oct. 17, 2023) (Flynn, Mag. J.) ("Defendant breached the Policy by failing to have the Vessel's fire suppression system weighed, certified, tagged, and recharged within the past twelve (12) months."), *report and recommendation adopted*, 2023 WL 7221407 (M.D. Fla. Nov. 2, 2023) (Barber, J.); *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 2024 WL 3416253, at *9 (E.D. Pa. July 15, 2024) ("Raiders posits that finding Raiders in breach of warranty for failing to re-certify and re-tag fire extinguishers upon the extinguishers' annual expiration violates the principles of contract interpretation because such a finding would imbue the phrase 'as necessary' with the same meaning as the previous clause's phrase 'once a year.' . . . [R]eading the warranty to require certification/tagging as necessary upon expiration does not render any part of the provision meaningless. . . . Raiders' narrow interpretation of the term 'as necessary'—such that

certification/tagging was not 'necessary' even when the tags were four years expired[—]is an interpretation that renders the phrase 'as necessary' meaningless.").

*Second*, Amelina and Roy Cisneros's personal belief that the fire-extinguishing equipment functioned and that it was being properly maintained isn't sufficient to create a genuinely disputed issue of material fact. As Chief Judge Altonaga has explained:

> Defendants' argument [that the fire-extinguishing system was properly maintained] is beside the point because Solberg and Violissi's affidavits, even if true, do not foreclose the possibility that Defendants breached the fire-suppression warranty. New York law requires that express promissory warranties be 'literally complied with[.]' In fact, 'noncompliance forbids recovery, regardless of whether the omission had causal relation to the loss.' Therefore, it does not matter whether the fire-extinguishing system's alleged defects causally contributed to the fire or the damage caused by the fire. All that matters is whether the fire-suppression warranty was breached.

*Viking Power LLC*, 608 F. Supp. 3d at 1228 (cleaned up) (first quoting *Jarvis Towing*, 82 N.E.2d at 577; and then citing *Great Lakes Ins. SE v. Aarvik*, 2019 WL 201258, at *4 (S.D. Fla. Jan. 15, 2019) (Bloom, J.)). Put another way, the Cisneroses' subjective belief that it wasn't "necessary" to "retag/recertify/recharge the fire extinguisher more recently than 2019" because they *thought* the fire-extinguishing equipment was working properly, Objections at 15, is irrelevant. It's undisputed that the fire-suppression equipment couldn't have been properly retagged and recertified because, at the time of the loss, it was expired. If the phrase "as necessary" is to have any meaning at all—and we should interpret this provision in a way that gives the phrase meaning, *see* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 150 (2012) ("[T]he courts must . . . lean in favor of a construction which will render every word operative, rather than one which may make some idle and nugatory.")—then it must mean that a fire extinguisher whose tags are expired doesn't have the "necessary" certifications. Understood this way, the Cisneroses' subjective belief that they had done whatever was broadly necessary to keep the fire extinguisher in working order, *see* Affidavit of Roy Cisneros ¶ 7 ("To the best of my knowledge, the [Vessel's] fire extinguishers were in working condition on or about September 27th, 2021."), is neither here nor there. Magistrate Judge Reinhart correctly

found, in short, that Wello's failure to annually renew the "fire suppression system and handheld fire extinguisher certification and tagging" amounted to a violation of the Fire Extinguisher Warranty. R&R at 14.

*    *    *

Magistrate Judge Reinhart is right that the Policy's choice-of-law provision was enforceable, and that the governing New York law requires strict and literal compliance with *all* the Policy's warranties. Accordingly, we agree with Magistrate Judge Reinhart that Wello's failure to renew the certification and tags on the Vessel's fire-extinguishing equipment after it expired in March 2020 constitutes a material breach of the Fire Extinguisher Warranty.[13] We therefore **OVERRULE** Wello's Objections to the Magistrate Judge's findings on Count 6.

CONCLUSION

Having conducted a careful, *de novo* review of the R&R, the record, and the applicable law, we hereby **ORDER AND ADJUDGE** as follows:

1. Magistrate Judge Reinhart's R&R [ECF No. 101] is **ACCEPTED and ADOPTED** in full. Wello's Objections [ECF No. 102] are **OVERRULED**.

2. Clear Spring's Motion for Summary Judgment [ECF No. 81] is **GRANTED**. Wello's Motion for Summary Judgment [ECF No. 85] is **DENIED**.

3. Policy No. CSRYP/204845 is **DECLARED** void *ab initio*.

4. All deadlines and hearings are **TERMINATED**, and all other pending motions are **DENIED as moot**. The stay in this case is **LIFTED**, and the case shall remain **CLOSED**.

5. Pursuant to Federal Rule of Civil Procedure 58, we'll issue final judgment separately.

---

[13] Of course, even if both we and Magistrate Judge Reinhart are wrong about this, the Policy is still void because Wello violated the doctrine of *uberrimae fidei. See generally ante*, at 14–23.

**DONE AND ORDERED** in the Southern District of Florida on February 26, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record