UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
IN ADMIRALTY

**CLEAR SPRING PROPERTY AND
CASUALTY COMPANY**,

    Plaintiff,

vs.

Case No. 1:21-cv-24234

**WELLO AND MOM, LLC**,

    Defendant.

_____/

### PLAINTIFF'S MOTION FOR SANCTIONS

COMES NOW the Plaintiff, CLEAR SPRING PROPERTY AND CASUALTY COMPANY (hereinafter "CLEAR SPRING"), by and through its undersigned counsel, pursuant to the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of Florida, and 28 U.S.C. § 1927., and moves this Court for an Order awarding CLEAR SPRING its attorney's fees based on the Defendant WELLO AND MOM, LLC's bad faith in this matter, and further thereto would respectfully state as follows:

### INTRODUCTION

CLEAR SPRING previously moved for an award of attorney's fees to sanction WELLO AND MOM, LLC (hereinafter "WELLO") for its bad faith attempts at forum shopping, but the Court denied the motion without prejudice with leave to refile once litigation had concluded. *See* ECF No. 48. Since that time, WELLO's bad faith has only gotten more egregious, including vexatious and wasteful litigation tactics in the state court, and repeated false and inflammatory accusations about CLEAR SPRING's business practices in the instant matter. On February 26, 2025, the Court awarded summary judgment to CLEAR SPRING on Counts V and VI of its

1

Second Amended Complaint, with a final judgment in CLEAR SPRING's favor entered the next day. *See* ECF No.'s 106, 107. Now that litigation has concluded, CLEAR SPRING renews its motion for sanctions, with additional grounds as well, as discussed more fully below.

## RELEVANT BACKGROUND AND HISTORY OF WELLO'S BAD FAITH IN LITIGATION

CLEAR SPRING, a foreign corporation incorporated in Texas, is a marine insurance company which issued a policy affording Hull & Machinery coverage on a vessel which for insurance purposes was described as a Lolotte, 2003 40' Sunseeker with Suzuki triple 300hp gas engine, XSK02857F304 vessel (hereinafter "the Vessel"). *See* Policy No. CSRYP/204845 (hereinafter "the Policy), a true and correct copy of which was previously filed as ECF No. 8-3, at 1. The Vessel was alleged to have been owned by the Defendant, WELLO AND MOM, LLC (hereinafter "WELLO"), and was insured for an agreed value of $230,871.00. *Id*. WELLO is located in Miami, FL. *Id*. At all times material hereto, Concept Special Risks Ltd. (hereinafter "Concept") acted as the underwriting agent on behalf of CLEAR SPRING, receiving and evaluating applications for marine insurance coverage.

On December 2, 2021, CLEAR SPRING filed its original Complaint for Declaratory Judgment (hereinafter "the Complaint"), invoking the admiralty jurisdiction of this Court per Rule 9(h), seeking a declaration that the Policy affords no coverage for the alleged damage sustained by the Vessel as a result of a partial sinking on or about September 27, 2021, due to lack of fortuity, exclusions for wear and damage to the Vessel's engines, mechanical and electrical parts unless caused by an accidental external event, unseaworthiness, material misrepresentation of fact in the application, and breach of the fire extinguishing equipment warranty. *See* ECF No. 1, at 4-13. WELLO was served with a copy of the Complaint on February 15, 2022. *See* Defendant's Motion

for Enlargement of Time to Respond to Amended Complaint, ECF No. 13, at 1. CLEAR SPRING filed a corrected Complaint on February 18, 2022. *See* ECF No. 8.

On March 8, 2022, WELLO filed *Defendant's Motion for Enlargement of Time to Respond to Amended Complaint* [ECF No. 13], claiming that "WELLO and its counsel need additional time to respond to the Amended Complaint," and that "[d]ue to the press of other business and the complexity of the issues raised by the Amended Complaint" they needed an additional fourteen (14) days to file their response, or until March 22, 2022. *Id*., at 1-2. CLEAR SPRING did not object to the requested extension. *See* the email correspondence between counsel regarding requested extensions for various pleadings, a true and correct copy of which is attached hereto as Exhibit 1, at 3. Crucially, the Defendant's aforesaid motion failed to advise this honorable Court that it [WELLO] had already filed a mirror-image breach of contract action against CLEAR SPRING on March 4, 2022 in Miami-Dade County court.

Rather than file a substantive response to CLEAR SPRING's Complaint for declaratory judgment, the Defendant used that additional time to draft and file an amended mirror-image breach of contract action in Florida state court1 on March 22, 2022. That same day, the Defendant moved to dismiss CLEAR SPRING's declaratory judgment action. *See Defendant's Motion to Dismiss Plaintiff's Amended Complaint* [ECF No. 14] (hereinafter "Defendant's Motion to Dismiss").

The Policy contains the following provision (*see* ECF No. 8-3, at 16):

### 11. Service of Suit, Choice of Law and Forum

> [….]
>
> It is also hereby agreed that any dispute arising here under shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America, in particular, the Federal District court within which you the

3

> Assured resides or the Federal District court within which your insurance agent resides.

Per the clear and unambiguous terms of the foregoing forum-selection clause, any action that either party might have seen fit to bring must have been filed in the United States District Court for the Southern District of Florida, within which Miami, Florida is located.

The Defendant's Motion to Dismiss contained no reference whatsoever to the Policy's forum-selection clause, and misleadingly referred to its mirror-image state court action as an "underlying action" as part of its attempt to persuade this Court that it lacked subject matter jurisdiction over the declaratory judgment action. *See* ECF No. 14, at 5 ("However, courts generally abstain from adjudicating an insurer's duty to indemnify until *after* the conclusion of the underlying action.") (emphasis in original).

CLEAR SPRING was thus compelled to not only draft and file a response to WELLO's motion to dismiss in this Court (which it did on April 14, 2022, *see* ECF No. 20), it also had to file its own motion to dismiss the state court action. A true and correct copy of CLEAR SPRING's aforesaid motion, entitled *Defendant's Motion to Dismiss the Plaintiff's Complaint in Favor of a Pending Federal Action*, dated April 8, 2022, was previously filed as ECF No. 25-1. WELLO filed its reply in support of its motion to dismiss on April 28, 2022. ECF No. 23.

On May 17, 2022, this Court set a status conference for June 3, 2022 at 3:00pm to be held via Zoom. *See* ECF No. 24. During the status conference on June 3, 2022, counsel for CLEAR SPRING advised the Court of its motion to dismiss the state court action, and counsel for WELLO again misleadingly referred to its mirror-image state court action as an "underlying action." On June 23, 2022, the Court set a status conference for July 7, 2022, regarding WELLO's motion to dismiss. *See* ECF No. 31.

WELLO opposed CLEAR SPRING's motion to dismiss the state court action. A true and correct copy of WELLO's opposition, entitled *Response and Opposition to Defendant's Motion to Dismiss Amended Complaint*, dated June 28, 2022, is attached hereto as Exhibits 2. In an abundance of caution, CLEAR SPRING also filed a reply in support of its motion to dismiss the state court action, dated June 29, 2022, a true and correct copy of which is attached hereto as Exhibit 3.

In an effort to resolve the matter, the undersigned repeatedly informed opposing counsel of the Policy's forum-selection clause (as early as April 25, 2022), and requested that counsel for WELLO voluntarily dismiss the state court action, which WELLO refused to do. *See* a true and correct copy of one such email exchange between respective counsel for the parties is attached hereto as Exhibit 4, at 2. Thus CLEAR SPRING was compelled to set a hearing on its motion to dismiss the state court action, which was held via Zoom on June 30, 2022 before the Honorable Judge Reemberto Diaz of the Eleventh Judicial Circuit in and for Miami-Dade County. After a few minutes of oral argument, Judge Diaz summarily granted CLEAR SPRING's motion to dismiss the state court action. A true and correct copy of the Order of Dismissal was previously filed as ECF No. 32-1. On July 5, 2022, the Court issued a Paperless Order denying WELLO's Motion to Dismiss as moot in light of the fact that the state court litigation, upon which WELLO's Motion to Dismiss was based, had been dismissed. *See* ECF No. 35.

CLEAR SPRING previously moved for an award of attorney's fees based on the aforementioned bad faith committed by the Defendant. *See Plaintiff's Motion for Attorney's Fees*, dated July 12, 2022, ECF No. 36. The Court denied CLEAR SPRING's as without prejudice on August 2, 2022, with leave to "refile its motion for Attorney's Fees, and any subsequent motions for fees or sanctions, at the end of the litigation." ECF No. 48.

Thereafter litigation continued, and unfortunately, so did WELLO's bad faith conduct. Despite the overwhelming caselaw favoring enforcement of forum selection clauses in federal admiralty law, WELLO refused to accept the dismissal of its state court complaint against CLEAR SPRING and repeatedly appealed, until finally the Florid Supreme Court declined jurisdiction on August 29, 2024. A true and correct copy of the Florida Supreme Court order is attached hereto as Exhibit 5.

Clearly disappointed that its attempts to get the instant matter dismissed in favor of its so-called "underlying action" in state court were not working out as planned, WELLO tried another route. WELLO brought suit against not only its various insurance agents, but Concept as well, in Florida state court on February 17, 2023. A true and correct copy of WELLO's Complaint in the matter of *Wello and Mom, LLC v. Casey Ins. Group, et al.*, Case No. 2023-002761-CA-01 in the Circuit Court for the Eleventh Judicial Circuit for Miami-Dade County, is attached hereto as Exhibit 6. WELLO falsely claimed that it had Concept "served" via service of process on Mendes & Mount in New York, as provided for in the Policy – despite the fact that that provision is plainly referring to service on CLEAR SPRING as the insurer and only other party to the contract, besides WELLO. Plaintiff can only assume that WELLO sued Concept in state court to harass CLEAR SPRING and/or Concept, particularly since WELLO could have brought whatever legitimate claims it may have had against Concept (if any) in the instant matter under this Court's supplementary jurisdiction for related claims. Concept has sought to have the "service" made upon it quashed, or to otherwise be dismissed from the case, and continues to await the outcome of the Miami-Dade Circuit Court litigation.

Also in February 2023, the parties submitted their summary judgment motions in the instant matter, with final briefing submitted in March 2023. In its Motion for Summary Judgment,

6

WELLO claimed that CLEAR SPRING should not "be permitted to use its underhanded tactics to shift the blame to WELLO," arguing that WELLO's material misrepresentations concerning its loss history were actually the fault of Underwriters for not performing a lengthy and expensive search of their own records to see if they had ever issued a policy with the same Hull Identification Number. ECF No. 85, at 20. Incredibly, WELLO also attempted to have the instant matter stayed pending the outcome of not just its appeal of the state court dismissal of the case against CLEAR SPRING, but also pending the outcome of its litigation against Concept and the various agents. *See id.*, at 6.

WELLO made similar false and inflammatory allegations in its Response to Plaintiff's Motion for Summary Judgment, stating that

> [t]he only reason CLEAR SPRING seeks to apply New York law is to scam and defraud WELLO.
>
> [….]
>
> CLEAR SPRING's Motion must be denied because it cannot be permitted to use its underhanded tactics to shift the blame to WELLO. It is eminently clear that CLEAR SPRING never intended to afford coverage to WELLO under any circumstances, as is apparent from its underhanded inclusion in the Policy of a choice-of-law provision favoring voiding policies on the basis of technical violations of warranties, deceptive "renewal" practices, and the convoluted chain of entities through which WELLO's various applications, representations and renewals traveled.

ECF No. 88, at 7, 19.

WELLO continued with such allegations in its Reply in Support of its Motion for Summary Judgment, stating that CLEAR SPRING

> could have a bank account in New York with $1.00 in it, just so it can claim on all its motions for summary judgments in the hundreds of lawsuits it uses to evade its coverage obligations that it has a "substantial relationship" with New York.

7

ECF No. 97, at 6.

Magistrate Judge Bruce Reinhart's Report and Recommendation, dated October 1, 2024, recommended that the Court grant CLEAR SPRING's Motion for Summary Judgment and deny WELLO's Motion for Summary Judgment. *See* Report and Recommendation ("R&R") [ECF No. 101] at 15. In response, WELLO made false and outrageous allegations against CLEAR SPRING and Concept in its *Objections to Report and Recommendation* (hereinafter "WELLO's Objections") [ECF No. 102]. As part of their last-ditch attempt to convince the Court that the Policy's New York choice of law clause was unenforceable, WELLO claimed that

> [t]his is not the first time that Clear Spring, in alliance with Concept, have taken advantage of innocent insureds to ensure that they will never have to cover a single claim, despite gladly taking their client's premiums. After Clear Spring's and Concepts machinations, the end result here is absolutely inequitable, and the choice of New York law should be disregarded.

None of WELLO's allegations about CLEAR SPRING's and Concept's "machinations" were presented with any citation to record evidence, for indeed, no such proof exists.

## **ARGUMENT**

The lengthy and tedious history of litigation in this matter up to the present moment, as detailed above, was entirely the result of the bad faith litigation tactics of the Defendant or its counsel. None of the above referenced motions to dismiss or hearings or status conferences would have been necessary but for their attempts to mislead this Court and engage in the most flagrant attempt at forum shopping the undersigned has yet come across. WELLO deliberately omitted from its motion to dismiss that the Policy contains a valid and enforceable forum-selection clause which absolutely requires that any dispute over coverage must be litigated in the "Federal District court within which you the Assured resides or the Federal District court within which [the Assured's] insurance agent resides." ECF no. 8-3, p. 16. Even if, for the sake of argument, WELLO

were to claim that it or its counsel was previously unaware of the Policy's forum-selection clause, a few moments of legal research would have lead them to the inevitable conclusion that such clauses are routinely enforced under federal admiralty law, which would lead any reasonable litigant to realize there was no good faith legal argument to support such a position.

However, there can be no excuse for the deliberate attempt by WELLO, or its counsel, to mislead this Court as to what constitutes an "underlying action" under federal law. None of the cases cited by WELLO in its motion or its reply in support involved a forum-selection clause or a dispute between the parties as to where to litigate coverage under a policy of marine insurance. Rather, in every single case cited by WELLO, the "underlying action" was a totally separate tort liability dispute between the insured and a claimant; that is what an "underlying action" is. *See Marr Investments, Inc. v. Greco*, 621 So.2d 447 (Fla. 4th DCA 1993). An "underlying action" is not, as WELLO would have had this Court believe, any action brought in state court, including a mirror-image breach of contract action by the insured against the insurer. Not one single case has *ever* held that a party may annul a forum-selection clause in a maritime contract just because that party would prefer to ignore the clause and litigate in a different forum. Flying in the face of the Policy's forum-selection clause and the clear, overwhelming, veritable tsunami of caselaw in support of the viability and enforcement of forum-selections clauses in maritime contracts, and the undeniable dearth of caselaw to the contrary, the Defendant (or its counsel) deliberately set out on a scheme of bad faith litigation tactics in an attempt to have this case dismissed. Those efforts were of course futile, and resulted in total and abject failure when their ill-founded state court action was dismissed by Judge Diaz; but in the meantime, WELLO wasted not only CLEAR SPRING's time and money, but also the valuable resources of the Miami-Dade County Court and the United States District Court for the Southern District of Florida.

9

In addition to the attempts at forum shopping and misrepresenting the law to this Court, WELLO has made repeated false and inflammatory accusations against CLEAR SPRING and/or Concept, alleging that they have engaged in "deceptive" and "underhanded tactics" to "scam and defraud WELLO" and other insureds in order to avoid paying this and other claims. It should go without saying, but not even one of the numerous allegations detailed above was accompanied by citation to record evidence, demonstrating WELLO's knowledge that such claims were false and without support. Such language cannot be dismissed as mere zealous advocacy on behalf of an insured. CLEAR SPRING and Concept have both been in business for many years, and such accusations are not only false, but knowingly false and made with malicious intent in order to prejudice the Court against CLEAR SPRING.

It is for these reasons that CLEAR SPRING respectfully urges this Court to award it attorney's fees for the sanctionable conduct of WELLO and/or its counsel, to compensate CLEAR SPRING and to ensure that such behavior does not occur again as this litigation goes forward.

1. **Standard**

This Court, sitting in admiralty, has inherent authority to punish WELLO's bad faith conduct, without recourse to any specific bad faith statute or to Rule 11. District courts may award attorney fees in an admiralty case when the non-prevailing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Martins v. Royal Caribbean Cruises, Ltd*., 431 F. Supp. 3d 1355, 1364 (S.D. Fla. 2019) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). *See also Misener Marine Const., Inc. v. Norfolk Dredging Co*., 594 F.3d 832, 838 (11th Cir. 2010). "[A]llowance of counsel fees and other expenses entailed by litigation, but not included in the ordinary taxable costs regulated by statute, is part of the historic equity jurisdiction of the federal courts." *Vaughan v. Atkinson*, 369 U.S. 527; 1962 A.M.C.

1131 (1962). *See also JTR Enterprises, LLC v. Columbian Emeralds*, 697 Fed.Appx. 976 (11th Cir. 2017) (affirming denial of sanctions motion in admiralty case). "[W]hereas each of the [statutory and rule] mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses." *Id.*, at 987, *citing*, *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). Such bad-faith fee-shifting is meant to punish abuses of the litigation process. *Galveston County Nav. Dist. No. 1 v. Hopson Towing Co., Inc.*, 92 F.3d 353, 358; 1996 A.M.C. 2850 (5th Cir. 1996). CLEAR SPRING invoked this Court's admiralty jurisdiction with its first filing. ECF No. 1, at 1.

"The key to invoking a court's inherent power to sanction is a finding of bad faith." *JTR Enterprises*, 697 F. App'x at 986. Bad faith is shown when "an attorney knowingly or recklessly pursues a frivolous claim or needlessly obstructs the litigation of a non-frivolous claim" *Id.*

This standard is echoed by the Rules Regulating the Florida Bar. Specifically, Rule 4-3.3, *Candor Toward the Tribunal*, states:

> (a) False Evidence; Duty to Disclose. A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
> (2) fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;
> (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; [….]

Furthermore, the Comment to this rule goes on to state that "[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal." Per Local Rule 11.1(c), *Professional Conduct*, "[t]he standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar." But there need not be a showing that the lawyer subjectively knew their position was untenable. "[O]bjectively reckless conduct is

enough to warrant sanctions even if the attorney does not act knowingly and malevolently. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007).

Sanctions can also be assessed under the inherent authority of the court where a litigant makes false and inflammatory statements. *See Martins v. Royal Caribbean Cruises, Ltd*., 431 F. Supp. 3d 1355, 1365 (S.D. Fla. 2019) (imposing sanctions on pro se litigant for bad faith, including frivolous and inflammatory comments comparing an alleged quarantine of plaintiff's family to "Nazi Concentration Camps," referring to Royal Caribbean as a "killer" using litigation to make her a "sitting duck targets for target shootings," and alleging that she has been "prostituted" as a result of defendant's counsel's actions).

Alternatively, under 28 U.S.C. § 1927, a court may hold a lawyer personally liable for fees and costs if he or she "unreasonably and vexatiously" multiplies the proceedings. 28 U.S.C. § 1927. The statute reads:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

*Id.* Under § 1927, an attorney's conduct is sanctionable if it is unreasonable, vexatious, and "results in proceedings that would not have been conducted otherwise." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Section 1927 does not apply to parties. Sanctions under § 1927 are discretionary. *Olson v. Reynolds*, 484 F. App'x 61, 64-65 (7th Cir. 2012). Per § 1927, an attorney must "knowingly or recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007).

**2. <u>WELLO And/Or Its Counsel Knowingly or Recklessly Pursued A Baseless and Frivolous Scheme of Forum Shopping</u>**

As shown above, the Defendant (or its counsel) disregarded the Policy's forum-selection clause and mischaracterized the nature of its state court action in an attempt to circumvent CLEAR SPRING's proper election to proceed in admiralty before this Honorable Court. Similar conduct has been the subject of an award of attorney's fees in the past, and should be in this instance as well, to discourage such behavior from happening again in this litigation or by other litigants who may wish to attempt a similar scheme.

For instance, the case of *Reliable Salvage and Towing, Inc. v. Bivona* concerned a dispute over whether a valid contract for salvage had been formed. 476 Fed.Appx. 852; 2013 A.M.C. 591 (11th Cir. 2012). Although the court found that no valid salvage contract had ever been formed, the court found that the salvor was still entitled to a salvage award as a matter of law. *Id.*, at 1377. The court found bad faith based on the vessel owner's assertion of the legally frivolous argument that the vessel was not in peril at the exact moment that the salvage was undertaken. *Id.*, at 854. Litigation on this issue was futile because there was no dispute as to the dispositive fact that the vessel was facing peril in the very near future. *Id*. It was legally irrelevant that the vessel was not yet in peril. *Id*. Therefore, the court found that the vessel owner's litigation on this point was in bad faith. *Id*.

To give another example, the very recent *JSM Marine* case concerned another salvage dispute. *JSM Marine LLC v. Gaughf*, 407 F.Supp.3d 1358; 2019 A.M.C. 2592 (S.D. Ga. 2019). After the salvor rescued a vessel that had run aground on rocks during Hurricane Mathew, a fight ensued over the proper amount of the salvage award. *Id.*, at 1362. After awarding judgment to the salvor on the merits, the court proceeded to catalogue the vessel owner's bad faith conduct in the litigation. *Id.*, at 1378. The court granted the request for attorney's fees based on the frivolous

13

defenses raised by the vessel owner, the denial of certain basic facts without evidentiary support, and counsel's ignorance of the applicable legal principles. *Id.*, at 1379.

The Eleventh Circuit has held that conduct that "looks like forum shopping" is a factor courts can consider in analyzing sanctions. *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018). This District has held similarly. *See Absolute Activist Value Master Fund Ltd. v. Devine*, No. 215CV328FTM29MRM, 2019 WL 3491962, at *11 (M.D. Fla. Aug. 1, 2019) ("proof of forum shopping" could satisfy a finding of bad faith sufficient to justify inherent authority sanctions), *reconsideration denied*, No. 215CV328FTM29MRM, 2019 WL 4594589 (M.D. Fla. Sept. 23, 2019), aff'd, 826 F. App'x 876 (11th Cir. 2020).

Fees are obviously warranted for the bad faith litigation tactics displayed by WELLO in this case. WELLO was properly served and had requested an extension of time to file a response, which counsel for CLEAR SPRING courteously did not object to (not knowing, of course, that WELLO had no intention of filing an answer to the declaratory judgment, but had set about on a plan to have this case dismissed in favor of an action in state court, in contravention of the Policy's forum-selection clause). WELLO "knowingly or recklessly pursue[d] a frivolous"[1] argument when it completely failed to include any reference whatsoever to the Policy's valid and enforceable forum-selection clause, and when it argued that this Court "lack[ed] subject matter jurisdiction" because there was "Underlying Litigation." *See* ECF No. 14, at 3 (capitalization in original).

Even if it could be argued that WELLO, or its counsel, was unaware of the Policy's forum-selection clause, their knowledge can still be imputed where it is clear they made no effort to read the Policy or were willfully blind to the relevant provisions that did not suit their purpose. *See id* ("knowledge can be imputed to a party who knows of a high probability of illegal conduct and

---

[1] *See JTR Enterprises*, 697 F. App'x at 986.

14

purposely contrives to avoid learning of it.") (quoting *Williams*, 314 F.3d at 1278)). *See also Amlong*, 500 F.3d at 1241 ("objectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently"). Before pursuing such a course of action, WELLO had an obligation "to perform a reasonably thorough investigation of the facts…" *Byrne v. Nezhat*, 261 F.3d 1075, 1115 (11th Cir. 2001). Even after being explicitly informed of the Policy's forum-selection clause by the undersigned via email on April 25th,[2] still WELLO and its counsel did not reverse course, but continued in their efforts to have this matter improperly dismissed. Such conduct should not be overlooked by this Court, as to do so would only encourage similar bad faith and vexatious tactics by litigants in the future.

But there can be no possible excuse or mitigating factors when considering for the actions of WELLO and/or its counsel in referring to the mirror-image state court action as an "underlying litigation." This is because an "underlying action," by definition, does not refer to a mirror-image breach of contract claim between an insured and the insurer, but rather, it can only refer to tort litigation between the insured and a third-party claimant. *See Marr Investments, Inc. v. Greco*, 621 So.2d 447 (Fla. 4th DCA 1993) (reversing district court's grant of summary judgment to insurer, and holding that that the question of coverage for insured's tort liability could not be resolved until it was determined whether the insured was liable for the tort claimant's injury). Such an argument can only be "based on a knowingly false representation of law," which "constitutes dishonesty toward the tribunal," and therefore undoubtedly constitutes bad faith. *See* Comment to Rule 4-3.3 of the Rules Regulating the Florida Bar. *See also In re Evergreen Sec., Ltd.,* 384 B.R. 882, 930 (Bankr. M.D. Fla. 2008), *aff'd*, 391 B.R. 184 (M.D. Fla. 2008), *aff'd*, 570 F.3d 1257 (11th Cir.

---

[2] *See* Ex. 4, at 5 (wherein the undersigned suggested that WELLO voluntarily withdraw its state court complaint in favor of this litigation, which "would be in keeping with the forum selection clause in the policy of marine insurance at issue, which had perhaps been previously overlooked.")

2009) (imposing sanctions for bad faith, including relying on inapposite and inflammatory case law to support motion).

### 3. Time and Money Wasted By The Actions of the Defendant and/or its Counsel

Solely as a result of bad faith conduct of the Defendant and/or its counsel in this litigation, nearly all of the undersigned's billing in this matter from March 22, 2022 (the day that the Defendant filed its Motion to Dismiss [ECF No. 14]) to June 30, 2022 (the day the undersigned informed the Court that the Defendant's state court action against CLEAR SPRING had been dismissed) has been devoted to dealing with the repercussions of the Defendant's attempt at forum shopping, but not limited to, receipt and review of the Motion to Dismiss [ECF No. 14], moving for an extension of time to file an opposition [ECF No. 15], drafting an opposition [ECF No. 20], receipt and review of the Defendant's reply in support [ECF No. 23], receipt and review of the Defendant's mirror-image complaint in state court, drafting a motion to dismiss the Defendant's state court action, communicating with opposing counsel to set a Zoom hearing on CLEAR SPRING's motion to dismiss the Defendant's state court action, notifying this Court of the hearing, drafting a reply in support of CLEAR SPRING's motion to dismiss the Defendant's state court action, preparing for the Zoom hearing, attending the Zoom hearing itself, and notifying this Court of the dismissal of the state court action, or approximately 65 hours. The total of all estimated fees and costs billed to CLEAR SPRING in this matter from March 22, 2022 through the end of June 2022 for actions related to the Defendant's Motion to Dismiss and its mirror-image state court action is $16,000. *See* Affidavit of Jacqueline L. Goldman, Esq., dated March 11, 2025, a true and correct copy of which is attached hereto as Exhibit 7, at 2.[3]

---

[3] The Goldman Maritime Law Group (formerly Goldman & Hellman) can provide further supporting materials for inspection should the Court deem it necessary.

### 4. **WELLO's False and Defamatory Remarks About CLEAR SPRING's and Concept's Business Practices**

WELLO's summary judgment filings are replete with false and defamatory accusations concerning CLEAR SPRING's and Concept's business practices. Had opposing counsel bothered to inquire, Mr. Usher (CLEAR SPRING's 30(b)(6) Corporate Representative) would have truthfully testified that CLEAR SPRING pays the vast majority of claims. CLEAR SPRING does business throughout the United States, and has been authorized to do business in Florida since 1989, offering a range of insurance types, including ocean marine, worker's compensation, and more.[4] Concept and its corporate predecessors have been underwriting marine insurance policies for more than 40 years. *See* Declaration of Beric Anthony Usher, ECF No. 80-11, at ¶44. Any allegation by WELLO that CLEAR SPRING and Concept schemed against "innocent insureds" (which presumably WELLO considers itself to be) is ironic considering that it was WELLO who made repeated material misrepresentations in its applications for marine insurance. *See* ECF No. 106, at 22 (adopting the R&R's "conclu[sion] that Wello's 'response to the loss question [on the 2021 Renewal Questionnaire] was inaccurate' and that 'no reasonable jury could conclude that Wello's omission did not materially affect the calculation of insurance risk.'"). Such remarks were apparently made in a failed attempt to prejudice this Court against CLEAR SPRING and Concept. WELLO's claims that CLEAR SPRING and Concept engaged in "underhanded tactics" and "deceptive renewal tactics" in order to "take[] advantage of innocent insureds to ensure that they will never have to cover a single claim, despite gladly taking their client's premiums" are false and defamatory. These accusations were presented without even an attempt to cite to any record

---

[4] *See* Florida Office of Insurance Regulation (https://companysearch.myfloridacfo.gov/each_comp.aspx?IREID=102295&AUTHID=102295&FICTNAME=&CCRCNAME=&passCompanyType=PROPERTY%20AND%20CASUALTY%20INSURER&passCompanyName=CLEAR%20SPRING%20PROPERTY%20AND%20CASUALTY%20COMPANY) (last visited March 4, 2025).

evidence, demonstrating opposing counsel's knowledge that such statements were false and without proof. Such conduct should not be tolerated or allowed to stand without remonstration by the Court. CLEAR SPRING respectfully urges the Court to fashion an appropriate sanction for WELLO's comments, which were "patently frivolous, brought for purposes of vexation, [and] ha[d] no basis in law or fact." *See In re Roy Day Litig*., 976 F. Supp. 1455, 1457 (M.D. Fla. 1995) (granting motion for sanctions against plaintiff where plaintiff had, among other actions, made filings referring to litigants as "sleazy, corrupt, dishonest, unethical, illegal"). *See also Martins*, 431 F. Supp. 3d at 1365 (S.D. Fla. 2019) (imposing sanctions on *pro se* litigant for bad faith, including frivolous and inflammatory comments comparing an alleged quarantine of plaintiff's family to "Nazi Concentration Camps," referring to Royal Caribbean as a "killer" using litigation to make her a "sitting duck targets for target shootings," and alleging that she has been "prostituted" as a result of defendant's counsel's actions).

## **CONCLUSION**

This Court should sanction the Defendant and/or their counsel. CLEAR SPRING's reasonable attorneys' fees and costs are an authorized sanction under 28 U.S.C. § 1927 and this Court's inherent power to sanction bad faith. CLEAR SPRING requests this Court award it its attorneys' fees and costs and also requests leave to seek additional fees if Defendant or their counsel oppose the reasonableness of CLEAR SPRING's fee request and/or request an evidentiary hearing. Should the Court decline to award the full amount of fees incurred, CLEAR SPRING respectfully urges that some not insignificant amount be awarded as a signal to WELLO and/or its counsel, as well as to future litigants who would consider a similar course of action, that such bad faith tactics are not only doomed to fail but that they also incur the risk of tangible consequences.

WHEREFORE, Plaintiff CLEAR SPRING PROPERTY AND CASUALTY COMPANY requests that this Court sanction the Defendant's and/or its counsel for bad faith conduct in this litigation and issue an Order that WELLO and/or its counsel be sanctioned, and to award any and all such further relief as may be appropriate in the premises.

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that they conferred with Angela Bousalis, Esq., via email on March 5, 2025, and the Defendant opposes the relief sought herein.

Dated: March 12, 2025
      Fort Lauderdale, Florida

                                                    THE GOLDMAN MARITIME LAW GROUP
                                                    *Attorneys for Plaintiff*
                                                    401 East Las Olas Boulevard
                                                    Suite 1400
                                                    Fort Lauderdale, FL 33301
                                                    Tel (954) 356-0460
                                                    Fax (617) 608-5128
                                                    Cel (617) 817-1887

                                                    By: /s/ Jacqueline Jurist-Schoen
                                                    JACQUELINE JURIST-SCHOEN
                                                    FLA. BAR. NO. 1005573

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on March 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send an electronic Notice of Filing to all counsel of record.

      THE GOLDMAN MARITIME LAW GROUP
*Attorneys for Plaintiff*
401 East Las Olas Boulevard
Suite 1400
Fort Lauderdale, FL 33301
Tel (954) 356-0460
Fax (617) 608-5128
Cel (617) 817-1887

By: /s/ Jacqueline Jurist-Schoen
JACQUELINE JURIST-SCHOEN
FLA. BAR. NO. 1005573